**RECEIVED**

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

NOV 2 6 2007 MB

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.                )
)
_Jerri Robbin Lindsey B49150_                   )
(Full name and prison number)                   )
(Include name under which convicted)            )
)
) _Dismissed_
PETITIONER                                      ) CASE NO: _06C 3213_
)        (Supplied by Clerk of this Court)
vs.                               )
)
_Warden Carolyn Francesco_                      )
(Warden, Superintendent, or authorized          )
person having custody of petitioner)            ) 07CV6658
) JUDGE SHADUR
RESPONDENT, and                   ) MAGISTRATE JUDGE KEYS
)  – – – – – – – – – – –
**(Fill in the following blank only if judgment )
attacked imposes a sentence to commence )
in the future)**                                )
)
ATTORNEY GENERAL OF THE STATE OF                 ) Case Number of State Court Conviction:
)
_____                 ) _92 CR 25135_
)
(State where judgment entered)                   )

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: _The Circuit Court of Cook County_
_Department - Criminal Division, 2600 S. California Chgo. Ill. 60608_

2. Date of judgment of conviction: _February 10, 1995_

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
_1st Degree Murder, 1st Degree Armed Robbery_

4. Sentence(s) imposed: _45 yrs._

5. What was your plea? (Check one)      (A) Not guilty      ( ✓ )
(B) Guilty         (   )
(C) Nolo contendere (   )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

_____

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( )    Judge only ( ✓ )

2. Did you testify at trial?    YES ( ✓ )    NO    ( )

3. Did you appeal from the conviction or the sentence imposed? YES ( ✓ ) NO ( )

   (A) If you appealed, give the

      (1) Name of court: _In The Appellate Court of Illinois, First Judicial District, Fourth Division_

      (2) Result: _Affirmed_

      (3) Date of ruling: _July 25, 1997_

      (4) Issues raised: _1.) The trial Court Erred in failing to Suppress my statements as involun_
_2.) The trial Court Erred when it failed to Suppress evidence as the fruit of an illegal ar_
_3.) I was not afforded Constitutionally effective assistance of trial Counsel._
_4.) I was denied the right of Counsel of choice. (see attachments)_

   (B) If you did not appeal, explain briefly why not:

   _____

4. Did you appeal, or seek leave to appeal, to the highest state court? YES ( ✓ )    NO ( )

   (A) If yes, give the

      (1) Result _Affirmed_

      (2) Date of ruling: _December 3, 1997_

      (3) Issues raised: _1.) Motion to Suppress involuntary statements. 2.) Ineffectiveness of_
_counsel. 3.) Violation of sixth Amendment of right to choice of counsel. 4.) Motion_
_to Suppress evidence as the fruit of illegal arrest. (see attachments)_

   (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of _certiorari_? Yes ( ✓ ) No ( )

   If yes, give (A) date of petition: _March 2, 1998_ (B) date _certiorari_ was denied: _May 4, 1998_

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (✓)   NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A.   Name of court:   _In The Circuit Court of Cook County, Illinois_

B.   Date of filing:   _March 27, 1998_

C.   Issues raised: 1) _Right to Due Process As guaranteed by the Fourteenth Amendme_ _of the United States Constitution And Article I, § 2 of The Illinois Constitution._ 2) _Petitioner denied her right to effective assistance of counsel, as guaranteed by the Sixth Amendment and Fourteenth of the U.S Constitution and Article I § 8 of The Illinois Constitut_ (See attachment

D.   Did you receive an evidentiary hearing on your petition?   YES ( )   NO (✓)

E.   What was the court's ruling?   _____

F.   Date of court's ruling:   _____

G.   Did you appeal from the ruling on your petition?   YES (✓)   NO ( )

H.   (a)  If yes,   (1) what was the result?   _Reversed and Remanded / See attachments for further informat_

            (2) date of decision:   _February 6, 03_

     (b)  If no, explain briefly why not:   _____

I.   Did you appeal, or seek leave to appeal this decision to the highest state court?

     YES ( ) NO (✓)

     (a)  If yes,   (1) what was the result?   _____

            (2) date of decision:   _____

     (b)  If no, explain briefly why not:   _____

2.  With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?     YES ( )          NO (✓)

    A.  If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.  Nature of proceeding     _____

        2.  Date petition filed      _____

        3.  Ruling on the petition    _____

        3.  Date of ruling        _____

        4.  If you appealed, what was
            the ruling on appeal?     _____

        5.  Date of ruling on appeal   _____

        6.  If there was a further appeal,
            what was the ruling ?     _____

        7.  Date of ruling on appeal   _____

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**
YES ( )   NO (✓)

    A.  If yes, give name of court, case title and case number:   _____

_____

    B.  Did the court rule on your petition?  If so, state

        (1)  Ruling:    _____

        (2)  Date:    _____

4.  **WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDING PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( )  NO (✓)

If yes, explain:   _____

_____

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the f...
supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you
to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YO**
**STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one ___Conviction obtained by use of coerced confession.___
Supporting facts (tell your story briefly without citing cases or law):

I was interrogated for almost three days. I was lied to. I was told I could
go home if I'd say this or that. I hadn't had any real sleep over a span of five
days, I could hardly see. I was denied an attorney and I wasn't able to use
the phone until lock up and that was after the confession was signed. I
was badgered and badgered beyond anything I've ever experienced. I was
mentally and emotionally drained.

(B) Ground two ___Conviction obtained by use of evidence obtained persuant___
Supporting facts: to an unlawful arrest.

I was lied to, to get to the police station. I was told that my rape allegation
was being investigated, when in fact a murder was being investigated. I was
asked to take a photograph picture and fingerprints. The photograph picture was us...
to show two witnesses. When they came to my house, it wasn't searched, I
wasn't given a ballistics test or DNA. I was put in a bogus line-up, after the
photograph picture was shown to the witnesses. The line-up consisted of 4 or 5
women, there wasn't any resemblance. Of course I was picked out of the line-
cause the elderly couple (the state's witnesses) had already saw my photograph.

(C) Ground three  *Denial of Effective Assistance of Counsel.*
Supporting facts:

My attorney didn't investigate my case at all. When my witnesses went to his off
to talk to him, he didn't want to hear anything, all he was concerned about was "16
dollars in full. He failed to call certain witnesses. He didn't talk to my witnesse
until a couple of wks. before trial and only for a hour. He was a no show in cour
nine to eleven times. He was late for every court appearance out of 2½ yrs a
twice. I couldn't call him by phone. He didn't call my character witnesses for
sentencing. He lost my actual weight. He didn't challenge my identity, photo array and the b
line-up to the fullest extent.

(D) Ground four  *Tangible Evidence*
Supporting facts:

During the police investigation, which consisted of the search of the
vehicle in question, not one piece of evidence, physically connected
me in this incident. No fingerprints, no saliva, no skin cells could
place me in this vehicle. The investigators were given the metra train
schedule, alledgelly handled by me, which also showed absolutely, no
fingerprints and no other evidence can place me in this vehicle.

2    Have all grounds raised in this petition been presented to the highest court having jurisdiction?
YES (✓)    NO ( )

3.    If you answered "NO" to question (16), state <u>briefly</u> what grounds were not so presented and why not:

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _Unknown_

(B) At arraignment and plea _unKnown_

(C) At trial _Sheldon Sorosky 415 N. LaSalle 3rd fl. Chgo, Ill. zipcode unknown_

(D) At sentencing _Sheldon Sorosky_ ''

(E) On appeal _Jenner & Block, Andrew Binge, One IBM Plaza Chgo, Ill. 60611 44th fl._
_(location unknown)/ Patricia A. Wrona of Wrona Law offices 188 W_

(F) In any post-conviction proceeding _Ronald Hazel/Randolph St. Chgo, Ill. 60601 Suite 2107_
_Steve black 69 W. Washington Chgo, Ill. 60602 15th fl. & Steve Gentry - location unknown_

(G) Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (✓)

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _5/25/06_
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Jeni Robbin Lindsey_
(Signature of petitioner)
_B49150_
(I.D. Number)
_P.O. Box 549 Lincoln, Illinois 62656_
(Address)

THE CIRCUIT COURT FOR THE __U.S. District__ JUDICIAL COURT
_____ __Northern District__ _____ COUNTY, ILLINOIS

__Jerri Robbin Lindsey__          )
    Petitioner            )
       v.              )          No. __92 CR 25135__
__Warden Carolyn Robertson__      )
    Respondent            )

## MOTION FOR APPOINTMENT OF COUNSEL

The undersigned (Petitioner/Respondent), __Jerri Robbin Lindsey__ _____, respectfully moves the court
to appoint counsel for (him/her) in this cause. In support, (Petitioner/Respondent) states:

1. I have been incarcerated continuously since __October 1992__ _____, and am presently held in
   custody and residing at the __Lincoln__ _____ Correctional Center in __Lincoln__ _____
   Illinois, County of __Logan__ _____.

2. I am without sufficient income or assets with which to pay for the costs of these proceedings
   or to employ an attorney to represent me in this matter.

3. I am without the services of counsel to represent me in this matter and I wish the Court to
   appoint counsel to represent me in this matter.

4. I have a constitutional right to access to the courts, and without the assistance of counsel,
   my access to the courts will not be adequate, effective or meaningful because:
   __having counsel will help me effectively present necessary issues__
   __on my behalf pursuant to my filing of the enclosed federal Habeas Corpus__

5. My (claim/defense) in this matter is not frivolous or malicious, but is colorable and meritorious.

6. Since this matter concerns the (condition/duration) of my confinement, I have sought
   (institutional/administrative) review of this matter through the proper grievance procedures before
   this action was filed. (At this point state what, if any, action was taken or decision that was made
   concerning your grievances).
   __n/A__

WHEREFORE (Petitioner/Respondent) __Jerri Robbin Lindsey__ _____, respectfully requests
counsel be appointed to represent (him/her) in this matter.

    __Jerri Robbin Lindsey__
    (Your Signature)

    Type or print name __Jerri Robbin Lindsey__
    Register number __B49150__
    __Lincoln__ _____ Correctional Center
    Box __549__
    __Lincoln__ _____, Illinois __62656__

IN THE CIRCUIT COURT FOR THE _U.S. District_ JUDICIAL COURT
_Northern District_ COUNTY, ILLINOIS

_Jerri Robbin Lindsey_,    )
    Petitioner,    )
    v.    )    No. _92CR 25135_
_Warden Carolyn Robertson_    )
    Respondent.    )

------------------------------------------------------------

## APPLICATION TO SUE OR DEFEND AS A POOR PERSON

Applicant, _Jerri Robbin Lindsey_, respectfully requests the Court, pursuant to Illinois [ see 735 ILCS 5/5-105] and Rule 298 of the Illinois Supreme Court, to grant (him/her) leave to (sue/defend) as a poor person; in support applicant states that the following facts are true in substance and in fact:

1. I am the (Petitioner/Respondent) in the above captioned legal proceedings.

2. I am a poor person and unable to (prosecute/defend) this action and am unable to pay the costs, fees and expenses of this action.

3. My occupation or means of subsistence:

    (a) I am not currently employed due to my imprisonment at _Lincoln_ Correctional Center but I receive (a state stipend/nominal wages) of $ _110.00_ per month.

    (b) The amount and source of all other income or support are: _not available_

4. My total income for the preceding year was $ _1,320.00_.

5. The sources and amount of income expected by me hereafter are: _N/A_

6. The nature and current value of any property, real or personal, owned by me:

    (a) Real Estate: _none_
      value: _0_
    (b) Motor Vehicle: _none_
      value: _0_
    (c) Cash, saving, checking, etc. _none_
      value: _0_
    (d) Prison trust account: _____
      value: _____
    (e) Other (eg., T.V., etc.) _Walkman, Fan, hotpot, Lamp_
      value: _$75.00_

7. No applications for leave to sue or defend as a poor person were filed by me or on my behalf during the preceding year, except as follows: _not available_

8. I believe in good faith that I have a meritorious (claim/defense)

      _Jerri Robbin Lindsey_
      (Your Signature)
      Type or print name _Jerri Robbin Lindsey_
      Register Number: _B49150_
      _Lincoln_ Correctional Center
      Box _549_
      _Lincoln_, Illinois _62656_
      (Petitioner/Respondent), Pro Se

Revised Jan 2002

## CERTIFICATE

TO BE COMPLETED FOR PRISONERS ONLY.   THIS IS A STATEMENT BY THE PRISON
ND NOT THE PRISONER)

I hereby certify that the plaintiff or petitioner in this action has the
um of $ _____136.76_____ in his trust fund account at this correctional
enter where is confined.  I further certify that the plaintiff or
etitioner has the following securities to his credit according to the
ecords of this institution: _____

_____

_____

_____

_____
Authorized Officer

_____
Institution

_____
Title

_____
Date

ORTANT:

HIS CERTIFICATE MUST BE ACCOMPANIED BY A COPY OF A SIX MONTH LEDGER OF
   PLAINTIFF'S TRUST FUND ACCOUNT.

Date: 5/23/2006
Time: 9:36am

Case 1:07-cv-06658    Lincoln Correctional Center    Page 11 of 46    Page 1

d_list_inmate_trans_statement_composite

Trust Fund
Inmate Transaction Statement

REPORT CRITERIA - Date: 07/01/2005 thru End;    Inmate: B49150;    Active Status Only ? : No;    Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;    Print Furloughs / Restitutions ? : Yes;    Include Inmate Totals ? : Yes;    Print
Balance Errors Only ? : No

Inmate: B49150 Lindsey, Jeri                                    Housing Unit: LIN-1A-04-07

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | * | Beginning Balance: | 37.35 |
| 07/05/05 | Mail Room | 01 MO/Checks (Not Held) | 186236 | 540669 | Bishop, Champaign | 25.00 | 52.35 |
| 07/06/05 | Point of Sale | 60 Commissary | 187721 | 373575 | Commissary | -36.15 | 26.20 |
| 07/06/05 | Point of Sale | 60 Commissary | 187721 | 373576 | Commissary | -2.08 | 24.12 |
| 07/12/05 | Payroll | 20 Payroll Adjustment | 193114 | | ICI JUNE, 05 GARMENT SHOP IND | 94.42 | 118.54 |
| 07/13/05 | Point of Sale | 60 Commissary | 194721 | 374399 | Commissary | -22.93 | 95.61 |
| 07/13/05 | Point of Sale | 60 Commissary | 194721 | 374400 | Commissary | -2.28 | 93.33 |
| 07/13/05 | Point of Sale | 60 Commissary | 194721 | 374402 | Commissary | -36.95 | 56.38 |
| 07/14/05 | Disbursements | 82 Debts due to State (non-postage) | 195302 | Chk #73591 | 820600772, DOC: 523 Fund Reimb, Inv. Date: 07/14/2005 | -1.04 | 55.34 |
| 07/14/05 | Disbursements | 82 Debts due to State (non-postage) | 195302 | Chk #73591 | 820600714, DOC: 523 Fund Reimb, Inv. Date: 07/14/2005 | -1.04 | 54.30 |
| 07/20/05 | Point of Sale | 60 Commissary | 201721 | 375687 | Commissary | -53.83 | .47 |
| 08/01/05 | Mail Room | 01 MO/Checks (Not Held) | 213233 | 54394817015 | Thomas, Carl,Adama&marla | 50.00 | 50.47 |
| 08/01/05 | Mail Room | 01 MO/Checks (Not Held) | 213273 | 07585351007 | Studzinski, Silvia | 25.00 | 75.47 |
| 08/04/05 | Point of Sale | 60 Commissary | 216721 | 377475 | Commissary | -59.46 | 16.01 |
| 08/04/05 | Point of Sale | 60 Commissary | 216721 | 377476 | Commissary | -2.28 | 13.73 |
| 08/10/05 | Disbursements | 80 Postage | 222302 | Chk #73720 | 8006002214, Inmate Benefit Fun, Inv. Date: 08/09/2005 | -.74 | 12.99 |
| 08/10/05 | Disbursements | 82 Debts due to State (non-postage) | 222302 | Chk #73721 | 8206001945, DOC: 523 Fund Reim, Inv. Date: 08/04/2005 | -1.04 | 11.95 |
| 08/10/05 | Disbursements | 90 Medical Co-Pay | 222302 | Chk #73721 | 9006002164, DOC: 523 Fund Reim, Inv. Date: 08/05/2005 | -2.00 | 9.95 |
| 08/11/05 | Point of Sale | 60 Commissary | 223741 | 378320 | Commissary | -9.30 | .65 |
| 08/11/05 | Point of Sale | 60 Commissary | 223741 | 378323 | Commissary | -.57 | .08 |
| 08/12/05 | Payroll | 20 Payroll Adjustment | 224102 | | ICI JULY GARMET SHOP | 88.05 | 88.13 |
| 08/15/05 | Disbursements | 82 Debts due to State (non-postage) | 227302 | Chk #73749 | 8206002476, DOC: 523 Fund Reim, Inv. Date: 08/12/2005 | -.26 | 87.87 |
| 08/17/05 | Point of Sale | 60 Commissary | 229741 | 379241 | Commissary | -2.28 | 85.59 |
| 08/18/05 | Point of Sale | 60 Commissary | 230741 | 379456 | Commissary | -59.12 | 26.47 |
| 08/23/05 | Disbursements | 80 Postage | 235302 | Chk #73783 | 8006003006, Inmate Benefit Fun, Inv. Date: 08/22/2005 | -.37 | 26.10 |
| 08/25/05 | Point of Sale | 60 Commissary | 237741 | 380551 | Commissary | -15.78 | 10.32 |
| 08/30/05 | Disbursements | 80 Postage | 242302 | Chk #73817 | 8006003088, Inmate Benefit Fun, Inv. Date: 08/23/2005 | -.83 | 9.49 |
| 08/30/05 | Mail Room | 01 MO/Checks (Not Held) | 242281 | 293025 | Wordlaw, Shirley | 50.00 | 59.49 |
| 09/02/05 | Point of Sale | 60 Commissary | 245741 | 381342 | Commissary | -6.37 | 53.12 |
| 09/02/05 | Point of Sale | 60 Commissary | 245721 | 381358 | Commissary | -1.14 | 51.98 |
| 09/07/05 | Point of Sale | 60 Commissary | 250721 | 381751 | Commissary | -2.28 | 49.70 |
| 09/12/05 | Point of Sale | 60 Commissary | 255741 | 382302 | Commissary | -47.37 | 2.33 |
| 09/12/05 | Point of Sale | 60 Commissary | 255721 | 382314 | Commissary | -2.28 | .05 |
| 09/15/05 | Payroll | 20 Payroll Adjustment | 258114 | | ICI GARMENT SHOP AUG.,2005 | 118.07 | 118.12 |
| 09/19/05 | Point of Sale | 60 Commissary | 262741 | 383300 | Commissary | -56.32 | 61.80 |
| 09/19/05 | Point of Sale | 60 Commissary | 262741 | 383301 | Commissary | -6.51 | 55.29 |
| 09/26/05 | Point of Sale | 60 Commissary | 269741 | 384625 | Commissary | -34.63 | 20.66 |
| 09/29/05 | Point of Sale | 60 Commissary | 272721 | 385148 | Commissary | -1.88 | 18.78 |
| 10/04/05 | Point of Sale | 60 Commissary | 277741 | 385402 | Commissary | -18.70 | .08 |
| 10/14/05 | Payroll | 20 Payroll Adjustment | 287114 | | I.C.I. GARMENT SHOP SEPT. 05 | 106.57 | 106.65 |
| 10/19/05 | Point of Sale | 60 Commissary | 292721 | 387526 | Commissary | -57.75 | 48.90 |
| 10/19/05 | Point of Sale | 60 Commissary | 292741 | 387531 | Commissary | -4.82 | 44.08 |
| 10/24/05 | Disbursements | 82 Debts due to State (non-postage) | 297302 | Chk #74118 | 8206005666, DOC: 523 Fund Reim, Inv. Date: 10/11/2005 | -1.08 | 43.00 |
| 10/26/05 | Point of Sale | 60 Commissary | 299721 | 388713 | Commissary | -37.72 | 5.28 |
| 10/26/05 | Mail Room | 01 MO/Checks (Not Held) | 299281 | 5448266326 | Brown, Elsie | 25.00 | 30.28 |

Date: 5/23/2006          Case 1:07-cv-06658 Linc ~~Document~~ Correctional ~~Filed~~ Center ~~2007~~    Page 12 of 46          Page 2
Time:   9:36am                                    Trust Fund

d_Lst_inmate_trans_statement_composite            Inmate Transaction Statement

REPORT CRITERIA - Date: 07/01/2005 thru End;     Inmate: B49150;     Active Status Only ? : No;     Print Restrictions ? : Yes;
        Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include Inmate Totals ? : Yes;     Print
                                      Balance Errors Only ? : No

| Inmate: B49150 Lindsey, Jeri | | | | | Housing Unit: LIN-1A-04-07 | | |
|---|---|---|---|---|---|---|---|
| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
| 10/28/05 | Point of Sale | 60 Commissary | 301741 | 389114 | Commissary | -1.34 | 28.94 |
| 11/03/05 | Point of Sale | 60 Commissary | 307741 | 389622 | Commissary | -28.84 | .10 |
| 11/10/05 | Payroll | 20 Payroll Adjustment | 314114 | | ICI OCTOBER 06 GARMENT SHOP | 95.96 | 96.06 |
| 11/18/05 | Point of Sale | 60 Commissary | 322741 | 391796 | Commissary | -58.55 | 37.51 |
| 11/18/05 | Point of Sale | 60 Commissary | 322741 | 391798 | Commissary | -1.48 | 36.03 |
| 11/22/05 | Point of Sale | 60 Commissary | 326721 | 392391 | Commissary | -2.96 | 33.07 |
| 11/29/05 | Disbursements | 82 Debts due to State (non-postage) | 333302 | Chk #74353 | 820608047, DOC: 523 Fund Reimb, Inv. Date: 11/23/2005 | -1.08 | 31.99 |
| 11/29/05 | Disbursements | 82 Debts due to State (non-postage) | 333302 | Chk #74353 | 820608048, DOC: 523 Fund Reimb, Inv. Date: 11/23/2005 | -1.08 | 30.91 |
| 11/29/05 | Point of Sale | 60 Commissary | 333741 | 392995 | Commissary | -30.81 | .10 |
| 12/08/05 | Payroll | 20 Payroll Adjustment | 342114 | | ICI GARMENT SHOP NOV. 05 | 117.47 | 117.57 |
| 12/12/05 | Disbursements | 82 Debts due to State (non-postage) | 346302 | Chk #74439 | 820608664, DOC: 523 Fund Reimb, Inv. Date: 12/08/2005 | -.27 | 117.30 |
| 12/12/05 | AP Correction | 82 Debts due to State (non-postage) | 346502 | Chk #74439 Voided | 820608664 - DOC: 523 Fund Reim | .27 | 117.57 |
| 12/12/05 | Disbursements | 82 Debts due to State (non-postage) | 346302 | Chk #74440 | 820608664, DOC: 523 Fund Reimb, Inv. Date: 12/08/2005 | -.27 | 117.30 |
| 12/14/05 | Point of Sale | 60 Commissary | 348721 | 394189 | Commissary | -59.25 | 58.05 |
| 12/14/05 | Point of Sale | 60 Commissary | 348721 | 394211 | Commissary | -2.23 | 55.82 |
| 12/21/05 | Point of Sale | 60 Commissary | 355721 | 395580 | Commissary | -54.00 | 1.82 |
| 12/21/05 | Mail Room | 01 MO/Checks (Not Held) | 355237 | 08-417567599 | Strdisky, Sitha | 50.00 | 51.82 |
| 12/23/05 | Point of Sale | 60 Commissary | 357741 | 396220 | Commissary | -1.46 | 50.36 |
| 12/28/05 | Disbursements | 82 Debts due to State (non-postage) | 362302 | Chk #74576 | 820609637, DOC: 523 Fund Reimb. Inv. Date: 12/15/2005 | -.27 | 50.09 |
| 12/28/05 | Disbursements | 80 Postage | 362302 | Chk #74576 | 8006010533, DOC: 523 Fund Reim, Inv. Date: 12/27/2005 | -1.85 | 48.24 |
| 12/28/05 | Mail Room | 01 MO/Checks (Not Held) | 362281 | 1026636714 | Grimes-Yates, Sunday | 50.00 | 98.24 |
| 12/29/05 | Point of Sale | 60 Commissary | 363741 | 396763 | Commissary | -56.49 | 41.75 |
| 12/29/05 | Point of Sale | 60 Commissary | 363717 | 396773 | Commissary | -5.61 | 36.14 |
| 01/04/06 | Point of Sale | 60 Commissary | 004741 | 397267 | Commissary | -3.04 | 33.10 |
| 01/09/06 | Point of Sale | 60 Commissary | 009741 | 397807 | Commissary | -30.45 | 2.65 |
| 01/09/06 | Point of Sale | 60 Commissary | 009741 | 397816 | Commissary | -1.98 | .67 |
| 01/13/06 | Payroll | 20 Payroll Adjustment | 013114 | | ICI DEC. 05 GARMENT SHOP | 122.95 | 123.62 |
| 01/13/06 | Point of Sale | 60 Commissary | 013721 | 398675 | Commissary | -4.42 | 119.20 |
| 01/17/06 | Point of Sale | 60 Commissary | 017721 | 398889 | Commissary | -58.84 | 60.36 |
| 01/17/06 | Point of Sale | 60 Commissary | 017721 | 398890 | Commissary | -2.88 | 57.48 |
| 01/23/06 | Mail Room | 01 MO/Checks (Not Held) | 023253 | 4777954932 | Adams, Carl | 50.00 | 107.48 |
| 01/24/06 | Point of Sale | 60 Commissary | 024721 | 400063 | Commissary | -23.89 | 83.59 |
| 01/24/06 | Point of Sale | 60 Commissary | 024721 | 400065 | Commissary | -46.47 | 37.12 |
| 01/24/06 | Point of Sale | 60 Commissary | 024721 | 400074 | Commissary | -2.72 | 34.40 |
| 02/01/06 | Point of Sale | 60 Commissary | 032741 | 400898 | Commissary | -34.28 | .12 |
| 02/06/06 | Payroll | 20 Payroll Adjustment | 037114 | | ICI JANUARY, 2006 GARMENT SHOP | 105.68 | 105.80 |
| 02/08/06 | Point of Sale | 60 Commissary | 039717 | 401826 | Commissary | -85.63 | 20.17 |
| 02/21/06 | Point of Sale | 60 Commissary | 052741 | 402989 | Commissary | -19.87 | .30 |
| 03/10/06 | Payroll | 20 Payroll Adjustment | 069114 | | ICI FEB. 06 GARMENT INDUSTRY | 66.55 | 66.85 |
| 03/13/06 | Disbursements | 81 Legal Postage | 072302 | Chk #75073 | 810614613, Inmate Benefit Fund, Inv. Date: 02/27/2006 | -4.71 | 62.14 |
| 03/13/06 | Disbursements | 82 Debts due to State (non-postage) | 072302 | Chk #75076 | 8206015260, DOC: 523 Fund Inma, Inv. Date: 03/09/2006 | -4.40 | 57.74 |
| 03/15/06 | Point of Sale | 60 Commissary | 074741 | 405836 | Commissary | -56.39 | 1.35 |
| 03/29/06 | Point of Sale | 60 Commissary | 088741 | 407568 | Commissary | -1.10 | .25 |

**Trust Fund**

Inmate Transaction Statement

REPORT CRITERIA - Date: 07/01/2005 thru End;　Inmate: B49150;　Active Status Only ? : No;　Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;　Print Furloughs / Restitutions ? : Yes;　Include Inmate Totals ? : Yes;　Print
Balance Errors Only ? : No

Inmate: B49150 Lindsey, Jeri　　　　　　　　Housing Unit: LIN-1A-04-07

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| 04/14/06 | Payroll | 20 Payroll Adjustment | 104114 | | ICI GARMENT SHOP MARCH 06 | 128.71 | 128.96 |
| 04/20/06 | Point of Sale | 60 Commissary | 110741 | 410487 | Commissary | -85.57 | 43.39 |
| 04/20/06 | Point of Sale | 60 Commissary | 110741 | 410489 | Commissary | -2.50 | 40.89 |
| 04/20/06 | Point of Sale | 60 Commissary | 110741 | 410490 | Commissary | -2.50 | 38.39 |
| 04/20/06 | Point of Sale | 60 Commissary | 110721 | 410507 | Commissary | -1.70 | 36.69 |
| 04/27/06 | Point of Sale | 60 Commissary | 117741 | 411396 | Commissary | -1.38 | 35.31 |
| 05/05/06 | Point of Sale | 60 Commissary | 125741 | 412044 | Commissary | -31.98 | 3.33 |
| 05/05/06 | Point of Sale | 60 Commissary | 125717 | 412155 | Commissary | -2.49 | .84 |
| 05/11/06 | Payroll | 20 Payroll Adjustment | 131114 | | ICI APRIL, 06 GARMENT IND | 109.61 | 110.45 |
| 05/15/06 | Point of Sale | 60 Commissary | 135741 | 412837 | Commissary | -99.77 | 10.68 |
| 05/17/06 | Mail Room | 01 MO/Checks (Not Held) | 137253 | 183069 | Wordlaw, Shirley | 50.00 | 60.68 |
| 05/17/06 | Mail Room | 01 MO/Checks (Not Held) | 137253 | 183070 | Wordlaw, Shirley | 50.00 | 110.68 |
| 05/22/06 | Point of Sale | 60 Commissary | 142721 | 414018 | Commissary | -70.47 | 40.21 |
| 05/22/06 | Point of Sale | 60 Commissary | 142721 | 414021 | Commissary | -1.80 | 38.41 |
| 05/22/06 | Mail Room | 01 MO/Checks (Not Held) | 142281 | 09338843158 | Adams, Carl | 25.00 | 63.41 |
| 05/22/06 | Mail Room | 01 MO/Checks (Not Held) | 142281 | 09338843160 | Adams, Carl | 25.00 | 88.41 |
| 05/22/06 | Mail Room | 01 MO/Checks (Not Held) | 142281 | 09338843171 | Adams, Carl | 50.00 | 138.41 |

| | |
|---|---:|
| Total Inmate Funds: | 138.41 |
| Less Funds Held For Orders: | .00 |
| Less Funds Restricted: | 1.65 |
| Funds Available: | 136.76 |
| Total Furloughs: | .00 |
| Total Voluntary Restitutions: | .00 |

**RESTRICTIONS**

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|--------------|----------------|------|-------------|--------|--------|
| 05/22/2006 | 8006019538 | Disb | Postage | 251 Inmate Benefit Fund | $1.65 |
| | | | | Total Restrictions: | $1.65 |

A (4.) <u>Issues raised in my Direct Appeal</u> were! <u>I: The</u>
<u>Trial Court Erred In Failing To Suppress Ms. Lindsey's</u>
<u>Statements As Involuntary.</u> At the heart of the State's
case against Ms. Lindsey was evidence of various written
and oral statements she made to the police. Contrary to
the State's assertion that this appeal challenges only the
admission of both the oral and written statements. The
statements were the subject of a pretrial suppression motion
which argued that they were involuntary because of the
combined effect of coercive statements by the police,
improper advice that the State's Attorney decide when she
can have an attorney or whether or not she goes to jail.
The refusal by the police to allow her to make any telephone
calls and the influence of medication and lack of sleep.
The trial court's denial of that motion to suppress was erroneous
because the court; (a) refused to consider whether improper
recitation of the Miranda rights and denial of access to a lawyer
and to a telephone contributed to the involuntariness of Ms.
Lindsey's statements. (b.) expressed an opinion as to the effects
of medication without any basis in the record, and (c.) reached
a result contrary to the manifest weight of the evidence.
Accordingly, Ms. Lindsey's conviction should be vacated.
A.) The Trial Court Improperly Struck Allegations Relating
To Access To Counsel And The Telephone. Before even
hearing evidence on the motion to suppress, the Court struck
the allegations that, when asked for an attorney, the police
told her "we won't give you a lawyer, we decide whether
you go to jail or not. Phone calls refused. These allegations
should not have been stricken because they bear directly

On the issue of the voluntariness of Ms. Lindsey's incriminating statements under the due process clause. (1.) The State does not deny that the stricken allegations were relevant to Ms. Lindsey's claim that her statements were voluntary. Rather, the state argues that the allegations need not have been considered because no separate _Miranda_ motion was brought. (2.) The court did not, in fact, consider the stricken allegations. The State contends that "Ms. Lindsey was not prejudiced by the trial court's "supposed" refusal to consider the involuntary claim under _Miranda_, because the stricken allegations were nonetheless considered by the trial court when it decided the motion to suppress. (3.) There is a sufficient record for review. Apparently in the alternative, the State contends at various points in its brief that there is no evidence of actual error for review because Ms. Lindsey offered no testimony on the stricken allegations at any time. However, there is a sufficient record for review purposes. For the purposes of review, the requisite formality of an offer of proof will depend upon the circumstances of the particular case. Where the nature and substance of the testimony or evidence offered is obvious, a formal offer of proof is unnecessary and a statement by counsel may suffice. Ms. Lindsey's motion clearly presented the substance of the obviously relevant and material

trial Court's error is not waived. (5.) If not preserved for review the error constitutes plain error. Even if error in striking allegations was not preserved, it constitutes plain error which cannot be waived. Even if she had not initially invoked plain error review, this Court should still review the trial court's action for plain error in order to ensure a just result and a uniform body of precedent. B.) The Trial Court Improperly Rendered A Medical Opinion. C.) The Trial Court's Ruling On Voluntariness Was Against The Manifest Weight Of The Evidence. Ms. Lindsey's opening brief demonstrated that the trial court committed manifest error in its analysis of the circumstances that it did consider. First, the State contends that Ms. Lindsey's claims of exhaustion are not supported by the record. While courts have held that the fact that a defendant was tired will not alone render a confession involuntary, the trial court utterly failed to properly consider the extent of Ms. Lindsey's state of exhaustion in the totality of circumstances. D.) The Errors By The Trial Court Require Reversal Of The Conviction. The trial court's errors in admitting Ms. Lindsey's statements must be addressed individually as well as together to determine whether this Court should reverse Ms. Lindsey's conviction.

II. The Trial Court Erred When It Failed To Suppress Evidence As The Fruit Of An Illegal Arrest.

Ms. Lindsey established in her opening brief that the trial court should have granted Ms. Lindsey's motion to suppress identification evidence and her statements as fruits of an arrest without probable cause. The trial court's determination that the arrest was legal was based largely on witness identifications of a Polaroid

(4)

Phase 0:07-cv-00638   Document 1   police detter yes. Lindsey was already in custody; absent the photo, there was no probable cause. A.) Ms. Lindsey Has Not Waived Any Claim She Was In Custody When She Accompanied Police Officers To The Station. The State initially contends that Ms. Lindsey waived her claim on appeal that evidence should be suppressed as fruit of an illegal arrest because she testified, and her counsel agreed, that she "voluntarily" came to the station and provided evidence. Defense counsel's arguments before the trial court that the circumstances leading to and including Ms. Lindsey's ride to the police station were custodial and that the police detectives mislead Ms. Lindsey, make clear that counsel was actually saying that Ms. Lindsey's testimony to "voluntarily" accompanying the officers was not the knowing and willing voluntariness required by the Fourth Amendment. Rather, it must have meant something less than that, such as that she was tricked into compliance or not physically forced to accompany the officers. B.) Ms. Lindsey Was In Custody By The Time Her Polaroid Picture Was Taken. However, the photo itself was the product of an arrest without probable cause and cannot support a finding of probable cause. She was unfamiliar with the criminal justice system; she suffered from lack of meaningful sleep; she was not questioned at her home. She was not informed that she did not have to come with the three armed detectives who came to pick her up; she was not told that she could arrange her own transportation while riding with the three detectives she was asked to provide potentially incriminating evidence; she was not told that she didn't have to provide the evidence; she was taken to the police station nearest the home of the evo-

⑤

She was free to leave and the detectives picked her up solely for the purpose of obtaining and identification.

C.) The State Does Not Respond To The Argument That There Was Not Probable Cause For The Arrest Without The Polaroid Identification. D.) The Inevitable Discovery Rule Does Not Apply. In determining the admissibility of fruits of illegal searches or seizures, courts must consider what actually happened, not speculate about what might have occurred. More importantly, where a defendant is taken into custody without probable cause for the purpose of obtaining an identification the police do not yet have, and where the identification evidence is a direct consequence of the illegality, courts do not apply the inevitable discovery doctrine.

III. Ms. Lindsey Was Not Afforded Constitutionally Effective Assistance Of Trial Counsel. Ms. Lindsey established in the opening brief that her trial counsel was ineffective for a host of reasons related to his lack of preparedness and diligence in pursuit of defending Ms. Lindsey. A.) The Ineffective Assistance Of Trial Counsel Claims Are Not Waived. The State is wrong as a matter of fact and law. The State contends that Ms. Lindsey's ineffective assistance of counsel claims are waived because they were not raised before the trial court, and because Ms. Lindsey made a conclusory statement of "no specific complaints" against her counsel in a pretrial affidavit in support of a motion for substitution of counsel. B.) Trial Counsel Was Constitutionally Ineffective. Ms. Lindsey's initial brief identified three areas of objectively unreasonable failures by trial counsel.

(1.) Failure to grasp dispositive law and effectively present one
suppress statements as involuntary. (2) Failure to employ
impeachment tools, and (3) Failure to challenge the suggestion
of the photo array. The Initial brief also contended
that even if none of the errors alone prejudiced Ms.
Lindsey, the errors cumulatively prejudiced her. The
State's responses to these arguments are meritless as shown
below. (1.) Trial counsel failed to grasp dispositive law and
preserve issues that arose in the pretrial motion to
suppress statements as involuntary. To the extent the
issues and evidence were not preserved because there was
no contemporaneous objection or post-trial motion specifically
challenging the trial court's improper striking of relevant allegations
from the motion and no effort was made to make all the
relevant arguments or place all the relevant testimony in the
record at trial, trial counsel was ineffective. (2) Trial counsel
failed to effectively challenge identification testimony. As
stated in the opening brief, trial counsel failed to employ
readily available impeachment tools. Eyewitnesses who identified
Ms. Lindsey as the woman in the cab had described the woman
as weighing 120 to 140 pounds, whereas there was documentation
that Ms. Lindsey weighed 190 pounds at the time. "Actually
I weighed 210 lbs at the time of my arrest. Fourteen days
after being in the county jail, I went to the doctor and I
had lost 14 lbs. I weighed 198. I gave it to my attorney
He lost it and miraculously came up with another weight
entirely. He failed to impeach the witnesses by establishing
Ms. Lindsey's 190 pound weight at the time of the offense.
Defense counsel also utterly failed to take advantage of
the fact that Ms. Lindsey has a large mole on her nose,
and the eyewitnesses never stated at any time that the woman
with whom they shared the cab had such a mole. The eyewitnesses

held a good opportunity to assess the weight of the woman with whom they shared a cab when the woman hailed and entered the cab a short distance down the road. The (7) failure to effectively employ the impeachment tools prejudice Ms. Lindsey because the trial court left (was) erroneously believing the identifications were stronger than they were, and the identifications placed Ms. Lindsey at O'Hare airport where the murder occurred. (3) Trial counsel failed to challenge photo array. Ms. Lindsey established in the opening brief that the Polaroid photo array was suggestive, and that trial counsel should have challenged it. The Polaroid photo array included only two women who fit Mr. Eiselt's and Ms. Hess's general description from the chest up, Ms. Lindsey was the only witness wearing a jacket for fall, and the photo of Ms. Lindsey was taken from too far to clearly reveal her prominent mole, "but I could still see it." Because eye-witness descriptions were of a "chunky" woman weighing some 50 pounds less than Ms. Lindsey and there was no mention of a mole like Ms. Lindsey's that would have been obvious to anyone who spent 30 minutes in a cab with her, the eye witness descriptions materially differed from Ms. Lindsey and there should have been a motion to exclude the suggestive photo array. Ms. Lindsey in fact materially differed in appearance from the descriptions initially offered by the eye-witnesses. Hence there is a probability of actual misidentification. IV. Ms. Lindsey Was Denied Her Right To Counsel Of Choice. Ms. Lindsey's opening brief established that she was denied her right to choice of counsel because the trial court never considered her letter-motion addressed to the judge for substitution of her ineffective retained counsel with a public defender, and the trial court's failure to do

into the ineffectiveness issues raised only in Ms. Lindsey's
pre se letter motion. Ms. Lindsey had a right to have (8)

her ineffective assistance of retained counsel concerns
addressed. (A.) 3.) Issues raised in my Supreme Court
Appeal were: I. The Appellate Court Erred In Affirmin
The Trial Court's Denial of Ms. Lindsey's Motion To
Suppress Involuntary Statements Under Due Process Clause.
The Appellate Court erred in failing to reverse the trial
court's denial of Ms. Lindsey's motion to suppress
statements. The trial court improperly struck allegations
from the motion to suppress statements as involuntary,
improperly mitigated Ms. Lindsey's prolonged prepresentment
detention and improperly rendered a finding of medical fact
The errors require reversal of Ms. Lindsey's conviction.
A.) The Trial Court Erred When It Refused To Consider
Evidence In Support of Ms. Lindsey's Motion Related To
Access To Counsel And A Telephone. Ms. Lindsey claimed
on appeal that the trial court improperly struck allegations
related to access to counsel and a telephone from Ms. Lindsey
motion to suppress statements under the due process clause
Reversal is mandated because the trial transcript reveals
that the trial court explicitly refused to consider the evidence
and the error constitutes plain error. B.) The Trial Court
disregarded Riverside V. Mc Laughlin, when it Improperly
Mitigated Ms. Lindsey's Prolonged Pre-Presentment Period of
Custody. The trial court erred again in ruling on the
evidence that it did consider. Contrary to Riverside v.
Laughlin, the trial court improperly mitigated the
extended, over 40 hour period of prepresentment custody
on the grounds

that the police needed to determine whether
Ms. Lindsey was a witness, a perpetrator, or an innocent
victim. The Appellate Court never addressed Ms. Lindsey's
argument on appeal that the trial court's reasoning
contravened <u>Riverside</u>'s holding that police cannot (9)
delay presentment for an extended period of time
for the sole reason that they need to continue questioning
the suspect. Contrary to the State's prior position on
appeal, this error also was not waived by any failure
to preserve it because of the close balance of the
evidence and the importance of Ms. Lindsey's statements
to the State's case. (C.) The trial court improperly
rendered a medical opinion. Ms. Lindsey testified
that she entered custody in an exhausted state,
in part, because the combination of Tylenol and her
rape-kit medication dehydrated her, causing her to
consume excess liquid and need to constantly urinate
Without foundation in the record, the trial court
improperly rejected Ms. Lindsey testimony on the
grounds that he did not "believe there is medication
that would cause "such a reaction, and that if so,
Ms. Lindsey's medication was not "that kind of
medicine. In so ruling on evidence essential to the
State's case, the trial court committed plain and
reversible error. (reversible error for trial court
to rest its ruling on unverifiable facts not in evidence)
Futhermore, the finding that Ms. Lindsey effectively
testified to an impossible medical fact necessarily
infected the trial court's judgment of the credibility
of Ms. Lindsey's other claims of coercive conduct
and circumstances. D.) The trial court's errors and
failure to suppress require reversal of Ms. Lindsey's

Lindsey's motion to suppress involuntary statements under (10) the due process clause should have been granted and her convictions should be reversed. In addition to the stricken allegations, Ms. Lindsey's motion was supported by evidence that she entered custody in a pre-exhausted state due to a weekend-long crack cocaine binge and a rape-kit medication reaction, was subject to late night and early morning interrogation, had little opportunity for meaningful sleep on the interrogation room table, was subject to a pre-presentment period of custody over 40 hours long, and contended with various threats and promises relating to the outcome of her case if she confessed. Because the State's case hinged on the admissibility and reliability of Ms. Lindsey's statements, the trial courts' errors and failure to suppress the statements mandate reversal. II. <u>The Appellate Court Erred When It Rejected Ms. Lindsey's Claim That Her Trial Counsel Was Constitutionally Ineffective For Failing To Raise, Before Or During Trial, Evidence Related To Access To Counsel And A Telephone.</u> The Appellate Court rejected on alternative grounds Ms. Lindsey's claim that her trial counsel was constitutionally ineffective for failing to present, before or during trial, evidence in support of the allegations originally struck from the pretrial suppression motion that: when Ms. Lindsey requested counsel, the police told her they would not get her one; that the police decide if she gets a lawyer; and that the police refused her access to a telephone. The Appellate Court's reasoning does not stand or rather...

first, in response to the part of Ms. Lindsey's claim to the effect that her trial counsel was ineffective for failing to present at trial evidence (11) in support of the Stricken allegations, the Appellate court ruled: "Defendant now apparently contends that counsel should have re-argued defendant's claim that her statements were not voluntary. We find no merit to this allegation of error. The trial judge had already ruled that defendant's statements were voluntary when he denied the defendant's motion to suppress." In so ruling, the Appellate Court directly contravened the United States Supreme Court's holding in Crane v. Kentucky, wherein the Supreme Court held that the defendant was deprived of a fair trial because the trial court specifically prevented defense counsel from offering at trial evidence that an incriminating statement was involuntary. The Supreme Court found it unnecessary to address whether the trial court had properly determined on a pretrial motion that the incriminating statement was admissib because a fact finder at trial can always decide that an admissible statement was insufficiently reliable for a guilty verdict. Here accordingly, Ms. Lindsey could have been, and was, denied a fair trial because the evidence counsel failed to present at trial casts sufficient doubt on the reliability of her statements that there is a reasonable probability she would not have been found guilty. Trial counsel's objectively unreasonable failure to present the evidence at any time prejudiced Ms. Lindsey not only because the evidence casts doubt on the reliability of the verdict by casting doubt on the reliability of the statements but also because the evidence obtained at a certain

process clause. Futhermore, because prejudice from a counsel's error is established by the deprivation of any substantive or procedural right, counsel's mere failure to raise the evidence pursuant to the pretri suppression hearing prejudiced Ms. Lindsey by depriv. her of her due process right to a fair pretrial hearing in which all the underlying factual issues bearing on the voluntariness of her statements are actually and reliably determined. Jackson v. Denno, because in addition, there can be no doubt that Ms. Lindsey was in custody during the questioning, counsel's failur to raise during the due process voluntariness hearing or at trial evidence supporting the allegations that the police disregarded any request for counsel prejudiced Ms. Lindsey's right to have her statements suppressed for failure to honor her Fifth Amendment right to remain silent. III. The Appellate Court Erred When It Ignored Fourth District Precedent And Did Not Reverse The Trial Court's Denial Of Ms. Lindsey's Sixth Amendment Right To Choice Of Counsel.

The Appellate Court never addressed Ms. Lindsey's claim on appeal that the trial court denied her Sixth Amendment right to choice of counsel when it failed to hold a hearing or otherwise address the allegations raised in Ms. Lindsey's pro se letter-motion to the trial court for substitution of counsel. The letter-motion alleged facts supporting a finding that Ms. Lindsey' trial counsel was so neglectful of her case that he was providing her ineffective assistance. In so proceeding, the Appellate Court ignored Ms. Lindsey's citation to the Fourth District's decision in People v.

*Pondexter*, where in the Fourth District Court held that a defendant has a right to be heard on a pro se [3] motion for substitution of counsel that alleges retained counsel is ineffective. Given that Ms. Lindsey filed her letter-motion nearly a year before her case went to trial, given the profound neglect of her case alleged in her letter-motion, and given the ineffective representat she received, the trial court denied Ms. Lindsey her Sixth Amendment right to choice of counsel when it failed to consider her written pro se motion to substitute her retained counsel with any public defender. **IV. The Appellate Court Erred In Upholding The Trial Court's Denial Of Ms. Lindsey's Motion To Suppress Evidence As The Fruit Of An Illegal Arrest.** Ms. Lindsey moved to suppress, as the fruit of an illegal arrest, a Polaroid array identification, fingerprints, a line-up identification and her incriminating oral and written statements. Both the trial and appellate courts relied upon the Polaroid photograph taken when Ms. Lindsey was brought to the police station to support probable cause for her arrest. However, Ms. Lindsey's contention is that the police arrested her before obtaining that Polaroid when three armed detectives picked her up at her home, offered misleading statements regarding their purpose, drove her to a police station and asked for incriminating evidence along the way. Accordingly, the Polaroid photo cannot be used to justify the arrest. The Appellate Court affirmed the trial court's denial of the motion, holding that Ms. Lindsey was not in custody when the Polaroid photo was taken. It was undisputed in the present case that the defendant voluntarily accompanied officers to the police station and submitted to fingerprinting and photographing. At no time during

she was not free to leave, or placed in a locked room. However, as argued to the appellate and trial courts, the trial record demonstrates that Ms. Lindsey's "voluntary" compliance was obtained through misleading statements by the police and other custodial circumstances which vitiate otherwise "voluntary" cooperation. "Even if a defendant was not told that she or he was under arrest, not touched by a police officer, not handcuffed, fingerprinted, searched, or subject to any other arrest procedures, she or he may have been illegally detained if she or he was not told that she could leave and did not feel free to leave. The evidence supporting Ms. Lindsey's motion that she was in custody without probable cause before any evidence supporting probable cause was obtained included: she was unfamiliar with the criminal justice system; she suffered from lack of meaningful sleep, she was not questioned at her home, she was not informed that she did not have to come with the three armed detectives who came to pick her up, she was not told that she could arrange her own transportation. She rode in the squad car with three detectives and was asked to provide potentially incriminating evidence in the close confines of the moving squad car, she was not told that she did not have to provide the evidence; she was taken to the police station nearest the home of the eye-witnesses; she testified that she did not feel free to leave the detectives' company by the time they arrived at the station; and the detectives picked her up solely for the purpose of obtaining an identification. The evidence supporting Ms. Lindsey's contention that her voluntary compliance was not a true and knowing waiver rather be not



Amendment right to not accompany the police detectives
included the above facts as well as evidence the
detectives misled her as to their purpose in questioning
her. One of the detectives testified that when they
arrived at Ms. Lindsey's home to pick her up, the
three detectives told her that they wanted to <u>talk</u> to
her, even though the detectives admitted under oath
that their purpose in picking her up was to obtain her
picture and fingerprints. The detectives also testified to
ambiguous explanations to Ms. Lindsey regarding the scope
of their purpose; they identified their purpose as
investigating her rape complaint and a murder, even
though her complaint was not in their district and the
evidence they sought could not establish the validity
of her rape complaint. Such misrepresentations of the
risk of compliance with the police vitiates consent.
Wayne R. LaFave, Search and Seizure. In alternative, the
trial court (but not the Appellate Court) held that the
Polaroid photo identification supporting probable cause
should not be suppressed because of the inevitable
discovery doctrine is applicable. There is no evidence
in the record indicating the evidence was available
from a public source, and, even if there were such
evidence, the inevitable discovery doctrine would
not apply because Ms. Lindsey's cooperation was
obtained by police misconduct.

1. C.) Issues raised in my Post-Conviction Petition were
(A.) Petitioner, Jerri Robbin Lindsey, Was Denied Her Right
To Due Process As Guaranteed By The Fourteenth Amendm.
Of The United States Constitution And Article I §2 Of The
Illinois Constitution In That Evidence Failed To
Establish Beyond All Reasonable Doubt Identity of
Petitioner As Alleged Perpetrator Of This Crime. Petition.
Jerri Robbin Lindsey was alleged to have shared a cab
with witnesses, John Eiselt and June Hess. This cab was
driven by Rudolph Bennett, the victim, on Oct. 9th 1992.
Eiselt and Hess claim that when they were picked up
by cab, a woman was seated in the back seat, and this
woman moved to the front seat to accomodate Eiselt
and Hess. According to Eiselt and Hess however, who
were inquiring about a train schedule for the Metra
train, the woman in the front seat told Eiselt and Hess that
she often used the Metra train and handed the elderly
couple this schedule, her facial features would have
been seen and without a doubt, if the woman was Jerri
Robbin Lindsey, the black mole and nose ring would have
been features that Eiselt and Hess would surely remember
and include in their description of this alleged suspect.
Therefore, Eiselt and Hess only truly recall that this other
woman, in the front seat, had a ball cap on and that her hair
was combed to the left side of her head. So to ascertain that
fact concerning the hair, the woman's hair must have been
long enough to actually comb to the left side. Petitioner
states this to indicate that at the time of this alleged
crime, her hair was not visible for it was short around



all sides and therefore, unable to determine whether her hair was combed either to the left side of her head or the right side, cause it would not have been visible from under a hat. Eiselt and Hess also described this other woman in the cab with them as weighing 130 or 14 pounds, with chunky build, black, being approximately 5'5 to 5'6" tall. Petitioner, at the time of the alleged crime weighed 210 pounds, 5'4½" tall. These two witnesses mentioned no other distinguishing marks or characteristics about this other woman passenger, and yet, this vague description was used to convict the Petitioner. The discrepancies in the witnesses' description are more than simply minor, insignificant or trivial variances. Petitioner weighed 210 pounds, did not have hair long enough to comb to either side of her head and be seen from underneath a ball cap on her head, and Petitioner has a very large, black mole on the tip of her nose. In, addition, Petitioner wore a gold hoop nose ring in her nose has very full lips and a big mouth in its physical description, not verbal one and with a relatively big gap between her two top front teeth. These are characteristics, not able to be overlooked and a person would most certainly observe these. But, Eiselt and Hess did not. In addition, when Eiselt and Hess inquired of a Metra train schedule, they say the other woman passenger handed them a schedule with her left hand. If the alleged suspect was Jerri Robbin Lindsey, then the tattoo on Ms. Lindsey's left hand would also be a descriptive feature that Eiselt and Hess would have remembered, for the tattoo was between her thumb and



pointer finger and was of the initials J.R.L, Petition
name initials. But, instead these witnesses remembered
none of the distinguishing characteristics or features
herein mentioned. Eiselt and Hess never included in
their description of the alleged suspect, the fact that she
had a mole on the tip of her nose. However, this same
characteristic, a large, black mole, was very visible
in the photo taken of Petitioner, which was shown to
Eiselt and Hess. This distinguishing mark cannot be
omitted from a witnesses description of a suspect, for
it is so noticeable and obvious. Yet these witnesses did
so, but selected the Petitioner's photo of her face up
close as the suspect. John and June Hess identified the
Petitioner as the other passenger in the cab they rode
in. Both these witnesses identified the Petitioner from a
photo array, and then days later from a line-up, of
course, these witnesses also identified her from the
line-up, for they had already identified her from a picture
which they viewed jointly and selected the same face
from the line-up. If Jerri Robbin Lindsey had been
in the cab, the day in question, October 9, 1992, she
must have been a ghost for her finger-prints were no
where within the cab or outside of the cab, which was
thoroughly tested by forensic specialists. In addition,
Petitioner's finger-prints were not on the Metra train
schedule allegedly given to Eiselt and Hess by Petitioner.
Once again, giving credence to the fact that Petitioner
was not perpetrator of this crime, raising the question
of arrest at guilt to sustain a conviction beyond a reasonable

doubt. This gives rise to reasonable doubt as the Petitioner being the alleged killer of Rudolph Bennett. The complaining witnesses were elderly, ages 70 & 71, and fragile in memory. From the description they gave of the other woman passenger, the Petitioner could not be properly identified. The complaining witnesses' description of the alleged suspect or perpetrator substantially differs from actual physical characteristics of the Petitioner. The absence of these previously stated outstanding features of Jerri Robbin Lindsey greatly undercuts the strength of the witnesses' identification of her. Futhermore, failure to assert a distinctive physical feature which the Petitioner possesses is prima facie inconsistent conduct which, unexplained, tends to discredit witnesses, thus violating Petitioners due Process rights.

B.) Petitioner, Jerri Robbin Lindsey, Was Denied Her Right To Effective Assistance Of Counsel, As Guaranteed By The Sixth Amendment And Fourteenth Of The United States Constitution And Article 1, §8 Of The Illinois Constitution In That Trial Defense Attorney Failed To Investigate Petitioner's Alibi And The Witnesses To Such Alibi, Failed To Interview And Secure Witnesses To Present Character Mitigating Factors At Sentencing Hearing, Failed To Investigate Or Adequately Prepare For trial, And Failed To Challenge Identification Of Petitioner, As Perpetrator, To Fullest Extent Possible. Petitioner was represented by private counsel throughout these proceedings. This counsel was Sheldon Sorosky, whose office is located in Chicago, Illinois, and he was retained, to represent Petitioner, by family and friends of Petitioner. From the onset at all criminal

proceedings against Petitioner, Petitioner forthright gave her attorney a detailed list of names to be called for potential witnesses, statements made by policing agents that were made in threatening or intimidating manners, alibis for the day that Petitioner is alleged to have committed the crime in which she was ultimately convicted of, and other various, important matters that defense attorney Sorosky needed to adequately defend Petitioner. Petitioner believed Sorosky was to act and defend her to the best or fullest ability and she placed all her trust in this attorney. Some instances of Attorney Sorosky's ineffectiveness are as set forth below: 1.) Attorney did not investigate Petitioner's alibi for the day of October 9, 1992, the day the crime took place that Petitioner was convicted of. The defense attorney never interviewed the individuals that Petitioner was with on October 9, 1992. This was imperative to Petitioner's defense for it stated an alibi for the Petitioner.

2.) Petitioner stated that on the day she was alleged to have killed the victim, she spent the entire day shopping at various stores and going to a restaurant with friends. Attorney Sorosky only briefly spoke with these individuals two months before trial began and for only a maximum of one hours time. This did not and could not provide Sorosky with enough time to establish a firm solid defense and correctly establish Petitioner's alibi.

3.) Attorney never tried to subpoena video tapes from stores where Petitioner was shopping to establish and prove her alibi for time the alleged crime took place, or when police claim it took place.

4.) Attorney Sorosky investigated nothing to ascertain a reasonable defense for the Petitioner. He simply squandere the two and one-half years time period proceeding the trial, as well as the funds submitted or paid to him for Petitioner's defense by Petitioner's family members. For eleven months proceeding this, Attorney Sorosky informed Irene Quiroz, Petitioner's friend, in a conversation, that he wanted $10,000 up front, in full before going further on Petitioner's case. When Ms. Quiroz and other witnesses went to Sorosky's office to discuss the case, he didn't want to hear it, he just wanted $10,000 in full. Early on Gloria Henderson, Petitioner's stepmother kept asking Sorosky did he need anymore money, but he kept declining, saying, I'l let you know when I need additional funds. After Ms. Quiroz' visit to Mr. Sorosky's office, he told Petitioner's stepmother that he needed $15,000 to proceed defending Petitioner and when asked of a payment plan, again he stated he did not want to hear about any payment plan. Attorney knew Petitioner was very upset over his lack of concern, in her case and his preparation and investigation of all matters concerning this criminal case and this, he knew would cause her to seek assistance elsewhere, so he tried to withdraw.

5.) Attorney Sorosky failed to secure witnesses to testify for the Petitioner at trial. These witnesses were Jerry St.Clai and Paul Quiroz. Petitioner was adamant in having these individuals testify on her behalf, for she knew their testimony would bare a significant impact in proving her innocence. Mr. Quiroz would have been a crucial alibi witness and Mr. St. Clair's testimony would have been

a very vital part in Petitioner's defense of a different matter,

6.) During Petitioner's trial, Attorney Sorosky asked witnesse questions that Petitioner herself told him to ask. Of course he used proper legal terminology and such, but it still was Petitioner doing the work not Sorosky.

7.) Attorney Sorosky never called any character witnesses during the sentencing hearing of Petitioner to give rise to factors in mitigation. Petitioner wanted witnesses to testify on her behalf to mitigate the state's argument or point, but Sorosk failed to do so, and would not. This was a grave prejudice to Petitioner and an outright denial of her constitutional rights. All these means of ineffectiveness, errors were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. In addition, all this deficient performance prejudiced the Petitioner. Had these serious errors not occurred, this Court would have heard testimony completely exonerating and proving Petitioner's innocence Because this court was not privy to hear that testimony and facts were not set forth or illuminated for this court to take into consideration. The serious nature of this case warranted serious actions be carried about or out by Attorney Sorosky. However, Sorosky was too carefree and lack in his judicial responsibilities. All his nonactions resulted in total ineffectiveness of counsel violating Petitioners right to effective assistance of counsel.

C.) Petitioner, Jerri Robbin Lindsey, Was Denied Her Right To Du Process, As Guaranteed By The Fourteenth Amendment Of The Unite States Constitution And Article 1, § 2 Of The Illinois Constitutio In That Photo Arrays Should Not Have Been Resorted To Where

## Petitioner Was In Custody And Available For A Fair Line-Up

On October 14, 1992, Officer Raymond Schalk and other officers, Bogucki and Halvorsen, went to the home of Petitioner, Jerri Kobbin Lindsey, and asked her if she would come to the police station to look at photographs. Petitioner believed the photographs to be of possible suspects in the alleged rape of her person, which she reported on October 11, 1992. Petitioner and the officers arrived at the police station about noon, and when asked by the officers if Petitioner would agree to be finger-printed and photographed, she consented. While the officers talked with defendant, the photograph taken of her was shown in a array to potential state witnesses Eiselt and Hess for identification of the alleged killer of a cab driver. When these two potential witnesses, Eiselt and Hess, were shown the photographs, they identified the Petitioner as the woman who was riding in the cab they took on October 9, 1992, the day of the victim's death.

At the same time that Eiselt and Hess were shown the photograph of the Petitioner in an array of photos, she was sitting in an interview room in the very same building. Petitioner's contention is that there is no need to resort to the use of photographs when a suspect is available for a fair line-up which maybe expected to yield a better opportunity for observation and accurate identification. The photo procedure detracts from the quality of any identification which may subsequently follow. Petitioner was readily and feasibly available for a fair line-up as opposed to identification by photo, which can, and did render in this instance, misidentification of Petitioner which thus, violated her right to due process.

1.) H. In Regards To What Happened After My Post-Conviction Petition Was Reversed And Remanded: I won on ineffectiveness of my trial and Post-Conviction Counsels, that they failed to call certain witnesses. One witness, Mr. Jerry St. Clair was supposed to be called on the fact that, he told me not to tell the lie that I told concerning my rape allegation, but yet they had him down to be called as one of my alibi witnesses which was misconstrued since I already have alibi witnesses for the day in question, which was October 9, 1992, I didn't see Jerry St. Clair until October 10th, about 2:am to October 11th til about 9:00 pm. I told the lie, cause I was getting high with Jerry St. Clair for practically two days and I did not want my friend to be mad so I made up this lie and I told Mr. St. Clair what I was going to say and he told me not to tell the lie and that's why I wanted him called, but somehow, my Attorney Mr. Black got it wrong after I talked to him personally and I wrote him about the situation and he still wrote the brief the way he wanted and when I read it I knew he had screwed up! He had dates + times wrong also. After screwing around for two years the State decided to file a motion to dismiss my post-conviction petition and the judge granted it, cause of course Jerry St. Clair denied being with me October 9th when I went shopping with my other witnesses; cause he was not with me and I never said he was, so now I have to be punished, cause once again an attorney screwed up! After my Post-Conviction Appeal was denied, after the Reverse and the Remand, it was appealed again. Finally when an attorney was appointed for me, he decides that my case held no meritorious issues to stay on appeal so

he wanted me to dismiss my case, but I told him no!, and if he felt with absolute certainty that my case held no merit to stay on appeal, then he had to withdraw, so he did. The court wrote me and gave me thirty days to present a handwritten letter of explanation on why I felt my case had merit to stay on appeal. I sent four copies of an eleven page, handwritten, letter of explanation, due March 3, 06 and it was filed March 2, and a couple of wks. ago it was denied. They allowed him to withdraw, so now my state appeals are exhausted. The Attorney Steve Gentry, who withdrew from my case, his location is 203 North LaSalle St. 24th Fl. Chgo., Ill. 60601

The relief I'm requesting is a re-hearing, re-trial and or time cut. I'm asking for my re-hearing, re-trial, cause I'm innocent and I want a second chance on proving my innocence I'm asking for a time-cut, just in case all else fails, cause I'm tired! Thank You!

Sincerely, Jerri Cobbin-Lindsey
B49150

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*EXHIBIT*
*-ONE-*

```
UNITED STATES OF AMERICA         )
ex rel. JERRI ROBBIN LINDSEY,    )
#B49150,                         )
                                 )
             Petitioner,         )
                                 )
    v.                           )   No.  06 C 3213
                                 )
WARDEN CAROLYN ROBERTSON,        )
                                 )
             Respondent.         )
```

## MEMORANDUM ORDER

Regrettably the January 6, 2007 letter that pro se
petitioner Jerri Robbin Lindsey ("Lindsey") wrote to this Court,
reporting that she had then exhausted all of her state post-
conviction remedies,[1] was simply filed in the Clerk's Office
without any notification to this Court of its existence or any
delivery to this Court of a copy of the letter.  Accordingly this
Court was totally unaware that the defect in Lindsey's Petition
that had led to its dismissal had been cured until Lindsey wrote
a follow-up letter on October 23.

This Court has taken immediate steps to follow up on the
case, including its obtaining the three unpublished orders of the
Illinois Appellate Court for the First District[2] and the Illinois

---

[1]  Nonexhaustion of those remedies had been the basis for
this Court's June 13, 2006 memorandum opinion and order
dismissing Lindsey's Petition for Writ of Habeas Corpus
("Petition").

[2]  Those orders comprise the July 25, 1997 affirmance of
Lindsey's conviction on direct appeal (Case No. 1-95-1535), the

Supreme Court's November 29, 2006 denial of leave to appeal the
Appellate Court's dismissal of the state post-conviction
petition. Those documents confirm Lindsey's satisfaction of the
exhaustion requirement and therefore call for further
proceedings.

Accordingly this Court:

1. directs Lindsey to refile her Petition so that it
may be assigned a new case number in place of the previously
dismissed Case No. 06 C 3213;[3]

2. will treat Lindsey's initial Motion for Appointment
of Counsel as applicable to the new case and, when the new
case is filed, will grant that motion, for which purpose
this District Court's regularly-employed procedure for
appointments from its trial bar will be followed;

3. will also order the Illinois Attorney General's
Office to file, on behalf of the respondent Warden, within
49 days after the new case is filed, an answer to the new
Petition in accordance with Rule 5 of the Rules Governing

_____

February 6, 2003 reversal and remand in connection with Lindsey's
post-conviction filing (Case No. 1-00-3480) and the May 10, 2006
affirmance of the Circuit Court of Cook County's post-remand
dismissal of Lindsey's post-conviction effort (Case No. 1-05-
1458).

[3] To assist Lindsey in that process, a copy of the original
Petition is being mailed to her together with a copy of this
memorandum order  When Lindsey has completed the new Petition,
she must transmit the original and two copies to this District
Court.

2

Section 2254 Cases in the United States District Courts.[4]
This Court will then determine what further proceedings are
necessary.

_Milton I. Shadur_

Milton I. Shadur
Senior United States District Judge

Date:  November 7, 2007

---

[4]  Because the materials obtained by this Court disclose an
unexplained gap of more than two years between the Appellate
Court's February 6, 2003 reversal and remand and the March 11,
2005 filing of Lindsey's supplemental post-conviction petition
with the Circuit Court, the response by the Attorney General's
Office should address the question of the new Petition's
timeliness or untimeliness under 28 U.S.C. §2244(d)(for that
purpose the January 6, 2007 date of Lindsey's letter referred to
in the first sentence of this memorandum order will be treated as
the effective filing date of her new Petition).  If counsel
believes that there is a good-faith basis for asserting
untimeliness, the answer may be limited to that issue without
addressing the merits of the Petition.  If such is not the case,
however, the answer should briefly explain why the Petition is
timely and then address the merits of Lindsey's Petition.

3

Milton I. Shadur
Senior United States District Judge
United States District Court
Northern District of Illinois
Eastern Division                    Fed. Hab. Case No.
219 South Dearborn Street              06C 3213
Chicago, Illinois 606 04

EXHIBIT
Two

Dear Judge Shadur:
  It has been ten months since my reconsideration
for Federal Writ of Habeas Corpus has been sent to
your office. I'm respectfully requesting a status
up date.

  It is my opinion that my petition holds extreme
merit and I this court is in the least, considering
my issues.

  I'm enclosing your letter of 6/12/2,006
and my letter of 1/6/2007 to refresh your memory
and to let you know this review is my last chance
effort to show my innocence.

  I'd appreciate a response at your convenience.

Sincerely,
Jerri Robbin Lindsey

Jerri Robbin Lindsey B49152
LCC - P.O. Box 549
Lincoln, Ill. 62656

*E x h i b i t*

*T H R E E*

January 6, 2007


Milton I. Shadur
Senior United States District Judge
United States District Court                        **REF: Case No. 92 CR 25135**
Northern District of Illinois
Eastern Division                                    **Fed. Hab. Case No. 06C 3213**
219 South Dearborn Street
Chicago, IL  60604

Dear Judge Shadur:

Per your <u>Memorandum Opinion and Order</u> of June 13, 2006 where you stated under
footnote ₂ that if I exhausted all of my state options you would reconsider my
Petition for Writ of Habeas Corpus submitted in May, 2006.

Per the attached letter of denial from the Supreme Court of Illinois, I have now
exhausted all of my state post conviction remedies.  I am resubmitting my Federal
Habeas Corpus and asking you to review my issues.  I am innocent of this crime.
I have been fighting this case since 1992 and I am asking for you to please
look at the circumstances and recognize that along the way my case was considered
for a rehearing and somehow got pushed to the side and neglected.

I have made many mistakes in my life.  This one, I did not.  My confession was coereced,
the line-up was faulty, my arrest was illegal, my counsel was ineffective, my
alibi witness was never contacted and questioned as to my whereabouts on the evening
of this tragic event.

I am also seeking relief from the United States Supreme Court via Writ of Certiorari
as my last and final recourse for relief.  I have served 14 years for a crime I
did not commit.  All I am asking is for you to please consider the constitutional
violations I have endured.

I am resubmitting my original petition along with copies of the letter of denial from
the Illinois Supreme Court, your Memorandum of June 13, 2006 and a copy of the
$5.00 fee paid for this consideration.  If there is anything I am leaving out, could
you please let me know.

I look forward to hearing from you soon.

Respectfully submitted,

*Jerri Robbin Lindsey*

Jerri Robbin Lindsey #B49150
Lincoln Correctional Center
P.O. Box 549
Lincoln, IL  62656

*E-Exhibit Four*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA            )
ex rel. JERRI ROBBIN LINDSEY,       )
#B49150,                            )
                                    )
                    Petitioner,     )
                                    )
    v.                              )    No.  06 C 3213
                                    )
WARDEN CAROLYN ROBERTSON,           )
                                    )
                    Respondent.     )

### MEMORANDUM OPINION AND ORDER

Jerri Robbin Lindsey ("Lindsey") has just filed her Petition
for Writ of Habeas Corpus ("Petition"), challenging her 1995
conviction on charges of first degree murder and first degree
armed robbery on which she is currently serving a 45-year term at
Lincoln Correctional Center.  This memorandum opinion and order
is issued sua sponte pursuant to Rule 4 of the Rules Governing
Section 2254 Cases in the United States District Courts ("Section
2254 Rules") because "it plainly appears from the petition and
any attached exhibits that the petitioner is not entitled to
relief in the district court" (id.).

Despite the length of Lindsey's 25-page narrative account
that she has attached to the printed form of Petition that this
District Court's Clerk's Office provides for pro se petitioners,
she has not provided most of the information as to the timing of
the prior history of her unsuccessful direct appeal in the state
court system and of her ensuing and initially successful, then

unsuccessful, efforts to obtain post-conviction relief there.
That being so, this Court cannot now tell whether Lindsey's
current Petition is or is not barred by the one-year limitation
period prescribed by 28 U.S.C. §2244(d)(1)[1]--a question that is
obviously dependent on the amount of time excluded from that
calculation under Section 2244(d)(2).  This Court is now
endeavoring to obtain from the state court authorities the
information necessary for making that determination.

In the meantime, however, the final page of the handwritten
account that Lindsey has attached to the form Petition reveals
that it must now be dismissed as premature, whether or not it
could survive a possible limitations bar.  What she reveals there
is (1) that the rejection by the Illinois Appellate Court for the
First District of her second state post-conviction effort took
place earlier this year (according to information obtained from
the Appellate Court, on May 10, 2006) and (2) that she has not
taken the matter on from there.  Under the definitive ruling in
O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999):

> Federal habeas relief is available to state prisoners
> only after they have exhausted their claims in state
> court.  28 U.S.C. §§2254(b)(1), (c)(1994 ed. and Supp.
> III).  In this case, we are asked to decide whether a
> state prisoner must present his claims to a state
> supreme court in a petition for discretionary review in
> order to satisfy the exhaustion requirement.  We
> conclude that he must.

---

[1]    All further references to Title 28's provisions will
simply take the form "Section--."

Because Lindsey has not taken the step mandated by the United States Supreme Court, she fails the exhaustion requirement of Sections 2254(b)(1)(A) and 2254(c). That being so, Section 2254 Rule 4 mandates the dismissal of the current Petition and this action, and this Court so orders.[2]

Milton I. Shadur
Senior United States District Judge

Date: June 13, 2006

---

[2] Because the dismissal order here would not necessarily foreclose Lindsey's federal habeas efforts if she were hereafter to satisfy the exhaustion requirement, this Court plans to continue its efforts to obtain the information needed for a limitations determination. If it is successful in doing so, it may hereafter issue a supplement to this opinion.

3