IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| JERRI ROBBIN LINDSEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 6658 |
| | ) | |
| CAROLYN TRANCOSO, | ) | |
| Warden, Lincoln Correctional Center, | ) | The Honorable |
| | ) | Milton I. Shadur, |
| Respondent. | ) | Judge Presiding. |

## <u>ANSWER</u>

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United

States District Courts, respondent CAROLYN TRANCOSO submits this answer to the

petition for writ of habeas corpus filed in the above-captioned cause pursuant to

28 U.S.C. § 2254(d), and states as follows:

1.     Petitioner Jerri Robbin Lindsey is currently incarcerated at the

Lincoln Correctional Center in Lincoln, Illinois, where she is in the custody of

respondent Carolyn Trancoso, the warden of that facility.  Petitioner's prisoner

identification number is B49150.

2.     On February 10, 1995, following a bench trial in the Circuit Court of

Cook County, petitioner was convicted of the first degree murder and armed robbery

of Rudolph Bennett, a taxi cab driver who was found shot to death in his cab at an

O'Hare International Airport parking garage.  Petitioner was sentenced to

concurrent terms of 45 years' imprisonment. *See* Certified Statement of Conviction, *People v. Lindsey*, No. 92-CR-25135 (Exh. A) at 10; Rule 23 Order, *People v. Lindsey*, No. 1-95-1535 (Ill.App. 1997) (Exh. B).

   3.    On direct appeal to the Illinois Appellate Court, First District, petitioner presented five claims:

   a.    the trial court erred in failing to suppress petitioner's statements on the ground that they were involuntary;

   b.    the trial court erred in finding that petitioner's photo identification, fingerprints, line-up identification, and confession were not the fruits of an illegal arrest;

   c.    the prosecutor engaged in prejudicial argument by misstating facts in closing argument;

   d.    trial counsel was ineffective for:

      i.    failing to impeach the State's eyewitnesses;

      ii.   failing to move to suppress the suggestive photo array; and

      iii.  failing to effectively present and preserve issues that arose in connection with petitioner's motion to suppress her statements as involuntary; and

   e.    petitioner was denied her Sixth Amendment right to choice of counsel.

*See* Pet. Br.*, People v. Lindsey*, No. 1-95-1535 (Exh. C); State Br., *People v. Lindsey*, No. 1-95-1535 (Exh. D).  On July 25, 1997, the state appellate court affirmed.  *See* Exh. B.

   4.    Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, presenting the following claims:

a.    the state appellate court erred in affirming the trial court's denial of petitioner's motion to suppress statements as involuntary;

b.    the state appellate court erred in rejecting petitioner's claim that trial counsel was ineffective for failing to raise, before or during trial, evidence relating to petitioner's access to counsel and a telephone;

c.    the state appellate court erred in not reversing the trial court's denial of petitioner's Sixth Amendment right to choice of counsel; and

d.    the state appellate court erred in upholding the trial court's denial of petitioner's motion to suppress evidence as the fruits of an illegal arrest.

*See* PLA, *People v. Lindsey*, No. 83901 (Exh. E).  On December 3, 1997, the Illinois Supreme Court denied the PLA.  *See* Order Denying PLA, *People v. Lindsey*, No. 83901 (Ill. 2001) (Exh. F).

5.    On March 26, 1998, petitioner filed a pro se petition for postconviction relief in the Circuit Court of Cook County pursuant to 725 ILCS 5/122-1, *et seq*.  The petition presented the following claims:

a.    the evidence failed to establish beyond a reasonable doubt that petitioner was the perpetrator of the offense;

b.    trial counsel was ineffective for:

i.    failing to investigate petitioner's alibi and the witnesses to such alibi;

ii.    failing to interview and secure witnesses to present character evidence as mitigating evidence at sentencing;

iii.    failing to investigate or adequately prepare for trial; and

iv.   failing to challenge the identification of petitioner
as the perpetrator of the offense to the fullest
extent possible; and

c.   petitioner was denied due process when a photo array was used
to identify her even though she was in custody and available for
an in-person lineup.

*See* Pro Se Petition For Post-Conviction Relief, *People v. Lindsey*, No. 92-CR-25135
(Exh. G).  In April 1998, the trial court appointed the public defender to represent
petitioner in the postconviction proceedings.[1]  On June 9, 2000, after a number of
status hearings at which counsel requested and was granted continuances, counsel
filed a written motion for extension of time in which to file a supplemental
postconviction petition or to comply with Illinois Supreme Court Rule 651(c).[2]  *See*
Exh. H.  Noting that the public defender had been appointed over two years earlier,
the trial court denied the motion for extension of time.  *See* Transcript of June 9,
2000, *People v. Lindsey*, No. 92-CR-25135 (Exh. I) at C4.  The court invited the
State to file a motion to dismiss the petition if it thought it appropriate.  *Id.* at C5.
The court set a hearing for September 15, 2000, and indicated that it would
consider a motion by petitioner's counsel to supplement the pro se petition if counsel
had one on file by the September 15 hearing.  *Id.*  Otherwise, the court stated, the

---

[1]  Counsel for respondent has been unable to locate this order in the record.

[2]  Illinois Supreme Court Rule 651(c) requires postconviction counsel to
certify "that the attorney has consulted with petitioner either by mail or in person
to ascertain his contentions of deprivation of constitutional right, has examined the
record of the proceedings at the trial, and has made any amendments to the
petitions filed pro se that are necessary for an adequate presentation of petitioner's
contentions."

-4-

case would be decided on the pro se petition.  *Id.*  The State filed a motion to dismiss

on August 17, 2000.  *See* Motion to Dismiss, *People v. Lindsey*, No. 92 CR 25135

(Exh. J).  On September 15, 2000, petitioner's counsel filed a Rule 651(c)

Certification.  *See* Exh. K.  Appointed counsel did not file an amended petition or

any supplements to the pro se petition.  On September 29, 2000, the trial court

dismissed the postconviction petition.  *See* Certified Report of Disposition, *People v.*

*Lindsey*, No. 92 CR 25135 (Exh. L).

      6.    Petitioner appealed to the Illinois Appellate Court, First District,

raising two issues:

      a.    petitioner's appointed postconviction counsel did not provide the
reasonable level of assistance required by Illinois Supreme
Court Rule 651; and

      b.    trial counsel was ineffective for failing to investigate and
present alibi witnesses.

*See* Pet. Br.*, People v. Lindsey*, No. 1-00-3480 (Exh. M); State Br., *People v. Lindsey*,

No. 1-00-3480 (Exh. N); Pet. Reply Br., *People v. Lindsey*, No. 1-00-3480 (Exh. O).

On February 6, 2003, the Illinois Appellate Court held that postconviction counsel's

failure to amend the pro se petition to include affidavits from the alleged alibi

witnesses fell below the level of reasonable assistance required by Rule 651.  *See*

Rule 23 Order, *People v. Lindsey*, No. 1-00-3480 (Ill.App. 2003) (Exh. P) at 9-12.

Accordingly, the appellate court reversed and remanded for further proceedings on

petitioner's postconviction petition.  *Id.*

7.     On remand, a different attorney from the public defender's office was appointed to represent petitioner.  Appointed counsel then requested numerous continuances in order to locate the case file, review the record, and prepare an amended petition.  *See* Transcript of Hearings From April 18, 2003 Through January 28, 2005, *People v. Lindsey*, No. 92-CR-25135 (Exh. Q).  Ultimately, on March 11, 2005, over two years after the appellate court remanded the case, appointed counsel filed a supplemental petition.  *See* Supplemental Petition For Post-Conviction Relief*, People v. Lindsey*, No. 92 CR 25135 (Exh. R).  The supplemental petition purported to "incorporate[ ] by reference the previously filed pro se post-conviction petition," and in addition presented the claim that trial counsel was ineffective for failing to subpoena or call to testify alibi witness Jerry St. Clair.  Counsel attached to the petition an affidavit from St. Clair, in which St. Clair stated that he would have testified that he was with petitioner in the late evening hours of Friday, October 9, 1992, or the early morning hours of Saturday, October 10, 1992, through the afternoon of Saturday, October 10, 1992.  *Id*. at C43.[3] On April 1, 2005, the State filed a motion to dismiss.  *See* Respondent's Motion To Dismiss Petition For Post-Conviction Relief, *People v. Lindsey*, No. 92 CR 25135 (Exh. T).  On April 15, 2005, the trial court denied the petition without an evidentiary hearing.  *See* Exh. S at R.14-17.

_____

[3] Petitioner's appointed counsel stated on record that he was unable to contact the other witness petitioner had mentioned in her pro se petition.  *See* Transcript of April 15, 2005 Hearing, *People v. Lindsey*, No. 92-CR-25135 (Exh. S) at R7-R8.

8.    Petitioner again appealed to the Illinois Appellate Court.  On February 1, 2006, petitioner's appointed appellate counsel, from the Office of the State Appellate Defender, filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  *See* Motion To Withdraw on Appeal, *People v. Lindsey*, No. 1-05-1458 (Exh. U).  Counsel explained that after examining the record on appeal and discussing the case with another attorney in his office, who had also read the record on appeal, he concluded that an appeal would be frivolous.  *Id.* ¶ 4.  Petitioner filed a response to counsel's *Finley* motion, arguing ineffective assistance of counsel, questioning the sufficiency of the identification evidence, and attempting to explain her statements to police.  *See Finley* Response, *People v. Lindsey*, No. 1-05-1458 (Exh. V).  The Illinois Appellate Court granted counsel's motion to withdraw and affirmed the trial court's judgment, finding "no issues of arguable merit to be asserted on appeal."  *See* Rule 23 Order, *People v. Lindsey*, No. 1-05-1458 (Ill.App. 2006) (Exh. W).

9.    On May 25, 2006, petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.[4]  The petition was docketed under case number 06 C 3213.  On June 13, 2006, this Court, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, dismissed the petition sua sponte for failure to exhaust state court remedies, noting that petitioner had conceded that she had not yet petitioned the Illinois Supreme Court

---

[4]  The petition was filed-stamped by the Court on June 12, 2006, but was signed and dated by petitioner on May 25, 2006.

for leave to appeal the Illinois Appellate Court's decision affirming the trial court's denial of her postconviction petition.  *See* Memorandum Opinion and Order, *United States ex rel. Lindsey v. Robertson*, No. 06 C 3213 (N.D. Ill. June 13, 2006) (Shadur, J.).

10.     On August 9, 2006, petitioner filed a motion for leave to file a late PLA, along with the proposed PLA, in the Illinois Supreme Court.  *See* Petition For Leave To Appeal, *People v. Lindsey*, No. 103409 (Exh. X).  The Illinois Supreme Court allowed the motion for leave to file a late PLA and treated it as a PLA.  *See* Order Allowing Motion To File Late PLA, *People v. Lindsey*, No. 103409 (Exh. Y). The PLA presented the following claims:

     a.    petitioner did not commit the crime;

     b.    trial counsel was ineffective for failing to investigate and present defense evidence, including the testimony of alibi witnesses;

     c.    petitioner's confession was coerced;

     d.    petitioner's arrest was unlawful;

     e.    the photo lineup was prejudicial;

     f.    there was no DNA or ballistics evidence connecting petitioner to the crime; and

     g.    trial counsel was ineffective for failing to bring out the discrepancies in the State's case.

*See* Exh. X.  On November 29, 2006, the Illinois Supreme Court denied the PLA.

*See* Order Denying PLA, *People v. Lindsey*, No. 103409 (Ill. 2006) (Exh. Z).

11.    On January 6, 2007, after the Illinois Supreme Court had denied her PLA, petitioner sent a letter to this Court, reporting that she had exhausted her state court remedies.  The letter was filed in the Clerk's Office, but the Court was not made aware of its existence until petitioner sent a follow-up letter on October 23, 2007.  *See* Memorandum Order, *United States ex rel. Lindsey v. Robertson*, No. 06 C 3213 (N.D. Ill. Nov. 7, 2007) (Shadur, J.).  On November 7, 2007, this Court directed petitioner to re-file her petition so that it could be assigned a new case number.  *Id.*[5]  The Court noted that, for purposes of whether the petition is timely under 28 U.S.C. § 2244(d), January 6, 2007 will be treated as the effective filing date of the new petition.  *Id.*  Petitioner's re-filed petition was docketed under case number 07 C 6658.  On November 29, 2007, this Court ordered respondent to answer the petition in accordance with Rule 5 and again noted that respondent's answer should address the issue of timeliness as well as the merits of petitioner's claims.

12.    Petitioner's federal habeas petition presents the following claims:

a.    petitioner's conviction was obtained by the use of a coerced confession;

---

[5] This Court's November 7, 2007 order also stated that once the new case was filed, it would order the Illinois Attorney General's Office to file, on behalf of the respondent, an answer to the petition in accordance with Rule 5 of the Rules Governing Section 2254 Cases, and noted that the answer should address the issue of the petition's timeliness, particularly in light of the unexplained two-year gap between the state appellate court's February 6, 2003 reversal and remand and the March 11, 2005 filing of petitioner's supplemental postconviction petition pursuant to that remand.

    b.     petitioner's conviction was obtained by the use of evidence obtained pursuant to an unlawful arrest;

    c.     trial counsel was ineffective for:

         i.     failing to investigate the case;

         ii.     refusing to talk to petitioner's witnesses when they went to his office;

         iii.     failing to call certain witnesses;

         iv.     failing to talk to petitioner's witnesses until a couple weeks before trial, and then only for an hour;

         v.     being a "no show" in court nine to eleven times;

         vi.     being late for every court appearance;

         vii.     not answering petitioner's phone calls;

         viii.     failing to call petitioner's character witnesses for sentencing;

         ix.     "los[ing] [petitioner's] actual weight"; and

         x.     failing to challenge the identification of petitioner, the photo array, and the line-up to the fullest extent possible; and

    d.     the police found no physical evidence connecting petitioner to the crime.

Pet. at 5-6.

    13.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, as well as this Court's November 29, 2007 Order, respondent submits this answer to the petition. For the reasons set forth below, although the petition was timely filed, petitioner is not entitled to federal habeas relief on any of the claims presented.

Therefore, upon the filing of this answer, along with the attendant exhibits and any supplemental pleadings permitted by the Court, the petition should be denied without an evidentiary hearing.

14.    In compliance with Rule 5, the following state-court materials are being filed contemporaneously with this answer:

Exhibit A:    Certified Statement of Conviction, *People v. Lindsey*, No. 92-CR-25135;

Exhibit B:    Rule 23 Order, *People v. Lindsey*, No. 1-95-1535 (Ill.App. 1997);

Exhibit C:    Pet. Br.*, People v. Lindsey*, No. 1-95-1535;

Exhibit D:    State Br., *People v. Lindsey*, No. 1-95-1535;

Exhibit E:    PLA, *People v. Lindsey*, No. 83901;

Exhibit F:    Order Denying PLA, *People v. Lindsey*, No. 83901 (Ill. 2001);

Exhibit G:    Pro Se Petition For Post-Conviction Relief*, People v. Lindsey*, No. 92-CR-25135;

Exhibit H:    Motion For Extension Of Time In Which To File Supplemental Post-Conviction Petition, *People v. Lindsey*, No. 92-CR-25135;

Exhibit I:    Transcript of June 9, 2000, *People v. Lindsey*, No. 92-CR-25135;

Exhibit J:    Motion to Dismiss, *People v. Lindsey*, No. 92 CR 25135;

Exhibit K:    Rule 651(c) Certification, *People v. Lindsey*, No. 92 CR 25135;

Exhibit L:    Certified Report of Disposition, *People v. Lindsey*, No. 92 CR 25135;

Exhibit M:   Pet. Br*., People v. Lindsey*, No. 1-00-3480;

Exhibit N:   State Br., *People v. Lindsey*, No. 1-00-3480;

Exhibit O:   Pet. Reply Br., *People v. Lindsey*, No. 1-00-3480;

Exhibit P:   Rule 23 Order, *People v. Lindsey*, No. 1-00-3480 (Ill.App. 2003);

Exhibit Q:   Transcript of Hearings From April 18, 2003 Through January 28, 2005, *People v. Lindsey*, No. 92-CR-25135;

Exhibit R:   Supplemental Petition For Post-Conviction Relief*, People v. Lindsey*, No. 92 CR 25135;

Exhibit S:   Transcript of April 15, 2005 Hearing, *People v. Lindsey*, No. 92-CR-25135;

Exhibit T:   Respondent's Motion To Dismiss Petition For Post-Conviction Relief, *People v. Lindsey*, No. 92 CR 25135;

Exhibit U:   Motion To Withdraw on Appeal, *People v. Lindsey*, No. 1-05-1458;

Exhibit V:   *Finley* Response, *People v. Lindsey*, No. 1-05-1458;

Exhibit W:   Rule 23 Order, *People v. Lindsey*, No. 1-05-1458 (Ill.App. 2006);

Exhibit X:   PLA, *People v. Lindsey*, No. 103409;

Exhibit Y:   Order Allowing Motion To File Late PLA, *People v. Lindsey*, No. 103409;

Exhibit Z:   Order Denying PLA, *People v. Lindsey*, No. 103409 (Ill. 2006);

Exhibit AA:  Common Law Record, *People v. Lindsey*, No. 92-CR-25135; and

Exhibit BB:  Trial Transcript, *People v. Lindsey*, No. 92-CR-25135.

**ARGUMENT**

## I.    Background

Following a bench trial in the Circuit Court of Cook County, petitioner was convicted of the first degree murder and armed robbery of Rudolph Bennett, a taxi cab driver who was found shot to death in his cab at an O'Hare International Airport parking garage.  *See* Exh. B at 1.  The following facts are taken from the Illinois Appellate Court's decision on direct appeal:[6]

> At trial, John Eiselt and June Hess testified about their encounter with the defendant in the victim's cab.  Both witnesses also identified the defendant in court as the person that they saw in the victim's cab. Detective Jack Hines testified that on October 11, 1992, he was assigned to investigate the defendant's sexual assault allegations. Defendant told him that while she was riding in a cab, the driver pulled out a gun and forced her to have intercourse with him.  The driver then brought the defendant to a wooded area, where she escaped by stabbing him in the chest.
>
> ASA Nelson testified regarding her conversation with the defendant. Defendant's confession was admitted into evidence.  In her confession, defendant indicated that she took a cab to O'Hare.  When the driver pulled into the parking lot, she decided not to pay him for the ride and tried to leave the cab.  The driver grabbed the defendant by the arm. Defendant reached for a gun that she had previously noticed wedged between the seats in the cab and shot the driver.  Defendant then took the driver's wallet and removed the cash.
>
> Defendant testified on her own behalf and stated that she did not rob or shoot the victim.  Defendant acknowledged that she told varying

---

[6]  The state court's factual findings are "presumed to be correct" on federal habeas review, and this presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also* 28 U.S.C. § 2254(d)(2); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Mendiola v. Schomig*, 224 F.3d 589, 592-93 (7th Cir. 2000) (state appellate court's factual findings are entitled to same deference afforded a state trial court's findings).

accounts of her alleged rape and her involvement with the victim's murder. Defendant testified that she gave these contradictory statements because she was confused and tired and just wanted the police to leave her alone.

Exh. B at 9-10.

## II.    Timeliness

This Court's November 7, 2007 order, directing petitioner to refile her case under a new case number following the Illinois Supreme Court's denial of her PLA, noted an unexplained two-year gap between the state appellate court's February 6, 2003 order reversing the trial court's denial of petitioner's postconviction petition, and the March 11, 2005 filing of petitioner's supplemental postconviction petition pursuant to the appellate court's remand. A review of the record, however, indicates that petitioner's postconviction petition remained pending in state court during this period, as the trial court granted petitioner's newly appointed counsel numerous continuances to file a supplemental petition. *See* ¶ 7, *supra*. In light of this fact, this time is excludable from the calculation of the limitations period under 28 U.S.C. § 2244(d)(2). Accordingly, respondent does not believe there to be a basis to challenge the timeliness of the petition. Nevertheless, for the reasons discussed below, petitioner is not entitled to federal habeas relief on any of the claims presented in the petition.

III.   **Petitioner's Claims**

A.     **Coerced Confession**

Petitioner's first claim is that her conviction was obtained by the use of an allegedly coerced confession. *See* Pet. at 5,   This claim was presented to the Illinois Appellate Court on direct appeal, *see* Exh. C, and in petitioner's subsequent PLA to the Illinois Supreme Court. *See* Exh. E. The Illinois Appellate Court was the last state court to address the claim, and it rejected the claim on the merits. Accordingly, federal habeas relief on this claim is unavailable unless petitioner can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

The facts underlying this claim were set forth by the state appellate court on direct appeal:

> The state recalled Detective Schalk who recounted the events leading to the defendant's arrest.  Schalk testified that after defendant was read her *Miranda* rights, she indicated that she understood them and that she wanted to speak to the officers.  Defendant then confessed to police that her sexual assault report was a lie but maintained that she was not involved in the victim's murder.  Defendant agreed to take a polygraph examination at about 6:45 p.m., and she was transported to a different location to undergo the examination.  During the examination, defendant indicated that she was present when the victim was murdered but that she had not participated.  However, the

polygraph examiner indicated that she was not being honest.
Defendant returned to the police station at approximately midnight.

At approximately 3 a.m., Assistant State's Attorney (ASA) Rosenblum
arrived at the police station and again advised defendant of her
*Miranda* rights. Defendant then talked with investigators for about
two hours. At 3:00 p.m. on October 15, 1992, defendant was placed in
a lineup. Defendant did not speak to anyone again until 1:00 a.m. on
October 16 when she spoke with detectives and ASA Nelson. At about
4 a.m. defendant signed a written statement.

Schalk, the other detectives and the ASAs, who spoke with the
defendant, testified that they did not threaten the defendant or
promise her that she would be released if she admitted to killing the
victim. ASA Nelson testified that during the morning hours of October
16, 1992, defendant indicated that she wanted to talk to her. Nelson
advised the defendant of her *Miranda* rights and the defendant spoke
with Nelson for two hours. During this time, defendant told Nelson
that she had been treated well by the police and that she did not need
anything to eat or drink. Defendant further stated that the police had
not threatened her or promised her anything in exchange for a
statement. Nelson testified that the defendant did not appear to be
under the influence of drugs or alcohol. Nelson prepared a written
statement and reviewed it with the defendant. Defendant made
corrections and signed the statement.

Defendant testified on her own behalf and stated that the police asked
her if she would come to the station to identify the man who had raped
her. While there, defendant agreed to be fingerprinted and
photographed. She was placed in an interview room and told that two
people had identified her as someone seen with the victim just prior to
his murder. The police told defendant that even if she had not killed
the victim she would receive the death penalty because she knew who
had killed him. Defendant admitted that she had lied in making her
sexual assault report, and stated that she did so because she did not
want her lover, Irene, to know that she had been getting high. The
officers then told defendant that if she told the truth she could go
home. Defendant testified that she signed a statement because she
was mentally and emotionally drained and because she was tired of
officers telling her that she did something. Defendant also stated that
during her time at the police station she occasionally dozed off while
waiting for officers to return. Defendant explained her exhaustion was
a result of the fact that she had been out getting high for the two

-16-

previous days and because she was taking tetracycline and Tylenol for a toothache. She said that she made up her statement because she was tired of having people "in her face."

Defendant then recounted the events of the days leading to the victim's murder. On October 10, 1992, defendant went to the house of her friend Jack St. Clair and drank beer. St. Clair then pulled out some cocaine and she and St. Clair smoked cocaine for several hours. Upon realizing that she had spent all of her money on cocaine, defendant decided to make-up [sic] a story to deceive her girlfriend as to where she had been.

Defendant walked to a nearby hospital and told workers there that she had been raped by a cabdriver. After being examined by hospital personnel and talking with police, she returned home on the night of October 11. Defendant had difficulty sleeping because the medication she was taking made her go to the washroom every five minutes.

At the conclusion of the defendant's testimony, the trial court denied her motion to suppress her statements. In so ruling, the trial judge stated that defendant voluntarily accompanied police to the station and submitted to fingerprinting, photographs and a polygraph examination. The trial judge also stated that he did not believe that the medication the defendant claimed to have taken prior to her time at the police station would have required her to go to the washroom every five minutes for three days. Accordingly, the trial judge found that the police had not coerced the defendant into making her statement.

Exh. B at 5-9.

In rejecting the claim, the state appellate court wrote that:

[W]e find an absence of error in the trial court's determination that the defendant's statements to police were voluntary. In her motion, defendant alleged that her lack of sleep combined with the medication that she was taking made her vulnerable to the coercive tactics used by the police. Moreover, defendant alleged that the police promised to send her home if she confessed, told her she was going to be sentenced to death and otherwise coerced her statements.

In deciding whether a statement was voluntary, the court must decide whether the statement was freely made or whether the defendant's

will was overcome at the time she confessed. *People v. Melock*, 149 Ill.2d 423, 447 (1992). This determination is made by considering the totality of the circumstances including the existence of any threats, promises or physical coercion; the age, intelligence and education of the accused; the length of the detention and the duration of questioning; and whether the accused was advised of her rights. *People v. House*, 141 Ill.2d 323, 376 (1990); *People v. Clemon*, 259 Ill.App.3d 5, 9 (1994). While no single fact is dispositive, a finding of wrongful or coercive police misconduct is a necessary precursor to a finding that a confession is involuntary. *People v. Clemon*, 259 Ill.App.3d at 9. A trial court's ruling on a motion to suppress will not be disturbed absent a showing that it was manifestly erroneous. *People v. Glass*, 209 Ill.App.3d 384 (1991).

After hearing testimony and arguments, the trial court denied the defendant's motion to suppress finding that defendant's testimony regarding the effects of the medication she had taken three days earlier was incredible. Even if we assume, as defendant contends, that the trial judge improperly took judicial notice of the effects of the medications taken by the defendant prior to her arrest, we cannot say that it rendered the trial judge's ruling manifestly erroneous. Assuming that the medications taken by the defendant caused her to persistently urinate and therefore deprived her of sleep, this fact alone does not render the actions of the investigating officers coercive as there is an absence of additional, credible evidence to establish the existence of a coercive atmosphere. In ruling on the defendant's motion, the court noted the incredibility of the defendant's claims. Questions regarding the credibility of witnesses are best left to the trial judge and are not reversible on appeal. *People v. Higgins*, 50 Ill.2d 221 (1972). We will not second guess the trial court's determination regarding the credibility of defendant's claims of coercion and therefore find an insufficient basis in the record to support her current claim.

Exh. B at 12-14.

Federal habeas relief on this claim is unavailable because petitioner cannot show that the state court adjudication of the claim was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). First, the state appellate

court's decision rejecting the claim was not contrary to clearly established federal law. A state court's decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Here, the state appellate court applied the correct legal rule — the totality of the circumstances test — in analyzing petitioner's involuntary confession claim. The fact that the appellate court did not cite any Supreme Court or federal case law for this point is immaterial; the key point is that "neither the reasoning nor the result of the state court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

The appellate court's statement of the constitutional law regarding the voluntariness of confessions was correct. As the Seventh Circuit has stated,

> [i]n evaluating the voluntariness of a . . . confession, a court must consider the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 [ ] (1973). Specifically, a confession is "involuntary" only if circumstances demonstrate that police coercion or overreaching overbore the accused's will and caused the confession. *See Dickerson v. United States*, 530 U.S. 428, 434 [ ] (2000) (discussing cases). . . . Put differently, a "confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." In applying the totality test, we have identified a variety of factors which a court may consider to assess

-19-

> voluntariness, including but not limited to: whether the
> defendant was read his *Miranda* rights; the
> individualized characteristics of the defendant (*i.e.*, age,
> intelligence level, education, mental state); interrogation
> conditions (*i.e.*, duration, environment, access to restroom
> facilities and food); and the conduct of law enforcement
> officers (*i.e.*, use of physical punishment). *See generally
> Schneckloth*, 412 U.S. at 226, [ ] *quoted in Dickerson*, 530
> U.S. at 434 [ ].

*Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004) (some internal quotation

marks and citations omitted); *see also Hardaway v. Young*, 302 F.3d 757, 732 (7th

Cir. 2002) ("The voluntariness of a confession . . . is evaluated on the basis of the

totality of the circumstances surrounding that confession.") (citing *Schneckloth*, 412

U.S. at 226).  This is precisely the test articulated by the state appellate court.

Second, the state appellate court's decision was not an unreasonable

application of clearly established federal law.  A state court's decision involves "an

unreasonable application" of federal law, within the meaning of § 2254(d)(1), when

the "state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreasonable." *Id.* at 410.  Put

another way, where "the state court's application of governing federal law is

challenged, it must be shown to be not only erroneous, but objectively

-20-

unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway,* 302 F.3d at 762). "The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case." *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (internal quotations omitted).

Here, the state appellate court analyzed the facts in detail and reasonably concluded, under the totality of the circumstances, that petitioner's statements were freely made. As the court noted, the detectives and ASAs who interviewed petitioner testified that they did not threaten her or promise her that she would be released if she confessed. Exh. B at 6-7. ASA Nelson, who prepared the written statement — which petitioner reviewed, made corrections to, and signed — testified that petitioner told her that she had been treated well by the police and that she had not been threatened or promised anything in exchange for her confession. *Id.* at 7. Nelson further testified that petitioner did not appear to be under the influence of drugs or alcohol. *Id.* In light of these facts, the state court's conclusion that petitioner's confession was voluntary cannot be said to be objectively unreasonable. *Yarborough*, 540 U.S. at 5; *see also Schultz,* 313 F.3d at 1015 (state court decision is reasonable "if it is minimally consistent with the facts and circumstances of the case").

Finally, the state appellate court also addressed petitioner's contention that the trial court had wrongfully precluded her from presenting evidence at the hearing on the motion to suppress concerning her allegations that the police denied her request for an attorney and her request to make a telephone call. The appellate court agreed with petitioner that "these alleged facts would be relevant to a determination of the voluntary nature of the statements and would constitute a part of the totality of the circumstances that existed." Exh. B at 14. But the appellate court disagreed with petitioner's contention "that the trial judge denied [petitioner] an opportunity to have these allegations considered for that purpose." *Id.* The appellate court concluded that the trial court did not limit petitioner's ability to present evidence concerning these allegations:

> [W]e disagree with the defendant's claim that the comments above constitute a ruling by the trial court that the defendant could not present testimony regarding the allegations [that her requests for an attorney and to make a telephone call were denied] in support of her claim that her confession was involuntary. Defendant testified at the hearing on her motion to suppress her statements as involuntary. At no time did defense counsel attempt to elicit testimony regarding the[se] allegations . . . nor did she object to the alleged prohibition from doing so.

Exh. B at 15. The appellate court further held that, to the extent that the trial court *did* limit such evidence, petitioner had forfeited the claim by failing to object at trial. *Id.*

In sum, petitioner is unable to demonstrate that the state appellate court's decision rejecting her involuntary-confession claim was either contrary to, or an

unreasonable application of, clearly established federal law within the meaning of § 2254(d). Accordingly, federal habeas relief on this claim is unavailable.

### B.    Unlawful Arrest

Petitioner's second claim is that her conviction was obtained by the use evidence obtained pursuant to an unlawful arrest. *See* Pet. at 5. This claim was presented to the Illinois Appellate Court on direct appeal and in petitioner's subsequent PLA to the Illinois Supreme Court. This Fourth Amendment claim is not cognizable on federal habeas review because petitioner was provided a full and fair opportunity to litigate the claim in state court. *See Stone v. Powell*, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) ("So long as a habeas petitioner enjoyed an 'opportunity for full and fair litigation of a Fourth Amendment claim' in state court, federal habeas review of the claim is barred."); *Cabrera v. Hinsley*, 324 F.3d 527, 530-31 (7th Cir. 2003); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

This claim was first presented to the state courts in petitioner's pre-trial motion to quash arrest and suppress evidence. The trial court heard evidence and rejected the motion. As recounted by the state appellate court:

Chicago Police Officer Raymond Schalk (Schalk) testified that on
October 10, 1992, the victim had been reported as a missing person.
Shortly thereafter, the victim's body was discovered in a cab parked at
O'Hare.  Schalk interviewed June Hess and John Eiselt, the last
known "fares" picked-up [sic] by the victim.  Eiselt and Hess indicated
that about 2:30 p.m. on October 9, 1992, they called the Circle Cab
company (Circle) and requested a pick-up from the Empress Casino in
Joliet, Illinois.  As they waited in front of the casino, they observed a
Circle cab approach.  The cab stopped and picked up a woman standing
near the road.  The cab continued toward them and stopped.  The
driver indicated that he was there to pick them up.  The woman who
had been seated in the back seat moved to the front seat.  Hess and
Eiselt were taken to a nearby hotel and dropped off at about 3:15 p.m.
Eiselt and Hess told Schalk that the woman who rode with them in the
victim's cab indicated that she had to get to O'Hare by 4:30 p.m.  They
described the woman as a female, black, approximately 5'2" to 5'4",
weighing about 130 or 140 pounds with a "chunky" build.

Schalk further testified that a ticket stub was recovered from the
victim's cab which indicated that he had entered the O'Hare parking
garage at 5 p.m. on October 9, 1992.

Schalk stated that at the time he talked to Hess and Eiselt, he was
aware that the defendant had reported a sexual assault on October 11,
1992.  Defendant had informed police that on that date she had been
sexually assaulted by a cab driver.  The cab driver had taken her to a
wooded area where she escaped by stabbing him in the chest.  The
reports from the hospital where defendant was treated indicated that
she had not suffered any vaginal trauma.

On October 13, 1992, Schalk and other officers went to the defendant's
home and asked her if she would come to the police station to discuss
her report of a sexual assault and a homicide that they were also
investigating.  Defendant agreed and they arrived at the police station
at about noon.  At the station, defendant agreed to allow the officers to
fingerprint and photograph her.

While the officers talked with the defendant, the photograph of the
defendant was placed in an array and shown to Eiselt and Hess, both
of whom identified defendant as the woman who was riding in the cab
they took on October 9, 1992.  During this time at the station,
defendant had been seated in an unlocked interview room and was not
handcuffed or placed under arrest.  At approximately 1:30 p.m., prior

-24-

to informing the defendant that she had been identified as the person last seen with the victim, she was read her *Miranda* rights. Defendant recanted her rape complaint but denied killing the victim.

Defendant testified that on October 13, 1992 at about 11 a.m., officers came to her home while she was sleeping. According to defendant, the officers told her to get dressed and come with them. She complied. Defendant testified that she agreed to have her photograph taken and to be fingerprinted. When defendant asked the officers when she would be allowed to go home, they did not respond. The officers told defendant that they did not believe her sexual assault report and that they believed that she was involved in the victim's murder. The officers read defendant her *Miranda* rights and told her that two witnesses had identified her as the person seen with the victim prior to his death.

After hearing arguments, the trial judge found that the officers had probable cause to place the defendant under arrest following her identification by Hess and Eiselt. Accordingly, the court denied defendant's motion to suppress the resulting evidence.

Exh. B at 2-5. The state appellate court also noted, in recounting the procedural

history of petitioner's coerced confession claim, that the trial court found that

"defendant voluntarily accompanied police to the station and submitted to

fingerprinting, photographs and a polygraph examination." Exh. B at 8.

On appeal, petitioner again presented this claim. In rejecting the claim, the

Illinois Appellate Court wrote that:

An arrest occurs when a person's freedom of movement has been restrained by physical force or by a show of authority. *People v. Melock*, 149 Ill.2d 423, 436 (1992). In determining whether an arrest has occurred, the question to be answered is whether a reasonable, innocent person would, under the circumstances, have considered herself under arrest or free to leave. *People v. Reynolds*, 94 Ill.2d 160, 165 (1983). A reviewing court will not disturb the determination of the trial court on a motion to suppress unless the determination is manifestly erroneous. *People v. Glavin*, 127 Ill.2d 153, 162 (1989).

-25-

It was undisputed in the present case that the defendant voluntarily accompanied officers to the police station and submitted to fingerprinting and photographs.  At no time during the questioning was defendant handcuffed, told she was not free to leave, or placed in a locked room.  Moreover, we note that defendant had reported to police that she had been the victim of a sexual assault only days before.  In this context, we do not believe that a reasonable, innocent person would have believed that they were not free to leave.  Accordingly, we cannot say that the trial court erred in finding that the defendant was not arrested until after she had been identified by Hess and Eiselt and informed of her *Miranda* rights.

Furthermore, we find no error in the trial court's determination that the arresting officers had probable cause to arrest the defendant after her identification.  Probable cause to arrest exists where the facts and circumstances known to the arresting officer at the time of the arrest are sufficient to warrant a man of reasonable caution to believe that an offense has been committed by the person arrested.  *People v. Lippert*, 89 Ill.2d 171 (1982).  A determination of probable cause is governed by common-sense, practical considerations, not by technical legal rules. *People v. Mitchell*, 45 Ill.2d 148 (1970).  While probable cause requires more than mere suspicion, it does not require sufficient evidence to convict.  *People v. Moody*, 94 Ill.2d 1 (1983).  The existence of probable cause is determined by examining the totality of the circumstances at the time of the arrest.  *Illinois v. Gates*, 462 U.S. 213 [ ] (1983). Whether probable cause exists is a mixed question of law and fact. *People v. Lippert*, 89 Ill.2d 171.  Ordinarily, a trial court's ruling on a motion to suppress will not be reversed unless it is manifestly erroneous.  *People v. Foskey*, 136 Ill.2d 66 (1990).

The facts known to the arresting officers after defendant's identification were clearly sufficient to support a finding that they had probable cause to effectuate her arrest.  At the time, Hess and Eiselt had identified the defendant as the woman last seen with the victim. Based on these circumstances, the officers clearly had knowledge of sufficient facts to support a reasonable belief that the defendant had committed a crime.

Exh. B at 16-18.

-26-

Here, the state courts provided petitioner with a full and fair opportunity to litigate her Fourth Amendment claim. A criminal defendant is afforded "a full and fair opportunity to litigate" a Fourth Amendment claim if:

> (1) [s]he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of [her] fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts.

*Hampton*, 296 F.3d at 563. The lengthy quotes above from the state appellate court's opinion on direct appeal demonstrate that the state court carefully and thoroughly analyzed the facts that were alleged to constitute a Fourth Amendment violation and rejected that claim after applying the proper constitutional case law to the facts. "There is no indication that [the state] courts were careless of [petitioner's] right to present [her] claim," *Cabrera*, 324 F.3d at 532, or that the state court proceedings were "in some way a sham." *Id.* at 531; *see also id.* at 531-32 ("Absent a subversion of the hearing process, [a federal habeas court] will not examine whether the judge got the decision right. . . . In short, 'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result."). Accordingly, petitioner's claim that certain evidence should have been suppressed as the fruit of an unlawful arrest is not cognizable on federal habeas review. *See Miranda*, 394 F.3d at 997 (7th Cir. 2005) ("So long as a habeas petitioner enjoyed an 'opportunity for full and fair litigation of a Fourth Amendment claim' in state court, federal habeas review of the claim is barred.").

-27-

## C.    Ineffective Assistance of Counsel

Next, petitioner presents several allegations in support of an ineffective assistance of counsel claim.  She asserts that trial counsel was ineffective for:  (1) failing to investigate the case; (2) refusing to talk to petitioner's witnesses when they went to his office; (3) failing to call certain witnesses; (4) failing to talk to petitioner's witnesses until a couple weeks before trial, and then only for an hour; (5) being a "no show" in court nine to eleven times; (6) being late for every court appearance; (7) not answering petitioner's phone calls; (8) failing to call petitioner's character witnesses for sentencing; (9) "los[ing] [petitioner's] actual weight"; and (10) failing to challenge the identification of petitioner, the photo array, and the line-up to the fullest extent possible.  *See* Pet. at 6.

The majority of these allegations are insufficient on their face.  For instance, arguments 1, 2, 4, 5, 6, and 7 — that counsel was ineffective for failing to "investigate [her] case at all," failing to talk to petitioner's witnesses, being a "no show" in court on several occasions, being late, and not answering phone calls — are insufficient under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires the habeas petitioner to describe the facts supporting each ground for relief.  *See* Rule 2(c)(2); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002).  Notice pleading is insufficient in a habeas petition. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977).  Instead, a petitioner must provide an adequate factual description so that the court can determine solely from the face of the petition whether the petition is worthy of further review.  *Adams v.*

*Armontrout*, 897 F.2d 332, 334 (8th Cir. 2002).  These blanket assertions are insufficient to entitle petitioner to federal habeas relief.

In argument 8, petitioner contends that her trial counsel was ineffective for failing to call character witnesses at sentencing.  But the petition does not name these purported character witnesses, nor state what they supposedly would have testified to.  Petitioner's other allegations fall short in this regard as well.  For example, argument 1, which alleges that counsel was ineffective for failing to investigate the case, does not state what relevant facts counsel failed to discover.  And arguments 2, 3, and 4, which allege that counsel refused to talk to, or call to the stand, certain witnesses, fails to name these alleged witnesses or state what relevant testimony they might have given.  Petitioner's allegations that counsel was a "no show" for court on several occasions, that he was late for every court appearance, that he did not answer petitioner's phone calls, and that he lost petitioner's actual weight are equally insufficient.

In any event, all of petitioner's allegations, except for a portion of argument 3, are procedurally defaulted because petitioner did not present them to each level of the state courts throughout one complete round of appeals.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-49 (1999).[7]  A federal habeas petitioner must have fairly

---

[7]  None of these arguments were fully presented during petitioner's direct appeal process.  In fact, in petitioner's direct appeal PLA to the Illinois Supreme Court, the only argument she presented in support of an ineffective assistance claim was the argument that counsel was ineffective for failing to raise, before or during trial, evidence relating to petitioner's access to counsel and a telephone.  *See* Exh. E. Nor were any of these arguments in support of an ineffective assistance claim fully

presented every supporting argument for an ineffective assistance claim in one
complete round of state court review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th
Cir. 2007) (citing 28 U.S.C. § 2254(b)(1)(A)). Failure to properly present an
argument in support of an ineffective assistance of counsel claim results in a
procedural default of that argument. *Id.* at 893-94 ("[W]e find it inappropriate to
consider this argument because Stevens never argued to the Indiana courts that
this was one way in which he intended to prove his ineffective assistance of counsel
claim.").

The only argument in support of her ineffective assistance claim that
petitioner has preserved for federal habeas review is the argument that counsel was
ineffective for failing to call certain witnesses. This aspect of her ineffective
assistance claim is preserved to the extent that petitioner is challenging counsel's
failure to call Jerry St. Clair as an alibi witness. Her initial pro se postconviction
petition alleged that counsel was ineffective for failing to call alibi witnesses.
*See* Exh. G. After the state appellate court remanded the case so that appointed
counsel could amend the petition to include affidavits from alleged alibi witnesses,
petitioner's newly appointed counsel filed a supplemental petition, with an affidavit

_____

presented to each court during petitioner's postconviction proceedings. In her
postconviction PLA to the Illinois Supreme Court, the only arguments petitioner
presented in support of an ineffective assistance claim were the arguments that
counsel was ineffective for failing to investigate and present defense evidence,
including the testimony of alibi witnesses (which claim is address below on the
merits) and that counsel was ineffective for failing to bring out the discrepancies in
the State's case. *See* Exh. X.

from Jerry St. Clair, arguing that trial counsel was ineffective for failing to call St. Clair as an alibi witness. *See* Exh. R. In the affidavit, St. Clair stated that he would have testified that he was with petitioner in the late evening hours of Friday, October 9, 1992, or the early morning hours of Saturday, October 10, 1992, through the afternoon of Saturday, October 10, 1992. *Id.* at C43.

The trial court again dismissed the petition, holding that the alleged alibi provided by St. Clair did not cover the relevant time period at issue in the case and that, in any event, it was cumulative to the trial testimony of Jerry's brother, Jack St. Clair. *See, e.g.*, Exh. S at R14-16. This was the last state court to address this claim on the merits. The postconviction trial court's rejection of this claim was neither contrary to, nor an unreasonable application of, *Strickland v. Washington*, 466 U.S. 688 (1984). As the court recognized, the purported alibi testimony that Jerry St. Clair would have given did not provide an alibi for the relevant time period at issue in the case. *See* Exh. S at R14 ("At best, this is not an alibi."); R16 ("The fact that there is one possible witness to an alibi, which by all accounts would have been an alibi during the beginning hours *after* the murder, really fails to establish any kind of . . . meaningful alibi . . . .") (emphasis added). Moreover, what Jerry St. Clair would have testified to had already been presented at trial via Jack St. Clair's testimony. *See* Exh. BB at T8-22 (testimony of Jack St. Clair); *see also* Exh. BB at Z59-60 (trial court noting that Jack St. Clair's testimony concerned "events that occurred after the killing," and was "really not [an] alibi").

The postconviction trial court's rejection of this claim, on the ground that the supposed alibi witness's testimony would have been cumulative to testimony that the trial court did hear, and that it did not even relate to the relevant time period at issue in the case, so that trial counsel could not be considered constitutionally ineffective for failing to call him as a witness, was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of § 2254(d).  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

### D.    No Physical Evidence Connecting Petitioner To Crime

Finally, petitioner argues that there was no physical evidence connecting her to the murder.  *See* Pet. at 6.  This claim is both procedurally defaulted and without merit.  First, the claim is procedurally defaulted because petitioner did not fully present it to the state courts throughout one complete round of appeals.  *See O'Sullivan*, 526 U.S. at 844-49.  She did not present the claim at all during the direct appeal process.  *See* Exhs. C (direct appeal brief) and E (direct appeal PLA). In addition, she did not fully present this claim at each stage of her postconviction proceedings.  Her initial pro se postconviction petition alleged that the evidence was insufficient to establish her identity as the perpetrator of the crime, but did not argue — as she does now — that the evidence was insufficient due to a lack of physical evidence.  *See* Exh. G.  Following remand, petitioner's newly appointed counsel did not expand on this claim in the supplemental petition he filed, but instead rested on the pro se petition.  *See* Exh. R.  Therefore, the claim now

-32-

presented — that there was no physical evidence connecting petitioner to the crime — was never presented to the state trial court. It was not until petitioner's PLA to the Illinois Supreme Court following the state appellate court's affirmance of the trial court's denial of her postconviction petition, that petition argued that there was no DNA or ballistics evidence connecting her to the crime. *See* Exh. X. Presenting a claim for the first time in a PLA is insufficient to preserve that claim for federal habeas review. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("Presenting a federal claim for the first time in a petition for discretionary review by a state's highest court will not satisfy the fair presentment requirement.").

However, even if the claim were not procedurally defaulted, it is nevertheless without merit. Sufficiency of the evidence claims are governed by the familiar standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original). Here, in addition to the testimony of two eye witnesses, who identified petitioner as the last fare picked up by the cab driver victim before he was killed, *see* Exh. BB at Z60 (trial court remarking that Hess and Eiselt identifications are "as good an identification as I think we are ever going to get"), petitioner herself confessed to killing the victim.

## **CONCLUSION**

For the reasons discussed above, this Court should deny the petition for writ of habeas corpus without an evidentiary hearing on the ground that the claims presented are either noncognizable, procedurally defaulted, or without merit.  If this Court determines that any of the claims addressed by respondent solely on noncognizability or procedural default grounds warrant merits review, respondent respectfully requests 30 days from the date of the Court's order to address those claims on the merits in a subsequent submission.

February 29, 2008                          Respectfully submitted,

                                           LISA MADIGAN
                                           Attorney General of Illinois


                                    By:    s/Eric M. Levin_____
                                           ERIC M. LEVIN, Bar # 6284971
                                           Assistant Attorney General
                                           100 West Randolph Street, 12th Floor
                                           Chicago, Illinois 60601-3218
                                           TELEPHONE: (312) 814-8812
                                           FAX: (312) 814-2253
                                           E-MAIL: elevin@atg.state.il.us

-34-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 29, 2008, I electronically filed respondent's **Answer** in the above-captioned case with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system; and I hereby certify that on February 29, 2008, I mailed by United States Postal Service the above-referenced answer to the following non-registered party:

Jerri Lindsey, B49150
Lincoln Correctional Center
1098 1350th Street
P.O. Box 549
Lincoln, IL  62656


LISA MADIGAN
Attorney General of Illinois


By:     s/Eric M. Levin                        _
ERIC M. LEVIN, Bar # 6284971
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-8812
FAX: (312) 814-2253
E-MAIL: elevin@atg.state.il.us