

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. JERRI ROBBIN LINDSEY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07 C 6658 |
| CAROLYN TRANCOSO, Warden, Lincoln Correctional Center, | ) ) ) | The Honorable Milton I. Shadur, |
| Respondent. | ) | Judge Presiding. |

*FILED*

*Feb. 29, 2008*
FEB 28 2008
MICHAEL W. DOBBINS JH.
CLERK, U.S. DISTRICT COURT

## **TO THE CLERK OF THE UNITED STATES DISTRICT COURT**

The following exhibits are manually being filed contemporaneously with respondent's answer to the petition for writ of habeas corpus filed in the above-captioned cause:

Exhibit A: Certified Statement of Conviction, *People v. Lindsey*, No. 92-CR-25135;

Exhibit B: Rule 23 Order, *People v. Lindsey*, No. 1-95-1535 (Ill.App. 1997);

Exhibit C: Pet. Br., *People v. Lindsey*, No. 1-95-1535;

Exhibit D: State Br., *People v. Lindsey*, No. 1-95-1535;

Exhibit E: PLA, *People v. Lindsey*, No. 83901;

Exhibit F: Order Denying PLA, *People v. Lindsey*, No. 83901 (Ill. 2001);

Exhibit G: Pro Se Petition For Post-Conviction Relief, *People v. Lindsey*, No. 92-CR-25135;

Exhibit H:   Motion For Extension Of Time In Which To File
             Supplemental Post-Conviction Petition, *People v. Lindsey*,
             No. 92-CR-25135;

Exhibit I:   Transcript of June 9, 2000, *People v. Lindsey*, No. 92-CR-
             25135;

Exhibit J:   Motion to Dismiss, *People v. Lindsey*, No. 92 CR 25135;

Exhibit K:   Rule 651(c) Certification, *People v. Lindsey*, No. 92 CR
             25135;

Exhibit L:   Certified Report of Disposition, *People v. Lindsey*, No. 92
             CR 25135;

Exhibit M:   Pet. Br., *People v. Lindsey*, No. 1-00-3480;

Exhibit N:   State Br., *People v. Lindsey*, No. 1-00-3480;

Exhibit O:   Pet. Reply Br., *People v. Lindsey*, No. 1-00-3480;

Exhibit P:   Rule 23 Order, *People v. Lindsey*, No. 1-00-3480 (Ill.App.
             2003);

Exhibit Q:   Transcript of Hearings From April 18, 2003 Through
             January 28, 2005, *People v. Lindsey*, No. 92-CR-25135;

Exhibit R:   Supplemental Petition For Post-Conviction Relief, *People
             v. Lindsey*, No. 92 CR 25135;

Exhibit S:   Transcript of April 15, 2005 Hearing, *People v. Lindsey*,
             No. 92-CR-25135;

Exhibit T:   Respondent's Motion To Dismiss Petition For Post-
             Conviction Relief, *People v. Lindsey*, No. 92 CR 25135;

Exhibit U:   Motion To Withdraw on Appeal, *People v. Lindsey*, No. 1-
             05-1458;

Exhibit V:   *Finley* Response, *People v. Lindsey*, No. 1-05-1458;

Exhibit W:   Rule 23 Order, *People v. Lindsey*, No. 1-05-1458 (Ill.App. 2006);

Exhibit X:   PLA, *People v. Lindsey*, No. 103409;

Exhibit Y:   Order Allowing Motion To File Late PLA, *People v. Lindsey*, No. 103409;

Exhibit Z:   Order Denying PLA, *People v. Lindsey*, No. 103409 (Ill. 2006); and

Exhibit AA:  Common Law Record, *People v. Lindsey*, No. 92-CR-25135.[1]


February 29, 2008                          Respectfully submitted,

                                           LISA MADIGAN
                                           Attorney General of Illinois

                          By:    _Eri M. L_____
                                 ERIC M. LEVIN, Bar # 6284971
                                 Assistant Attorney General
                                 100 West Randolph Street, 12th Floor
                                 Chicago, Illinois 60601
                                 TELEPHONE: (312) 814-8812
                                 FAX: (312) 814-2253
                                 E-MAIL: elevin@atg.state.il.us

---

[1] Due to the size of the exhibits, Exhibit BB is being filed under a separate letter.

-3-



# Transcript of Record
## Appeal
## to

APPELLATE    Court of Illinois

FIRST    District

**Circuit Court No.** ___92 CR 25135___

**Trial Judge** ___SHELVIN SINGER___

**Reviewing Court No.** ___95 1535___

FILED
APPELLATE COURT 1st DIST.
NOV 07 2002
STEVEN M. RAVID
CLERK

THE PEOPLE OF THE STATE OF ILLINOIS

## vs.

JERI LINDSEY   (01)

92cr25135

**COOI**

**COUNTY DE**

VOLUME ONE OF NINE

REPORT OF PROCEEDINGS

**AURELIA PUCINSKI**

**Clerk of Court**

APPEL... DIST.
FEB 0 8 2006
STEVEN M. ... D
CLERK

Per AP./SIR _____

**Deputy**

1    STATE OF ILLINOIS )
                      )  ss
2    COUNTY OF C O O K )

3            IN THE CIRCUIT COURT OF COOK COUNTY
            COUNTY DEPARTMENT - CRIMINAL DIVISION
4
    THE PEOPLE OF THE )
5    STATE OF ILLINOIS )
                    )  Case No. 92 CR 25135
6      vs.         )
                    )  Charge: MURDER
7    JERRI LINDSEY   )

8             REPORT  OF  PROCEEDINGS

9         BE IT REMEMBERED that on the 2nd day of

10   December, 1992, this cause came on for hearing

11   before the Honorable SHELVIN SINGER, Judge of said

12   Court, upon the information herein, the defendant

13   having entered a plea of not guilty.

14      APPEARANCES:
           HON. JACK O'MALLEY,
15         State's Attorney of Cook County, by
           MR. HARRY DEVEREUX,
16         Assistant State's Attorney,
           Appeared on behalf of the People;
17
           MR. SHELDON SOROSKY,
18         Appeared on behalf of the Defendant.

19

20

21

22
    Kenneth Madoch
23   Official Court Reporter
    Circuit Court of Cook County
24   County Department-Criminal Division.

1          I N D E X

2

3    P.V. JERRI LINDSEY,

4    12-2-92

5    A-1 to A-4          Arraignment

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1           I N D E X

2

3    P.V. JERRI LINDSEY,

4    3-2-93

5    B-1 to B-4          Continuance

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          I N D E X

2

3    P.V. JERRI LINDSEY,

4    9-21-93

5    C-1 to C-8          Motion to Withdraw

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1              I N D E X

2      WITNESS:              DX    CX    RDX   RCX
       RAYMOND SCHALK        13
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                           I N D E X

2

3     DATE OF HEARING:    FEBRUARY 16, 1994

4

5     PAGE NUMBERS:   E 1 TO E 5

6

7                           PROCEEDINGS

8

9     CONTINUANCE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1      I  N  D  E  X

2    WITNESS:              DX    CX    RDX    RCX
     RAYMOND SCHALK        XX    4     32
3    IRENE QUIROZ          53    58    63
     JERRY LINDSEY         62    74    85
4    JACK HINES            89    94

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

INDEX

OPENING STATEMENT

By Mr. Ford -- 6

By Mr. Sorosky -- 8

DETECTIVE RAYMOND SCHALK

Direct -- 11

Cross  -- 25

DETECTIVE JEROME BOGUCKI

Direct -- 42

Cross  -- 60

OFFICER ROBERT M. TOVAR

Direct -- 67

Cross  -- 79

ASA JULIE NELSON

Direct -- 85

Cross  -- 96

JERI R. LINDSEY

Direct -- 103

Cross  -- 122

H 2

```
 1
    DATE:   11-14-94
 2  PAGES:   1-O to 18-0

 3
                        INDEX
 4
                                      PAGE:
 5
    Jury waiver---------------------------13
 6  Motion for continuance----------------18

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1                    I  N  D  E  X

2     WITNESS        DX    CX    RDX    RCX
      JUNE  HESS     13    32    50
3     JOHN  EISELT   52    66    86

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                I N D E X

2     WITNESS          DX     CX     RDX    RCX
      JACK HINES       4      23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1              I  N  D  E  X

2   WITNESS              DX    CX    RDX    RCX
    JULIE NELSON          3    24
3   MICHAEL GALLAGHER 45
    JEROME BOGUCKI       57
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1           I N D E X

2    WITNESS         DX    CX    RDX   RCX
     JACK ST. CLAIR        4     15    21    23
3    JEROME BOGUCKI              X     25    67
     RITA BENNETT 71
4    IRENE QUIROS 86   119   149

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                    I N D E X

2      WITNESS:              DX     CX    RDX    RCX
       ROBERT QUIROZ         3      13    18
3      AMELIA QUIROZ         19     28    38
       OLGA MARTINEZ         39     44    51
4      DOROTHY RAMIEREZ      53     60    71     75
                             78     79
5      JEROME BOGUCKI        89
       JERI LINDSEY          93     116   154

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24


                          V  2

1          I  N  D  E  X

| WITNESS | DX | CX | RDX | RCX |
|---|---|---|---|---|
| LES BALASZEK | 7 | 11 | 22 | 25 |
| ERNEST HALVORSEN | 30 | 34 | | |
| JULIE NELSON | 40 | 40 | | |
| JEROME BOGUCKI | 50 | 62 | 65 | |
| ROBERT TOVAR | 69 | 72 | | |

1

2                             I N D E X

3
     Date of Hearing:  February 7, 1995
4
     Page Numbers:  X-1 to X-16
5
     _____
6

7    LIST OF WITNESSES:        DX        CX       RDX      RCX

8    IRENE QUIROZ              3         6        9/13      12

9    JERRI LINDSEY            14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                           I N D E X

2       CASE NAME: PEO VS. JERI LINDSEY

3       CASE NUMBER: 92-25135

4       DATE HEARD: 2/10/95

5       PAGES: Z-1 TO Z-68

6

7

8       CLOSING ARGMTS..........PG. 3.

9       FINDINGS OF COURT.......PG. 59.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                              Z-2

1          THE CLERK:  People of the State of Illinois

2     versus Jerri Lindsey, custody sheet 5.

3          THE COURT:  Good morning, Counsellor.

4          MR. SOROSKY: Good morning, your Honor.

5          THE COURT:  Is this here for arraignment?

6          MR. SOROSKY: Yes.

7          THE COURT:  We don't have a file.  You sure

8     it's not in the cabinet.

9          THE CLERK:  I'll look because I'm missing

10    two of them.

11         THE COURT:  The clerk is looking for the

12    file.

13         MR. SOROSKY: Your Honor, for the record,

14    Sheldon Sorosky, S-o-r-o-s-k-y, representing the

15    defendant Jerri Lindsey, L-i-n-d-s-e-y.  Here for

16    arraignment today.  To be arraigned today or if

17    you want to put it over for a week because the

18    file is not here, whatever you want. By agreement

19    in any event.

20         MR. DEVEREUX: We have our file.

21         THE COURT:  All right.  You want to show Mr.

22    Sorosky the charging indictment.

23         MR. SOROSKY: At this time, for the record,

24    the defendant will knowledge receipt of a copy of

A 2

1    the indictment, waive formal reading and enter a

2    plea of not guilty at this time.

3           THE COURT:  Bear with me, I'll enter a

4    discovery order.  Do we have a discovery check

5    date counsel.

6           MR. SOROSKY: January 19th.

7           THE COURT:  Fine with me.

8                   January 19th.

9                   By agreement?

10           MR. SOROSKY: Oh, yes.

11           THE COURT:  By agreement January 19th,

12    1993.  The record should reflect that I have

13    entered a written discovery order giving all

14    copies of that to the clerk for the purposes of

15    stamping each copy, giving one copy to the

16    defense, one copy to the state, one copy for the

17    Court file.

18                   (Whereupon, the further hearing

19                   of the above-entitled cause

20                   was continued to 1-19-95, at

21                   9:30 o'clock a.m.)

22

23

24

```
1     STATE OF ILLINOIS )
                        )  SS.
2     COUNTY OF C O O K )

3        THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT   -   CRIMINAL DIVISION
4
                   I, Kenneth Madoch, Official
5
      Shorthand Reporter of the Circuit Court of Cook
6
      County Department-Criminal Division do hereby
7
      certify that I reported in shorthand the
8
      proceedings had at the hearing in the
9
      above-entitled cause; and that I thereafter
10
      caused to be transcribed into typewriting the
11
      foregoing transcript, which I certify is a
12
      true and correct transcript of said
13
      proceedings.
14

15    _____
16    Official Shorthand Reporter
      Circuit Court of Cook County.
17

18

19

20

21

22

23

24    Dated this 4th day of June, 1995.
```

A 4

```
1    STATE OF ILLINOIS )
                       )  ss
2    COUNTY OF C O O K )

3           IN THE CIRCUIT COURT OF COOK COUNTY
              COUNTY DEPARTMENT - CRIMINAL DIVISION
4
     THE PEOPLE OF THE )
5    STATE OF ILLINOIS )
                       )  Case No. 92 CR 25135
6       vs.            )
                       )  Charge: MURDER
7    JERRI LINDSEY     )

8                 REPORT   OF   PROCEEDINGS

9           BE IT REMEMBERED that on the 2nd day of

10   March, 1993, this cause came on for hearing before

11   the Honorable SHELDON SOROSKY, Judge of said

12   Court, upon the information herein, the defendant

13   having entered a plea of not guilty.

14       APPEARANCES:
                  HON. JACK O'MALLEY,
15                State's Attorney of Cook County, by
                  MR. HARRY DEVEREUX,
16                Assistant State's Attorney,
                  Appeared on behalf of the People;
17
                  MR. SHELDON SOROSKY,
18                Appeared on behalf of the Defendant.

19

20

21

22
     Kenneth Madoch
23   Official Court Reporter
     Circuit Court of Cook County
24   County Department-Criminal Division.
```

1          THE CLERK:  People versus Jerri Lindsey.

2          MR. SOROSKY: Sheldon Sorosky representing

3   Jerri Lindsey.

4          THE COURT:  Waiving her appearance.

5          MR. SOROSKY: Certainly.

6               She was here today and I saw her and

7   apparently at the time there was one female deputy

8   and she had to bring up a jury for another

9   courtroom and we agreed.

10         THE COURT:  We're going to bring up a jury

11  for this courtroom.

12         MR. SOROSKY: We agreed that Jerri Lindsey

13  could not appear in front of the Judge today. I

14  did speak to her.  We received some discovery from

15  the state today, it is not complete.  We would

16  agree to a date of March 25th for the completion

17  of discovery.

18         THE COURT:  By agreement 3-25-93, that will

19  be status.

20               (Whereupon, the further hearing

21               of the above-entitled cause

22               was continued to 3-25-93, at

23               9:30 o'clock a.m.)

24


                           B 2



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1    STATE OF ILLINOIS )
                     )  SS.
2    COUNTY OF C O O K )

3        THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT   -   CRIMINAL DIVISION

4               I, Kenneth Madoch, Official

5    Shorthand Reporter of the Circuit Court of Cook

6    County Department-Criminal Division do hereby

7    certify that I reported in shorthand the

8    proceedings had at the hearing in the

9    above-entitled cause; and that I thereafter

10   caused to be transcribed into typewriting the

11   foregoing transcript, which I certify is a

12   true and correct transcript of said

13   proceedings.

14

15   _____

16   Official Shorthand Reporter
     Circuit Court of Cook County.

17

18

19

20

21

22

23

24   Dated this 4th day of June, 1995.

```
1    STATE OF ILLINOIS )
                       )    ss
2    COUNTY OF C O O K )

3            IN THE CIRCUIT COURT OF COOK COUNTY
             COUNTY DEPARTMENT - CRIMINAL DIVISION
4
     THE PEOPLE OF THE )
5    STATE OF ILLINOIS )
                       )    Case No. 92 CR 25135
6       vs.            )
                       )    Charge: MURDER
7    JERRI LINDSEY     )

8              REPORT   OF   PROCEEDINGS

9            BE IT REMEMBERED that on the 21st day of

10   September, 1993, this cause came on for hearing

11   before the Honorable SHELVIN SINGER, Judge of said

12   Court, upon the information herein, the defendant

13   having entered a plea of not guilty.

14       APPEARANCES:
                 HON. JACK O'MALLEY,
15               State's Attorney of Cook County, by
                 MS. PATRICIA SHEA,
16               Assistant State's Attorney,
                 Appeared on behalf of the People;
17
                 MR. SHELDON SOROSKY,
18               Appeared on behalf of the Defendant.

19

20

21

22
     Kenneth Madoch
23   Official Court Reporter
     Circuit Court of Cook County
24   County Department-Criminal Division.
```

C 1

1          THE CLERK: People versus Jerri Lindsey,

2     custody.

3          THE COURT:  Good morning, counsel.

4          MR. SOROSKY: Good morning, your Honor.

5     Sheldon Sorosky representing Jerri Lindsey.  Your

6     Honor, at this time, with regret, I'm going to ask

7     leave to, if I can, to withdraw as counsel in this

8     case.  Whenever an attorney withdraws as counsel,

9     it's always kind of a sad situation, perhaps messy

10    for want of a better term although there is

11    nothing specific.

12         THE COURT:  Even more different when the

13    case has been on the call for so long.

14         MR. SOROSKY: I understand, but as I said

15    your Honor, this is a very serious charge, there

16    is a murder charge, an armed robbery charge and

17    there is a lot of work that has to be done in this

18    case, work beyond just merely researching law or

19    arguing law in the courtroom and --

20         THE COURT:  Why would this case be any

21    different than any other murder case?

22         MR. SOROSKY: Well, I don't know but there

23    are some cases that the crux of the work has to be

24    in the courtroom and there is a lot of work that

C 2

1    has to be done here and the defendant's family,

2    there are 2 families involved in here, either

3    don't have the funds or no longer want to pay the

4    funds, whatever it may be and I don't want to get

5    into all that, just not a matter of me, people

6    have to do these things and --

7           THE COURT:  Counsel, here is my problem.  It

8    is a serious problem. I point out the case has

9    been on my call since 11-23-92.  Has been on the

10   Court call since October 14, 1992.  The case is

11   almost a year old.

12          MR. SOROSKY: I'm aware of that.

13          THE COURT:  Now when we get into the case

14   after a year, you're asking me to withdraw,

15   particularly when there has been 1, 2, 3, 4, 5,

16   motion defendants in the case.

17          MR. SOROSKY: Well part of the reason for the

18   delay was attempting to contact the family and

19   talk to them and relate that to them.  It was

20   quite difficult, your Honor, they are not

21   extremely responsive.

22          THE COURT:  You're going to have to put this

23   in writing with a full explanation. I can't let a

24   case go for a year, a murder case and then find

1    that the lawyer wants to withdraw, I mean --

2          MR. SOROSKY: I'm only doing it for sake of

3    the client, I have no desire to withdraw, I have

4    per se no desire to withdraw, I personally don't.

5    I find the case challenging and interesting but

6    you know, just certain things I can't do and

7    that's all.

8          THE COURT:  What do you mean, can't do,

9    counsel?  This should be resolved.

10          THE DEFENDANT:  Your Honor, may I speak?

11          THE COURT:  Put it on the call for tomorrow,

12    you better serve it in writing under oath and tell

13    me why you want to withdraw, whether I let you

14    withdraw or not, I think it is a bad situation.

15    That's all.

16          MR. SOROSKY: If you don't want me to

17    withdraw I won't, I won't.

18          THE COURT:  Motion defendant to withdraw

19    denied.

20          MR. SOROSKY: Fine, if you don't want me to

21    withdraw, I won't.

22          THE COURT:  I don't want you to withdraw,

23    the case is a year old.

24          MR. SOROSKY: I'm just doing it for the sake

C 4

1   of the client, I have no --- like I said I

2   personally have no desire to withdraw.

3        THE COURT:   I point out the motion to

4   withdraw says and I quote now comes attorney

5   Sheldon Sorosky and asks leave to move to

6   withdraw.  All right.  What date to set the case

7   for trial?

8        MR. SOROSKY: No, I think we have to answer

9   discovery.

10       THE COURT:  All right.

11       MR. SOROSKY: So let me check my book.

12       THE COURT:

13       THE COURT:  Let me first advise you, you

14  have a right to speak, of course if you wish to

15  speak.  But you see that gentleman who is on your

16  left, you see that gentleman on your left, Ma'am,

17  Miss Lindsey, do you see the gentleman on your

18  left, he's a Court Reporter taking down everything

19  that is being said.

20            Now you see the woman who is on your

21  right, she's an Assistant State's Attorney, her

22  job is to try to put you in the penitentiary or

23  worse.  If you say something that may incriminate

24  you, the Assistant State's Attorney will indeed

C 5

1    get a copy of it from the Court Reporter and

2    she'll use it against you.  Do you understand what

3    I said, Miss Lindsey?

4        THE DEFENDANT: Yes.

5        THE COURT:  All right. Now, if you wish to

6    address me you can address me.  However I do point

7    out if you talk through your lawyer, it cannot be

8    used against you, do you understand what I said

9    now, Miss Lindsey?

10        THE DEFENDANT: Yes.

11        THE COURT:  Do you want to talk to me?

12        THE DEFENDANT:  No.

13        THE COURT:  All right.

14        MR. SOROSKY: Apparently there is additional

15    information we're receiving today. As I -- just in

16    response to your comment about the delay, one of

17    the problems has been the factual setting for this

18    entire scenario took place in a number of

19    counties, different jurisdictions and there has

20    been a great deal of discovery on the part of the

21    state gathering some of this information, due to

22    those geographical problems, as I recall the

23    facts, I think that is just an accepted fact as I

24    just said.

1          THE COURT:  We'll get this matter on trial

2     call and proceed.

3          THE COURT:  All right.  Ready to set it for

4     a trial date.

5          MR. SOROSKY: I think we might need one more

6     status date in light of this new information, your

7     Honor.

8          THE COURT:  All right what status date?

9     22nd of October?

10         MR. SOROSKY: Is the 15th okay?.  I will be

11    in the building.

12         THE COURT:  All right.  The 15th.  By

13    agreement 10-15-93, I'm writing by agreement.  All

14    right very good.

15                    (Whereupon, the further hearing

16                     of the above-entitled cause

17                     was continued to 10-15-93, at

18                     9:30 o'clock a.m.)

19

20

21

22

23

24

C  7

1    STATE OF ILLINOIS )
                        )   SS.
2    COUNTY OF C O O K )

3        THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT    -    CRIMINAL DIVISION

4            I, Kenneth Madoch, Official

5    Shorthand Reporter of the Circuit Court of Cook

6    County Department-Criminal Division do hereby

7    certify that I reported in shorthand the

8    proceedings had at the hearing in the

9    above-entitled cause; and that I thereafter

10   caused to be transcribed into typewriting the

11   foregoing transcript, which I certify is a

12   true and correct transcript of said

13   proceedings.

14

15

16   _____
     Official Shorthand Reporter
17   Circuit Court of Cook County.

18

19

20

21

22

23

24   Dated this 4th day of June, 1995.

C  8

```
1     STATE OF ILLINOIS  )
                         )  ss
2     COUNTY OF C O O K  )

3           IN THE CIRCUIT COURT OF COOK COUNTY
              COUNTY DEPARTMENT - CRIMINAL DIVISION
4
      THE PEOPLE OF THE  )
5     STATE OF ILLINOIS  )
                         )  Case No. 92 CR 25135
6         Vs.            )
                         )  Charge: MURDER
7     JERRI LINDSEY      )
```

8                    REPORT  OF  PROCEEDINGS

9            BE IT REMEMBERED that on the 15th day of

10    February, 1994, this cause came on for hearing

11    before the Honorable SHELVIN SINGER, Judge of said

12    Court, upon the indictment herein, the defendant

13    having entered a plea of not guilty.

14        APPEARANCES:
              HON. JACK O'MALLEY,
15            State's Attorney of Cook County, by
              MS. LYNDA PETERS,
16            MS. PATRICIA SHEA,
              Assistant State's Attorneys,
17            Appeared on behalf of the People;

18            MR. SHELDON SOROSKY,
              Appeared on behalf of the Defendant.
19

20

21

22
      Kenneth Madoch
23    Official Court Reporter
      Circuit Court of Cook County
24    County Department-Criminal Division.


                              D 1
```

```
1              THE CLERK:  Jerri Lindsey.
2              THE DEFENDANT:  Your Honor, may I speak.
3              MR. SOROSKY:  Sheldon Sorosky representing
4       Jerri Lindsey.
5              THE COURT:  See you after lunch?
6              THE DEFENDANT:  May I speak, your Honor?
7              MR. SOROSKY:  Yes.
8              THE COURT:  Before you speak --
9              MR. SOROSKY:  Let's wait until after lunch.
10             THE COURT:  You see that gentleman on your
11      left?
12             THE DEFENDANT:  Yes.
13             THE COURT:  He's taking down everything that
14      is being said.
15             THE DEFENDATN:  Okay.
16             THE COURT:  You see the woman on your far
17      right, she's the Assistant State's Attorney whose
18      responsibility it is to try to put you in the
19      penitentiary.  Okay?
20             THE DEFENDANT:  Uh-hum.
21             THE COURT:  You say something that may
22      incriminate you, that could be used against you,
23      Miss Shea, the Assistant State's Attorney will
24      indeed get copies of what is said for purposes of
```

D 3

1   using it against you.  Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, if you speak to your

4   lawyer, what the lawyers says cannot be used

5   against you. What you say may incriminate you and

6   can be used against you, do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Understanding that, do you wish

9   to speak?

10         THE DEFENDANT:  I would like to know if you

11  can appoint me a public defender because we can no

12  longer afford to pay for Mr. Sorosky and I feel

13  he's not in my best interests and hasn't been

14  since this case has started so I'm asking you

15  could you please give me a public defender.

16         THE COURT:  Well, Mr. Sorosky is here on the

17  case, the case is ready for a hearing.

18         MS. SHEA:  We have all our detectives here

19  this morning.

20         MR. SOROSKY:  What I have suggested, your

21  Honor, and I don't think that we proceed with the

22  motion then today and afterwards if Miss Lindsey

23  wants me to withdraw or whatever, I will.

24         THE COURT:  I'm not going to do that.  In my

1    view, with bringing that matter up at this time is

2    simply an effort to delay the proceedings in the

3    case and harass the witnesses unnecessarily.

4         MR. SOROSKY:  I would say there are some

5    legitimate and meaningful differences between Miss

6    Lindsey and myself concerning some of the problems

7    that exist in this case and she's disagreeing with

8    some of my analysis and approach to it, but I

9    would say that whatever those disagreements are,

10   they do not concern this motion, they concern

11   things after the motion and I don't think Miss

12   Lindsey would disagree with that and that's why I

13   suggested that we proceed with this motion and

14   then we can pick this matter up thereafter.

15        THE COURT:  The lawyer has the obligation to

16   advise his or her client, to give that client such

17   advice as a lawyer can give that client.  And to

18   exercise judgment.  But the final analysis, the

19   case is the defendant's case, not the lawyer's

20   case.  The defendant, if the defendant is

21   convicted, the defendant goes to the penitentiary,

22   not the lawyer.  If the defendant is acquitted,

23   the defendant is, the defendant no longer has to

24   go to the penitentiary but the life of the lawyer

1    remains the same.  The lawyer is not punished,

2    does not benefit by whatever verdict is entered.

3    The defendant is the one, since it's the

4    defendant's case and not the lawyer's case, the

5    defendant has every right to disagree with the

6    advise of the lawyer.

7                 If it is a matter of tactics, a

8    matter that deals with matters that are not

9    tactics, that is perception, it's this defendant's

10   decision that is controlling.  Let me complete

11   what I'm saying.  Even though the defendant has

12   received what the lawyer thinks is his or her best

13   advice and rejects that advice, that is the

14   defendant's right.  The matter just proceeds the

15   way the defendant wishes it to proceed.

16        MR. SOROSKY:  I'm more than willing to

17   withdraw as attorney.  And I don't think this

18   matter would be very much in any meaningful way

19   delayed.  I think within an hour any new lawyer

20   could know what this case is about.  It's not a

21   complex factual setting.  I distinguish that from

22   the difficulties of the defendant's motion.  I

23   distinguished the 2 things but this is not a

24   complex factual setting.

1          And I could assure the Court that if

2     the defendant's requests were followed, I don't

3     think there would be any meaningful delay in any

4     way.  We're more than willing to go ahead today,

5     we have no desire to inconvenience witnesses.

6     There are some practical problems that we can get

7     into on a later date.  That's why, you know, in

8     fact, I brought this to your Honor's attention

9     once before, but I just want to go through with

10    the motion today and we'll pick it up after the

11    motion or -- whatever you want.

12         THE COURT:  You know, let me tell you,

13    whatever you perceive the case to be, however you

14    perceive the case to be, it would mean that I

15    would have to impose a case upon an Assistant

16    Public Defender, another Assistant Public

17    Defender.  Furthermore, I would proceed with the

18    motion to suppress, I would have to burden that

19    lawyer with a judgment call where he or she was

20    not involved, whether he or she might have done

21    something differently.

22         MR. SOROSKY:  We'll --

23         THE COURT:  Wait a minute, wait a minute.

24    Let me finish.  In my view, you filed your

1    appearance in the case, it's your obligation to

2    proceed with the case.  I've not seen any evidence

3    of anything that would amount to ineffective

4    assistance of counsel.  It's your case and

5    therefore unless I'm showed something, we're

6    proceeding.

7         MR. SOROSKY:  Well, your Honor --

8         THE COURT:  I do point out to you that

9    whatever you say would not be controlling on

10   another lawyer.

11        MR. SOROSKY:  I understand. I'm just

12   suggesting --

13        THE COURT:  Counsel, that's it.  Let's

14   proceed to hearing, okay.

15        MR. SOROSKY:  I would just state this, your

16   Honor, in light of what your Honor has said about

17   another lawyer being burdened with things I may or

18   may not do, there are certain things that would

19   have to be done in the preparation for trial which

20   I've told Miss Lindsey about which requires a

21   certain amount of non-lawyering investigatory

22   work, per se, it's not done by a lawyer and we,

23   being Miss Lindsey and I, as 2 people, do not have

24   the wherewithall, not only money, it's more than

1  just money, the wherewithall to do these things.

2  Her family seems to have deserted her and many of

3  these things which would have been done by them or

4  certain people are now unavailable.

5          I think this is what, one of the

6  things if not the only thing that Miss Lindsey is

7  referring to and if you know, it's wisest for me

8  to step out now, I would step out now.  I believe

9  that's what Miss Lindsey wants.  I'm not trying to

10  skirt my obligations.  I have no qualms about

11  trying this case or working, and it's not an issue

12  about money as far as I'm concerned, it's not an

13  issue and I would gladly work on this case with

14  anyone your Honor says, be it the public defender

15  or appointed lawyer and I'm not asking for

16  anything.

17          But there is a certain amount of

18  non-lawyering work that has to be done down the

19  road which I would acknowledge does not apply per

20  se to this motion, but that we're going to need

21  help on and I think this is what Miss Lindsey is

22  referring to and therefore, if your Honor would

23  like -- if your Honor feels it's best or Miss

24  Lindsey feels it is best for everyone for me to

1    step aside now, I will and I'm not saying this to

2    avoid any responsibilities or skirt anything, I'll

3    do whatever anyone wants, I will stay in the case

4    with any appointed lawyer, any public defender.    I

5    just want to do what's right and give her her best

6    swing at the bat.    I don't know how else to put

7    it.

8        THE COURT:    Well, counsel, I hate to refer

9    to ancient history, no doubt justification, you

10   would say that's ancient history.    You mentioned a

11   public defender, I assume an investigation is part

12   of the case, I believe the investigation is part

13   of the lawyer's work so I don't understand your

14   position.    I'm in a position to go forward at this

15   juncture.    I have not been shown anything which

16   would cause me to appoint the public defender.

17   There is a lawyer on the case.    I do not see

18   justification to burden the Public Defender's

19   Office, the people of the County of Cook in the

20   defense of this defendant.    All right.    Court will

21   recess until 1:35.

22                            (Recess taken.)

23       THE COURT:    People versus Jerri Lindsey.

24       MR. SOROSKY:    Sheldon Sorosky, S-o-r-o-s-k-y

D 10

```
1    representing the defendant, Jerri Lindsey,

2    J-e-r-r-i, L-i-n-d-s-e-y. We're ready today, the

3    State is ready to proceed.  Just a few

4    typographical errors and dates on the motion.

5         THE COURT:  Could you ask Mr. Riley to join

6    us for a moment, I need a copy of the motion.

7         MR. SOROSKY:  I can give you a copy of the

8    motion:

9              Paragraph 4, that should be October

10   14th as opposed to 11th, as opposed to October

11   11th.

12        THE COURT:  Any objection.

13        MS. PETERS:  No objection.

14        MR. SOROSKY:  And in paragraph 6, that

15   should be October 14, 1992, as opposed to 1991.

16        THE COURT:  Paragraph what.

17        MR. SOROSKY:  Paragraph 6.

18        MS. PETERS:  Line one.

19        MR. SOROSKY:  1992, not 1991.

20        THE COURT:  Any objection?

21        MS. PETERS:  No objection.

22        MR. SOROSKY:  And about 4 lines down once

23   again paragraph 6 it says October 11, it should be

24   October 14.
```

1           THE COURT:  All right.

2           MR. SOROSKY:  Paragraph 6, line 4 or 5.

3           THE COURT:  Any objection?

4           MS. PETERS:  No objection to any of the 3

5     amendments.

6           THE COURT:  All right.  Would the defendant

7     and her lawyer please be seated at counsel table.

8     Opening statement.

9           MR. SOROSKY:  We'll waive.

10          MS. PETERS:  We would also waive then.

11          THE COURT:  All right.  This is compulsion.

12          MS. PETERS:  A motion to quash the arrest.

13          THE COURT:  4th Amendment motion.

14          MR. SOROSKY:  Right, 4th Amendment motion.

15          THE COURT:  I see, motion to suppress

16    statements but it's still based on illegal arrest.

17          MR. SOROSKY:  Correct.

18          THE COURT:  Mr. Sorosky please call your

19    first witness.

20          MR. SOROSKY:  She's getting the officer.

21          MS. PETERS:  Just putting on his jacket,

22    he'll be right out.

23          THE COURT:  Mr. Riley, could you join us,

24    please?

1          THE CLERK:  Would you raise your right hand.

2                              (Witness sworn.)

3      THE COURT:  Please be seated.

4                    RAYMOND SCHALK,

5  called as a witness on behalf of the Motion to

6  Suppress, having been first duly sworn, was

7  examined and testified as follows:

8                 DIRECT EXAMINATION

9                      BY

10              MR. SOROSKY:

11      Q  Officer, would you please state your name

12  in full and spell your last name and give us your

13  star and assignment?

14      A  Raymond Schalk, S-c-h-a-l-k, my star

15  number is 20718, I'm assigned to Area 5 Violent

16  Crimes.

17      Q  And for how long have you been a Chicago

18  police officer?

19      A  For 17 years.

20      Q  For how long have you been assigned to

21  the unit you just mentioned?

22      A  For 11 years.

23      Q  Now, calling your attention to October

24  14, 1992, around 11 am, you and 2 fellow police

1    officers went to the home of the defendant, Jerri

2    Lindsey, did you not?

3        A    That is correct.

4        Q    And at that time, you asked Jerri Lindsey

5    to accompany you and your fellow officers to the

6    police station, did you not?

7        MS. PETERS:  Judge, objection to leading.

8        THE COURT:  Well, --

9        MR. SOROSKY:  These are just preliminary

10   questions, I don't think there are any facts --

11       THE COURT:  I'll overrule, go ahead.

12       MR. SOROSKY:

13       Q    Is that correct?

14       A    I asked her --  I told her we were

15   investigating --.

16       Q    No, you answered my question.  You asked

17   her to come to the police station with you?

18       MS. PETERS:  Judge, now I'll object.

19       THE COURT:  Yea, I'm going to sustain your

20   objection now because that's a conclusion, so I

21   guess a conclusion isn't apparently factual, you

22   have to proceed by what did you say to her.

23       MR. SOROSKY:

24       Q    You had a conversation with Jerri

```
 1     Lindsey, did you not?

 2          A   Yes.

 3          Q   Subsequent to that conversation, she went

 4     with you and your fellow police officers in a

 5     police car to a police station, is that correct?

 6          A   Yes.

 7          Q   And she has been in custody ever since,

 8     is that correct?

 9          MS. PETERS:   Objection to the

10     characterization, it is a motion to quash arrest.

11          THE COURT:   Sustained.

12          MR. SOROSKY:

13          Q   Now, when you went to Jerri Lindsey's

14     house on October 14, 1992, around 11 am, you were

15     accompanied by 2 other officers, were you not?

16          A   Yes.

17          Q   And you had a conversation with Miss

18     Lindsey, did you not?

19          A   Yes.

20          Q   And what did you say to Miss Lindsey and

21     what did she say to you?

22          A   Well, I identified myself as a detective

23     of the Chicago Police Department and identified

24     the other detectives that were with me.  I told
```

1    her we would like to talk to her regarding the

2    sexual assault she had reported and regarding a

3    homicide investigation that we were working on.  I

4    asked her if she would mind coming with us so we

5    could talk to her about those.

6         Q   And Miss Lindsey accompanied you in a

7    police car to a police station, did she not?

8         A   Yes.

9         Q   And you and your fellow officers at that

10   time were armed with weapons, were you not?

11        A   Yes.

12        Q   And Miss Lindsey was in her home, is that

13   correct?

14        A   Pardon me, counsel?

15        Q   And prior to accompanying you to the

16   police station, Miss Lindsey was in fact in her

17   home, was she not?

18        A   She was at her residence at 8931 South

19   Houston.

20        Q   Now, you had, I believe you referred to

21   an aggravated sexual assault allegation that Miss

22   Lindsey had made, is that correct?

23        A   She had made a report, yes.

24        Q   And you referred to a murder

1    investigation, is that correct?

2         A   Yes.

3         Q   Well, let's look at the one at a time,

4    first let's look at the murder investigation if we

5    could.  Now, you, as a police officer -- by the

6    way, when you went to Miss Lindsey's house on

7    October 14, 1992, that would be a Wednesday, is

8    that correct?

9         A   Right now I don't recall the exact day.

10        Q   In any event, on -- when you went to Miss

11   Lindsey's house, you had certain information

12   concerning both this murder investigation and this

13   aggravated sexual assault complaint, did you not?

14        A   Yes.

15        Q   Now, you had received information as a

16   police officer that on October 11, 1992, Sunday,

17   that the police were notified of a missing cab

18   driver who is the deceased in this case, is that

19   correct?

20        MS. PETERS:  Objection to leading.

21        THE COURT:  Well, I'm going to overrule.

22        MR. SOROSKY:

23        Q   Is that correct?

24        A   Could you repeat that question?

1          MR. SOROSKY:

2          Q   I said the police received information or

3   first received information on Sunday, October 11,

4   1992 that the deceased in this case was missing,

5   is that correct? Would that be correct, the 3 days

6   before you and your officers went to Miss

7   Lindsey's house, on October 11, 1992, the police

8   received information that the deceased in this

9   case was a missing person, is that correct?

10         A   To the best of my recollection, there was

11  a missing report made on October 10th of the

12  victim.

13         Q   Very well.  So you're saying this missing

14  report was made October 10, is that correct?

15         A   To the best of my recollection, it was a

16  Chicago police missing report made October 10th on

17  the victim.

18         Q   Okay.  Now then, this missing report said

19  that on October 9, 1992, Friday, at 2:30 pm in the

20  afternoon, the cab driver picked up 2 fares and

21  one fare was possibly going to O'Hare and we

22  haven't heard from the cab driver since, would

23  that be a fair summary of the missing report?

24         MS. PETERS:  Objection to the form of the

1    question.

2        THE COURT:  Sustained.  It's a compound

3    question.

4        MR. SOROSKY:

5        Q  Well, you heard the facts I just stated,

6    did you not?

7        A  Yes.

8        Q  Were those facts within the missing

9    report?

10       MS. PETERS:  Objection.

11       THE COURT:  Sustained.

12       MR. SOROSKY:

13       Q  Or if there is anything you want to

14   delete or add you may.

15       MS. PETERS:  Objection.

16       MR. SOROSKY:  I'm just using those facts as

17   a base.

18       MS. PETERS:  Judge, I have an objection.

19       THE COURT:  I'm going to sustain the

20   objection.

21       MR. SOROSKY:  Very well.

22       THE COURT:  You better ask --

23       MR. SOROSKY:

24       Q  Do you know what was in the missing

1    report and you could use my question as a basis,

2    if you feel free to.  Do you remember what was in

3    the missing report?

4        A   What specifically in that missing report,

5    I would have to look at to say.  I'm familiar with

6    some of the information on why he was missing.

7        Q   Well, you heard my question that was

8    objected to, did you not?

9        A   Yes.

10       Q   Without holding you to it, would that be

11   a general summary of the content of the missing

12   report?

13       MS. PETERS:  Objection.

14       THE COURT:  Yeah, you know, the problem is

15   if this is important, you have to have some degree

16   of clearness more so than the question permits.

17       MR. SOROSKY:

18       Q   What information did you have when you

19   went to Miss Lindsey's house concerning this --

20   strike that question.

21                        Now, on October 12, 1992,

22   which would be a Monday, around 6:12 pm, the

23   deceased's body was found in a cab at O'Hare, is

24   that correct?

1           A    Correct.

2           Q    So on Monday, the deceased's body was

3     found, is that correct?

4           A    October 12th.

5           Q    October 12th.  And Saturday, you had

6     received the missing person report, 2 days before,

7     is that correct?

8           A    I don't handle missing persons so I

9     didn't receive the missing report, missing person

10    report.

11          Q    But you as an officer knew before you

12    went to Miss Lindsey's house that on Saturday the

13    missing person report was made, is that correct?

14          A    I was aware there was a missing person's

15    report made out on the victim.

16          Q    Now, as a result of finding this body in

17    the cab on October 12, 1992, one day later,

18    October 13, 1992, you had occasion to interview 2

19    witnesses, did you not?

20          A    Yes.

21          Q    And those witnesses would be June Hess,

22    H-e-s-s, and John Eiselt, E-i-s-e-l-t, is that

23    correct?

24          A    That is correct.

1          Q   And did you personally interview those

2    witnesses or your brother officer interview those

3    witnesses?

4          A   No, I did.

5          Q   And these witnesses told you on October

6    13, 1992 that they were in the cab of the deceased

7    on October 9, 1992, is that correct?

8          MS. PETERS:   Objection to leading and

9    foundation.

10         THE COURT:   Well, yeah, there is a

11   foundation and it's compound question, it is

12   leading.

13         MR. SOROSKY:

14         Q   What did these witnesses tell you?

15         A   Basically, on October 9th, they had gone

16   to the Empress Gambling Casino in Joliet.   They

17   had made arrangements with the Circle Cab Company

18   to be picked up at 2:30 in the afternoon at the

19   Empress Casino.   They frequently use the Circle

20   Cab Company.   At that time, they were waiting for

21   the cab to pick them up in front of the Casino.

22   They saw the circle cab coming towards them about

23   a block down, they saw the cab stop and pick up a

24   female black who was standing in the road.   They

1    saw that the cab continued towards them, they

2    stopped the cab and asked the driver if he was

3    there to pick them up.  He said he was there to

4    pick them up.

5              They said the driver said something

6    to the female black who was in the back seat and

7    she then got into the front seat.  The couple got

8    into the back seat of the cab and they were driven

9    to the Red Roof Inn and dropped off there in

10   Joliet at about 3:15.  They said the cab then

11   drove off with the female black in the front seat

12   of the cab.

13        Q  And that's pretty much what these

14   witnesses told you, is that correct?

15        MS. PETERS:  Objection.

16        THE COURT:  Sustained.

17        MR. SOROSKY:  Very well.

18        Q  Now, I show you what we would mark as

19   Defendant's Exhibit number 1 for identification

20   which would purport to be a police report

21   concerning the interview that you have just

22   referred to and I ask you to look at Defendant's

23   Exhibit number one for identification and that is

24   in fact the police report on on this case

1    concerning the interview of the 2 folks you just

2    referred to, is that correct?

3        A   Yes.

4        Q   And when was that police report made out?

5        A   It was submitted October 13, 2345 hours.

6        Q   So that police report was made out the

7    very day that the interview was in fact conducted,

8    correct?

9        A   Yes.

10       Q   And this -- never mind.  Now, is there

11   any other information that you had concerning the

12   murder that we haven't mentioned.  I'm not talking

13   about the sexual assault allegation, we'll get to

14   that later. Is there any other information

15   concerning the murder that you had that you've not

16   stated prior to entering Miss Lindsey's house on

17   October 14, 1992?

18       MS. PETERS:  I'll object on 2 bases, one is

19   it assumes a fact not in evidence, upon entering

20   into a home and 2, it's the form of the question.

21       THE COURT:  Sustained.

22       MR. SOROSKY:  Well first of all the officer

23   did say he entered the home, so that is a fact in

24   evidence.

1           THE COURT:  Yeah, all right, he did.  I'm

2     going to overrule the objection.

3           MS. PETERS:  That wasn't the testimony,

4     Judge.

5           THE COURT:  Yes.

6           MS. PETERS:  He went to the home was the

7     question, not in the home.

8           MR. SOROSKY:  He said he entered the home

9     and he left the home with her to the police

10    station.

11          THE COURT:  No, went to the defendant's

12    home.  Went to the defendant's home.

13          MR. SOROSKY:

14    Q   You went to the defendant's home on

15    October 14, 1992, did you not?

16    A   I went to her home, yes.

17    Q   And you went inside the home, right?

18    A   I never stepped foot in her house, no.

19    Q   Another officer went inside the home?

20    A   No, they didn't.

21    Q   She came to the door?

22    A   She came to the door, yes.

23    Q   And then she left with you, right?

24    A   Correct.

1        Q   Okay.  Was there any other information

2    you had concerning this murder, whether you went

3    in the home or just came to the door, regardless

4    of that point, was there any other information you

5    had concerning this murder that, prior to getting

6    to that home and Miss Lindsey accompanying you to

7    the police station?

8            MS. PETERS:  Objection.

9            THE COURT:  I have to sustain it.  Counsel

10   this, this covers so much, there was perhaps a

11   observation made of the body, the murder scene,

12   the killing scene, the cab driver, the evidence

13   technician.

14           MR. SOROSKY:  Okay, very well.

15           THE COURT:  You're asking to go around --

16           MR. SOROSKY:  I accept the ruling, I accept

17   the ruling.

18           THE COURT:  To go around with information

19   that in essence could take ad infinitum.

20           MR. SOROSKY:

21       Q   Now let's turn our attention to the

22   aggravated criminal sexual assault allegation.

23   Now, once again, when you went to Miss Lindsey's

24   house at the same time, October 14, 1992 at 11

1    o'clock, in addition to knowledge of the murder,

2    you had knowledge that Jerri Lindsey had made an

3    aggravated criminal sexual assault allegation,

4    what we commonly call a rape allegation, is that

5    correct?

6         A   Yes.

7         Q   And I'm referring to the time now that

8    when you met Miss Lindsey on October 14, 1992 at

9    11 am.  You knew that she, Miss Lindsey, had made

10   this complaint of rape on October 11, 1992, about

11   11 o'clock or so at night, is that correct?

12        A   Yes.

13        Q   And Miss Lindsey had come into a

14   hospital, specifically South Chicago Hospital and

15   said she had been raped, is that correct?

16        A   That was the information I had gotten,

17   yes.

18        THE COURT:  Was that 11 am or pm?

19        MR. SOROSKY:  P.M..

20        Q   And Miss Lindsey had said, to the best of

21   your knowledge, that this rape had occurred on

22   October 10, 1992 beginning about 1 am and

23   continued over a 40 hour period, is that

24   correct?

1          MS. PETERS:  Objection to leading.

2          THE COURT:  Well, I'm going to overrule.

3          MR. SOROSKY:  Would that be a fair summary

4     of what she said?

5          A  I believe that's what the report

6     indicates.

7          THE COURT:  Is that a 4 hour period?

8          MR. SOROSKY:  40.  40.

9          THE COURT:  Okay.

10         MR. SOROSKY:

11         Q  And you also had information prior to

12    meeting up with Miss Lindsey on October 14, 1992

13    that on October 11, 1992, at around 5:56 pm, she,

14    Miss Lindsey, was called in as a missing person,

15    is that correct?

16         A  There was a missing person's report made

17    out on her.

18         Q  And in this rape allegation of Miss

19    Lindsey, she said that she was raped by a cab

20    driver, is that correct?

21         A  That is correct.

22         MS. PETERS:  Objection to the leading.

23         THE COURT:  Yeah.

24         MR. SOROSKY:  Okay.

1          THE COURT:  Counsel.

2          MR. SOROSKY:

3          Q  What specifically --

4          THE COURT:  Counsel, I'm confused because

5     the missing person report, she said the missing

6     person report.

7          MR. SOROSKY:  This missing person report was

8     not made by Miss Lindsey, she was the subject of

9     the missing person's report, is that correct?

10         THE COURT:  But you couched the question in

11    the form of Miss Lindsey.

12         MR. SOROSKY:  I apologize, I misspoke.

13         Q  Officer so we're clear, the question was

14    Miss Lindsey did not make the missing person

15    report but someone else made a missing person's

16    report written Miss Lindsey was the subject or the

17    person missing, is that correct?

18         A  That is correct.

19         Q  Now, as best you can recall and remember,

20    can you tell his Honor Judge Singer the specifics

21    of Miss Lindsey's rape allegations and if you want

22    to look at any reports I have no objection to

23    refresh your memory.

24         MS. PETERS:  We haven't gotton there yet.

1          MR. SOROSKY:  As best you can recall from

2     memory?

3          A   The information I received from Area 2

4     detectives who were assigned to that investigation

5     was that Miss Lindsey was alleging that she was

6     picked up on the south side by a male black cab

7     driver driving a maroon and white suburban cab.

8     He drove her to some unknown location, produced a

9     handgun, repeatedly sexually assaulted her over a

10    period of some 40 hours, tied her up, blindfolded

11    her, took her to some other location, a wooded

12    area where she was able to stab him in the chest

13    and get away and she later learned that she was in

14    Joliet because she was picked up by an unknown

15    female white who drove her to the hospital.

16         Q   And was she, Miss Lindsey, examined at

17    the hospital?

18         A   To the best of my knowledge, yes.

19         Q   And did you have any knowledge of the

20    results of that hospital examination?

21         A   I believe it indicated there was no

22    vaginal trauma.

23         THE COURT:  That what?

24         A   There was no vaginal trauma.

1        MR. SOROSKY:

2        Q   So would it be a fair statement to say

3    that you as a police officer on October 14, 1992

4    prior to going to Miss Lindsey's house did not

5    believe her rape allegation?

6        MS. PETERS:  Objection.

7        THE COURT:  Sustained.

8        MR. SOROSKY:

9        Q   Did you believe Miss Lindsey's rape

10   allegation?

11       MS. PETERS:  Objection.

12       THE COURT:  What does this have to do with

13   anything?

14       MR. SOROSKY:  I'll withdraw the question.

15       Q   Now, based on all this information that

16   you just recited, concerning both the murder and

17   the rape allegation, you and 2 fellow officers had

18   Miss Lindsey accompany you to a police station, is

19   that correct?

20       MS. PETERS:  Objection, leading, the

21   characterization.

22       THE COURT:  Sustained.

23       MR. SOROSKY:

24       Q   With all this information in your mind,

1     you had Miss Lindsey go with you to a police

2     station?

3            MS. PETERS:  Objection.

4            THE COURT:  Sustained.

5            MR. SOROSKY:  Well, this information was in

6     his mind.

7            THE COURT:  Counsel, pardon me, it is

8     conclusionary.  Apparently the issue is going to

9     be whether Miss Lindsey was in custody at the

10    time, at the time of taken to the police station

11    or did she accompany him to the police station.

12    Accordingly, I should only make that conclusion

13    based on evidence of what actually occurred.  Not

14    conclusionary statements that occurred.

15           MR. SOROSKY:

16           Q   All the information that you just recited

17    was in your mind when you went to Miss Lindsey's

18    house, was it not?

19           A   I was aware of this information when I

20    went to her house.

21           Q   And when you went to Miss Lindsey's

22    house, you did not believe her rape allegation,

23    did you?

24           MS. PETERS:  Objection.

D 32

1       THE COURT:  Sustained.

2       MR. SOROSKY:  I think it's very vital, your

3 Honor.

4       THE COURT:  Actually, the issue on whether

5 or not there was -- the defendant was in custody

6 at that time hinges not on the suggestive state of

7 the mind of the officer but rather the objective

8 test as a reasonable person would interpret that.

9       MR. SOROSKY:  Well, I would --

10       THE COURT:  What the officer's state of mind

11 was seems to me to be irrelevant.

12       MR. SOROSKY:  Well, I would think, your

13 Honor, the officer's state of mind is one factor

14 no matter how minute which would enter into any

15 Court's determination of whether the police had

16 probable cause, whether this defendant was in

17 custody.  It would be a factor.

18       THE COURT:  If it were an issue of probable

19 cause,.

20       MR. SOROSKY:  It is.

21       THE COURT:  Then of course, the information

22 the officer had would be pertinent.

23       MR. SOROSKY:  That is one of the things

24 we're saying, one of the things we're saying is

1    that there was no probable cause to arrest this

2    woman.

3          THE COURT:  All right.  We`ll that's the

4    information.

5          MR. SOROSKY:  Right.  And I'm asking this

6    officer, I'm asking this officer just so it's

7    clear.  It may come up.  Was she going to the

8    police station as the victim of a rape or was she

9    going to the police station as a suspect in a

10   homicide or was it both.

11         THE COURT:  Counsel, I'll let you ask the

12   question but I will suggest to you that as to the

13   issue of custody, the objective state of mind of

14   the officer is not relevant. The objective facts.

15         MR. SOROSKY:  I understand.

16              All right.  I understand.

17         THE COURT:  Proceed.

18         MR. SOROSKY:

19    Q   Now officer, when Miss Lindsey was riding

20   with you in the car to the police station, you did

21   not believe her rape allegation, did

22   you?

23         MS. PETERS:  Objection.

24         THE COURT:  I'm going to overrule.

1          A    Part of my purpose was to interview --

2          MR. SOROSKY:

3          Q    Officer, that calls for a yes or no

4     answer.

5          A    I don't think I can answer that yes or

6     no.

7          Q    Did you believe her rape allegation, the

8     woman says she was raped over 40 hours and the

9     hospital said we found no trauma.  Did you believe

10    her rape allegation?

11         A    I hadn't spoken with her yet to make my

12    own determination.

13         Q    So are you telling his Honor Judge -- no,

14    okay.  That's okay.

15               Now, when you drove in the car to

16    the police station, did you have any conversation

17    with Miss Lindsey?

18         A    I don't believe we had much conversation

19    in the ride, no.

20         Q    Did you tell her in the car that you had

21    to take her photographs and fingerprints?

22         A    When we arrived at the First District,

23    11th and State, I asked her if she would mind

24    providing us with a photograph and fingerprints to

1    help us in our investigation.

2         Q   And did you or -- not you, did another

3    police officer tell her that some man had

4    confessed or some cab driver had confessed to many

5    rapes and you needed her photograph and

6    fingerprints to see if her fingerprints were in

7    his cab and this confessing rapist could identify

8    her photo, did you tell those facts to Miss

9    Lindsey as a reason or a police reason for

10   obtaining these photographs and fingerprints?

11        A   No, I didn't.

12        Q   Did any police officer tell her that?

13        A   No, they didn't.

14        Q   Nevertheless, her photograph and

15   fingerprints were taken, is that correct?

16        A   She agreed to provide us with her

17   fingerprints and photograph.

18        Q   Now, when she agreed to this or -- strike

19   that.  When you say she agreed to this, she was in

20   fact in a police station, was she not?

21        A   Yes.

22        Q   And she was not in that section of the

23   police station where a citizen walks up to a desk

24   and could walk away from the desk and leave, was

1    she?

2         MS. PETERS:  Judge, we object to the

3    leading.

4         THE COURT:  Sustained.

5         MR. SOROSKY:

6         Q  What section or what geographical section

7    of the police station was in -- strike that. What

8    geographical section of the police station was

9    Miss Lindsey in when she was asked to submit to

10   photographs and fingerprints?

11        A  Actually I believe when we were nearing

12   the 11th and State police station, we asked her if

13   she would mind providing us with those and she

14   agreed with it. Then we pulled into the First

15   District and went inside where we took a Polaroid

16   photograph of her and had her fingerprints.

17        Q  Well, where were these photographs and

18   fingerprints taken within the police station at

19   11th and State?

20        A  The photograph would have been in one of

21   the interview rooms in the First District.  The

22   fingerprints I believe she was taken to the

23   identification section on the 4th floor where she

24   was fingerprinted.

D 37

1           Q    Now, when you say the photograph was

2    taken in an interview room, that is where

3    arrestees are interviewed, are they not?

4           A    It's where the First District officers

5    make reports when they're in the station, if they

6    have prisoners they make their reports there in

7    those rooms also or whoever they have to talk to.

8           Q    So the photograph is taken in that

9    geographic section of the police station where the

10   First District officers bring those people they

11   arrested, right?

12          MS. PETERS:  Objection.

13          THE COURT:  Sustained.

14          MR. SOROSKY:

15          Q    Now, the fingerprints were taken in the

16   place where arrestees are fingerprinted, right?

17          A    No, the 4th floor has the identification

18   section, arrestees are fingerprinted in the lock

19   ups.  I believe Detective Halvorsen took her to

20   the 4th floor and had her fingerprinted there.

21          Q    And after she was photographed and

22   fingerprinted, where did she wait?

23          A    Back in -- at the First District

24   interview room.

1        Q   And the interview room would be where

2    arrestees wait to be interviewed, correct?

3            MS. PETERS:  Objection.

4            THE COURT:  I'm going to overrule.

5        A   It is rooms used for interviews, for

6    making reports, whatever the officers feel they

7    need a room to use with a table and chair.

8            MR. SOROSKY:

9        Q   And the people they interview, those are

10   arrestees, correct?

11           MS. PETERS:  Objection.

12           THE COURT:  Sustained.

13           MR. SOROSKY:

14       Q   Who is interviewed there, if you know?

15       A   Anyone they need to.  If they need to

16   talk to a victim in the station, need to talk to a

17   witness in the station, if they need to talk to a

18   prisoner in the station they can use that room to

19   talk to anyone they wish.

20       Q   As soon as you got Miss Lindsey's

21   photograph, you showed Miss Lindsey's photograph

22   to June Hess, H-e-s-s and John Eiselt,

23   E-i-s-e-l-t, is that correct?

24       A   I showed them a photo array, yes.

1       Q  And where were these folks when you

2  showed them the photo array?

3       A  At their apartment.

4       Q  So Miss Lindsey remained at the police

5  station while you and other officers drove to the

6  apartment of the 2 aforementioned witnesses for

7  the purposes of showing these witnesses a photo

8  showing, is that correct?

9       A  They only live a couple of blocks from

10  the 11th District, yes, so myself and my Partner

11  Detective Bogucki went to the apartment with the

12  photo array while Detective Halvorsen remained

13  with Miss Lindsey.

14       Q  Now the purpose -- strike that.  The

15  police purpose for showing these 2 photographs to

16  the witnesses, Hess and Eiselt was to see if Miss

17  Lindsey was in fact in the cab of -- was in the

18  cab that they were in, is that correct?

19       A  To determine if she was the female black

20  who was in the cab with Miss Hess and Mr. Eiselt

21  and who had last seen --.

22       Q  That's all.  Thank you.

23       MS. PETERS:  Judge, objection, let him

24  finish the answer.

1           THE COURT:  It may be.

2                   He has a right to finish the answer.

3           MR. SOROSKY:  I accept his answer.

4           THE COURT:  It may be, but finish the

5      answer.

6           A   To determine if she was the female black

7      that the couple had seen in the cab with the

8      victim and was last seen driving to O'Hare with

9      the victim.

10          MR. SOROSKY:  Objection to the term with the

11     victim.  I don't know that there has ever been any

12       --

13          THE COURT:  Well, I'm going to overrule

14     because it's responsive and the phraseology victim

15     is not harmful at this juncture of the case.

16          MR. SOROSKY:

17          Q   And these folks, Hess and Eiselt did in

18     fact identify Miss Lindsey's picture, right?

19          A   Yes.

20          Q   And they said that Miss Lindsey was in

21     fact the person who they saw in the cab with them

22     in Joliet on June 9, 1992 for a few minutes when

23     they drove from the Empress to the Red Roof Inn,

24     correct?

1       MS. PETERS:  Objection to the leading, June

2    9th, I'm not sure what we're talking about.

3       MR. SOROSKY:  I apologize, October 9th,

4    October 9, I apologize, October 9th.

5       THE COURT:  I'm still going to sustain

6    because you're really asking -- I don't know what

7    they said, a person says yes or no in the context

8    where perhaps yes or no is not the appropriate

9    answer.

10      MR. SOROSKY:  Okay.

11      Q   They identified Miss Lindsey as being the

12   person in the cab, correct?

13      A   Yes.

14      Q   And they said that Miss Lindsey was in

15   their cab for the ride from the Empress Casino to

16   the Red Roof Inn in Joliet, is that correct?

17      A   Yes, where they were dropped off, yes.

18      Q   And did they tell you how long that ride

19   was?

20      A   Well, they were picked up sometime around

21   2:30 and dropped off at about 3:15.

22      Q   3:15?

23      A   Yes.

24      Q   Okay.  And in questioning, the

1    questioning of these 2 witnesses, Hess and Eiselt

2    concerning the identification of Miss Lindsey

3    involved police work concerning the murder

4    investigation of the cab driver, Mr. Bennett, as

5    distinguished from police work concerning Miss

6    Lindsey's rape allegations, isn't that correct?

7         MS. PETERS:  Objection, form of the

8    question.

9         THE COURT:  Could you please read the

10   question.

11                    (Record read.)

12        THE COURT:  Counsel, your objection is well

13   taken, but I'm going to overrule, let's get on

14   with it.

15        A  Well, they were witnesses in regards to

16   the homicide investigation. My role in the

17   investigation was focusing it on the homicide and

18   her sexual assault.

19        MR. SOROSKY:

20        Q  I understand, but you've not answered the

21   question with all due respect.  The purpose of

22   showing these people, Hess and Eiselt, the photo

23   show up concerned police work involving the

24   homicide investigation, isn't that correct?

1          A   It was to determine if she was the female

2     black in the cab with them.

3          Q   And that concerned the homicide

4     investigation, did it not?

5          A   Yes.

6          Q   Now, after these 2 witnesses identified

7     Miss Lindsey in the photo show up, you returned to

8     11th and State, is that correct?

9          A   Yes.

10         Q   You informed Miss Lindsey of their

11    identification of her, did you not?

12         A   Not right at that time.  They asked her

13    if she wouldn't mind coming into our office so we

14    could talk further about our investigation is

15    which she agreed to and we then drove to my office

16    at Area 5.

17         Q   Pardon me?

18         A   We then drove to my office at Area 5 at

19    Grand and Central.

20         Q   Okay.  And then after you drove to Grand

21    and Central, en route to Grand and Central, you

22    didn't over to take Miss Lindsey home, did you?

23         A   No, she had agreed to come with us to

24    help us in our investigation, she never asked to

1    go home, she cooperated with us the whole time.

2         Q    Now, as soon as you got to Grand and

3    Central, you informed her of this identification

4    of her by the witnesses, Hess and Eiselt, did you

5    not?

6         A    First I advised her of her Miranda rights

7    and then I informed her of the identification.

8         Q    And you also told Miss Lindsey about the,

9    some similarities between her rape allegation and

10   this murder investigation, did you not?

11        A    Yes.

12        Q    And when you told these facts to Miss

13   Lindsey and you informed Miss Lindsey of her

14   Miranda rights, where within the geographical

15   section of the police station was she?

16        A    She was in one of our interview rooms at

17   Area 5.

18        Q    At this time Miss Lindsey was under your

19   control, was she not?

20        MS. PETERS:   Objection calls for a legal

21   conclusion.

22        THE COURT:   Conclusionary statement.

23        MR. SOROSKY:

24        Q    Well she was in an interview room, is

D 45

1    that correct?

2            A    Yes.

3            Q    And how many police officers were

4    there?

5            A    Myself and Detective Bogucki.

6            Q    And it was at this time that Miss Lindsey

7    made a statement, is that correct?

8            A    Yes.

9            Q    Now, prior to this statement, she didn't

10   call any family members, did she?

11           A    She never asked to.

12           Q    But she did not?

13           A    No, she didn't.

14           Q    Call any?

15           A    No, she didn't.

16           Q    Now, she didn't call any attorney, did

17   she?

18           A    Never asked to, no.

19           MR. SOROSKY:    Nothing further from this

20   witness at this time.

21           THE COURT:    Cross.

22           MS. PETERS:    Judge, I anticipate my cross

23   examination is going to be somewhat lengthy due to

24   the complicated nature of this case.    I know that

1    Mr. Sorosky has been more than patient in waiting
2    for us to proceed today.
3                         However due to the hour I
4    don't know that I can proceed much further tonight
5    because of the personal time constraints that I
6    have.
7         MR. SOROSKY:  I'll do whatever anyone wants.
8         THE COURT:  We hold the matter over until
9    tomorrow?
10        MR. SOROSKY:  Sure.
11        MS. PETERS:  Is it more convenient in the
12   afternoon.
13        MR. SOROSKY:  What is the Court's schedule.
14   I mean the afternoon might be more practical.
15        MS. PETERS:  Just so we don't have --
16        THE COURT:  I have a couple of matters for
17   trial.  I expect to go to trial.  Whether or not I
18   go to trial though is --
19        MS. PETERS:  Remains to the scene.
20        THE COURT:  More often than not I don't go
21   to trial.
22        MR. SOROSKY:  Let's hold it over and I'll
23   call you.
24        THE COURT:  How about 11 o'clock.

1          MS. PETERS:  Fine.

2          MR. SOROSKY:  Officer, is it better for you

3     in the afternoon?

4          A   I can be here any time.

5          MR. SOROSKY:  Can we do it 1:30?

6          THE COURT:  1:30, all right.

7          MS. PETERS:  Might be a more realistic time.

8          THE COURT:  All right.

9          By agreement hold on call until 1:30

10    tomorrow.

11               Okay.  In the interum detective, do

12    not discuss your testimony with anyone.

13         A   Okay.

14         MS. PETERS:  I'll let the other detectives

15    know as well about the date.  Thank you very much.

16         THE COURT:  That includes the other

17    witnesses.

18                         (Whereupon, the further hearing

19                         of the above-entitled cause

20                         was continued to 2-16-94, at

21                         1:30 o'clock p.m.)

22

23

24

1    STATE OF ILLINOIS )
                         )  SS.
2    COUNTY OF C O O K )

3       THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT   -    CRIMINAL DIVISION

4                  I, Kenneth Madoch, Official

5    Shorthand Reporter of the Circuit Court of Cook

6    County Department-Criminal Division do hereby

7    certify that I reported in shorthand the

8    proceedings had at the hearing in the

9    above-entitled cause; and that I thereafter

10   caused to be transcribed into typewriting the

11   foregoing transcript, which I certify is a

12   true and correct transcript of said

13   proceedings.

14

15   _____
16   Official Shorthand Reporter
     Circuit Court of Cook County.

17

18

19

20

21

22

23

24   Dated this 4th day of June, 1995.

1

STATE OF ILLINOIS   )
                    )   SS:
COUNTY OF C O O K   )

        IN THE CIRCUIT COURT OF COOK COUNTY
        COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE    )
STATE OF ILLINOIS    )
                     )
                     )   No. 92 CR 25135
    vs.              )
                     )
JERRI LINDSEY        )


        REPORT OF PROCEEDINGS had of the hearing

in the above-entitled cause, before the Honorable

SHELVIN SINGER, Judge of the said Court, on Wednesday,

the 16th day of February, A.D., 1994.

        APPEARANCES:

                HONORABLE JACK O'MALLEY,
                State's Attorney of Cook
                County, by:
                MS. LYNDA PETERS,
                Assistant State's Attorney,
                for the People of the State of
                Illinois;

                MR. SHELDON SOROSKY,
                for the defendant.




    Ann Hieber, CSR.
    Official Court Reporters
    2650 S. California Ave.-4C02.
    Chicago, Illinois  60608

1       THE CLERK:  Jerri Lindsey.

2       THE COURT:  All right.  Record should reflect that

3   the defendant is present in her own presence and State is

4   present and counsel is also present.

5       MR. SOROSKY:  Yes, your Honor.  Sheldon Sorosky,

6   S-o-r-o-s-k-y, representing Jerri Lindsey.  In speaking to

7   the State's Attorney I understand that the officer who

8   testified yesterday cannot be here today.  And I also

9   understand that I guess the next couple days the court is

10  pretty busy and then the court's going to be out of town

11  and the officer is going to be out of town.

12      THE COURT:  We can't do it tomorrow?

13      MS. PETERS:  Judge, it's possible we can do it

14  tomorrow.  I'm just trying to review our schedule.  I know

15  that we have John Banks, an attempt murder bench,

16  commenced and continued.  Tony Heyman, attempt murder,

17  motion to quash arrest commenced and continued.

18      THE COURT:  Banks is not until 2 p.m.

19      MS. PETERS:  Andre Jones is Department of Mental

20  Health, commitment hearing, and a number of violations of

21  probations.

22      MR. SOROSKY:  We'll agree --

23      MS. PETERS:  If possible.  If possible certainly I

24  would like to do it tomorrow because the alternative is

1    going into the third week of March to accommodate

2    schedules.

3            MR. SOROSKY:  I just don't see how it can be done.

4            THE COURT:  Don't see how what?

5            MR. SOROSKY:  This motion, if we have a hearing at

6    2, unless you begin by 4.  I'm being practical.

7            THE COURT:  Can we start at 11?

8            MS. PETERS:  We can certainly try to.

9            MR. SOROSKY:  Fine.

10           THE COURT:  All right.  By agreement, hold on call

11   until tomorrow.

12           MR. SOROSKY:  Oh, sure.

13           THE COURT:  Okay.

14                          (Whereupon, the above-entitled cause

15                           was continued to February 17, 1994.)

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS )

2    COUNTY OF COOK    )

3

4                 I, ANN HIEBER, Official Court Reporter of the

5    Circuit Court of Cook County, County Department-Criminal

6    Division, do hereby certify that I reported in shorthand

7    the proceedings had in the above-entitled cause, that I

8    thereafter caused to be transcribed into typewriting the

9    above Report of Proceedings, which I hereby certify is a

10   true and correct transcript of the proceedings had before

11   the Honorable SHELVIN SINGER, Judge of the said Court.

12

13

14

15   _____

16               Official Court Reporter of the

17               Circuit Court of Cook County.

18

19

20

21

22

23

24

E-5