File Date:  Feb 29, 2008

Case No: 07cv6658

ATTACHMENT # 3

EXHIBIT OoT

TAB (DESCRIPTION) _____

No. 1-00-3480

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
|---|---|---|
| Respondent-Appellee, | ) | |
| -vs- | ) | No. 94 CR 25135. |
| JERRI LINDSEY, | ) | Honorable James R. Epstein, Judge Presiding. |
| Petitioner-Appellant. | ) | |

---

## REPLY BRIEF FOR PETITIONER-APPELLANT

MICHAEL J. PELLETIER, Esq.
Deputy Defender
Office of the State Appellate Defender
203 N. LaSalle Street # 2400
Chicago, Illinois 60601
312-814-5472

PATRICIA A. WRONA, Esq.
188 West Randolph Street Suite 2107
Chicago, IL 60601
312-251-9402

COUNSEL FOR PETITIONER-APPELLANT

## ORAL ARGUMENT REQUESTED

No. 1-00-3480

## IN THE

## APPELLATE COURT OF ILLINOIS

## FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 94 CR 25135. |
| | ) | |
| JERRI LINDSEY, | ) | Honorable James R. Epstein, |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

### NOTICE OF FILING AND PROOF OF SERVICE

TO:   Richard Devine
      Cook County State's Attorney
      300 Daley Center
      Chicago, IL 60602

Please take notice that on October 24, 2002, we filed the requisite copies of the Reply Brief of the Petitioner-Appellant in the Office of the Clerk of the above Court, copies of which are hereby served upon you.

_Patricia A. Wrona_
Patricia A. Wrona, Esq.
Attorney for Petitioner-Appellant

STATE OF ILLINOIS   )   SS
COUNTY OF COOK      )

The undersigned attorney, Patricia A. Wrona, Esq. deposes and states that she personally delivered the required number of copies of the Reply Brief of the Petitioner-Appellant to the State's Attorney of Cook County at the address listed above on the 24th day of October, 2002.

Patricia A. Wrona, Esq.                    _Patricia A. Wrona_
188 West Randolph Street Suite 2107        Patricia A. Wrona, Esq.
Chicago, IL 60601                          Attorney for Petitioner-Appellant
312-251-9402

## POINTS AND AUTHORITIES

Page

**I.    LINDSEY WAS DENIED THE REASONABLE ASSISTANCE
OF COUNSEL ON HER POST-CONVICTION PETITION.**

People v. Flores, 153 Ill. 2d 264, 606 N.E.2d 1078 (1992),
    cert. denied sub nom., Flores v. Illinois, 510 U.S. 831, 114 S. Ct. 102 (1993)    2

People v. Davis, 229 Ill. App. 3d 869, 594 N.E.2d 423 (5th Dist. 1992),
    rev'd on other grounds, 156 Ill. 2d 149, 619 N.E.2d 750 (1993)    2

Illinois Supreme Court Rule 651(c)    2

**II.    LINDSEY'S PETITION WARRANTED A HEARING.**

People v. Del Vecchio, 129 Ill. 2d 265, 279, 544 N.E.2d 312 (1989)    5

People v. Guillen, 261 Ill. App. 3d 1092, 634 N.E.2d 1271 (2d Dist. 1994)    5

People v. Nix, 150 Ill. App. 3d 48, 501 N.E.2d 825 (3d Dist. 1986)    5

**III.    LINDSEY'S INEFFECTIVE ASSISTANCE CLAIM IS NOT BARRED.**

People v. Piper, 272 Ill. App. 3d 843, 651 N.E.2d 739 (5th Dist. 1995)    6

People v. Assenato, 257 Ill. App. 3d 1026, 629 N.E.2d 166 (2d Dist. 1994)    6

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)    7

## ARGUMENT

The State in its response brief argues that the Petitioner-Appellant Jerri Lindsey ("Lindsey") was not denied the reasonable assistance of counsel on her post-conviction petition, that she did not meet the standards which support an evidentiary hearing on her petition, and that she was not denied the effect assistance of counsel at trial for his failure to investigate alibi witnesses. As to each of these issues, this Court should find that Lindsey was indeed denied these important rights, and her case should be reversed and remanded on these grounds.

## I.  LINDSEY WAS DENIED THE REASONABLE ASSISTANCE OF COUNSEL ON HER POST-CONVICTION PETITION.

Lindsey's *pro se* petition attached only her affidavit, but clearly referred to alibi witnesses for whom she herself could not procure affidavits. While such affidavits were vital, as one of her claims was in part for ineffective assistance of trial counsel for failing to secure the testimony of alibi witnesses, post-conviction counsel still did not secure them or amend her petition to include them, or make any amendments for that matter. Lindsey was denied the reasonable assistance of counsel due to this inaction. People v. Flores, 153 Ill. 2d 264, 606 N.E.2d 1078 (1992), cert. denied sub nom., Flores v. Illinois, 510 U.S. 831, 114 S. Ct. 102 (1993).

While Lindsey's post-conviction counsel conferred with her, looked the records, and apparently interviewed or intended to interview these or other witnesses, the fact is that he did not amend her petition to submit such affidavits, even after he repeatedly told the court he was going to do so. Accordingly, counsel failed to fulfill his Illinois Supreme Court Rule 651(c) obligations, which are not just *pro forma*, but substantive in nature. Ill. Sup. Ct. Rule 651(c); People v. Davis, 229 Ill. App. 3d 869, 594 N.E.2d 423 (5th Dist. 1992), rev'd on other grounds, 156 Ill. 2d 149, 619 N.E.2d 750 (1993).

On this record, post-conviction counsel's performance was less than reasonable. The case was pending for two and a half years on Lindsey's post-conviction petition (from March 27, 1998 to September 29, 2000). The office of the Public Defender was her counsel on the petition that entire time, save the first month. (C. 38) After the passage of two years, on March 10, 2000, counsel was asking for a continuance because "I have done substantial interviewing of some individuals over the last—since the last court date. I still need to do more to work it up....I do need to be interviewing before finalizing a supplemental [petition]." (R. 9) When the court inquired if counsel would be filing a supplemental petition, counsel stated: "It appears so. There are a number of witnesses that I anticipate will be able to give us affidavits for that reason I would like to have the opportunity to complete the work." (R. 9) So the court granted the continuance for three months for counsel to do just that. From that exchange it can reasonably be inferred that there was merit to what Lindsey had set forth in her pro se petition, that he was aware that affidavits and supplementation was not only needed, but in the offing.

And at the next court date on June 9, 2000, counsel actually filed a written motion for extension of time to file that very supplemental petition. (R. 12, C. 38) In the written motion, counsel stated he had "conducted investigation *aimed at substantiating the alibi defense presented at trial;* and interviewed several witnesses suggested to counsel by Petitioner." (C. 38)(emphasis added). Counsel also referred to wanting more time to have a psychological evaluation of Lindsey performed to determine her mental state at the time she was interviewed by the police, as she contended her inculpatory statement was made under duress and coercion. (C. 39)

Perhaps understandably, the court denied the continuance after how long counsel had been stringing the case along, because "if you can't get the investigation done ...in two years,

then we are going to have to—I mean, I was warning the Public Defender since I first took over this call that we are going to start moving on these things. So, it's going to rise or fall on the petitioner's *pro se* motion....If at some point before we have a hearing on the motion you have done your work and you want to ask leave to supplement it, I will consider that at that time." (R. 14)

The State then filed its motion to dismiss, and post-conviction counsel filed his Rule 651 certificate. (R. 18, C. 41, 45) Counsel had not "done [his]... work" in the interim, and had not tried to supplement the petition. Instead, counsel stated that he had filed the certificate, "and am unable, at this point in time, to file a supplemental to the post-conviction case as well." (R. 18) No further explanation of the affidavits that had been referred to several times, was made.

Thereafter, the court granted the motion to dismiss, and denied Lindsey's *pro se* petition, on this very issue on appeal, and that is because it lacked necessary affidavit support.

Lindsey contends that the failure to amend the petition resulted in the omission of significant factual support from alibi witnesses, which support her claim of ineffective assistance of trial counsel. This failure to amend denied Lindsey reasonable representation on her petition, and therefore it should be remanded for further proceedings with competent counsel.

## II.    LINDSEY'S PETITION WARRANTED A HEARING.

The State suggests that Lindsey's petition does not meet the standards for the requirements of an evidentiary hearing, because the petition did not have the proper affidavit support that substantiated her claim of ineffective assistance. The circularity of this argument can be seen from the arguments, *supra*, that if post-conviction counsel had procured the affidavits, then a hearing would have been warranted. What is clear from this record that

4

substantiating evidence existed from alibi witnesses that post-conviction counsel just did not procure in affidavit form in the two and a half years this post-conviction matter was pending.

A hearing is required when the allegations of the petition, supported by the record *or* the affidavits, makes a showing of a violation of a constitutional right. People v. Del Vecchio, 129 Ill. 2d 265, 279, 544 N.E.2d 312 (1989); People v. Guillen, 261 Ill. App. 3d 1092, 1097, 634 N.E.2d 1271, 1273 (2d Dist. 1994). The record here shows that post-conviction counsel fell short of his obligation to provide the reasonable assistance of counsel after over two years on a petition that he admitted needed supplementing affidavits. The case of People v. Nix, 150 Ill. App. 3d 48, 501 N.E.2d 825 (3d Dist. 1986) is in fact applicable here, because the issues of allowing a defendant to testify of course include facts that, like here, can only be established, not from the common law record, but rather through attorney and client communications that were outside of that record. Similarly, to find out what Lindsey's trial counsel did or did not do (namely; did he even contact the alibi witnesses? What did they say? Did they provide an alibi for Lindsey, and she said they would in her affidavit? Were they unwilling to testify, were they outside the subpoena power of the court, or unable to give an affidavit for some other reason? Why was their testimony not secured?) a greater exploration of the facts that only a hearing could allow was in order here.

Lindsey's petition had sufficient legal merit to warrant a remand to the circuit court for competent post-conviction counsel to be appointed and an evidentiary hearing to be conducted.

## III.   LINDSEY'S INEFFECTIVE ASSISTANCE CLAIM IS NOT BARRED.

The State contends that Lindsey's ineffective assistance of counsel claim based on failure to secure alibi evidence at trial was barred by *res judicata* because ineffective assistance was in general one of her bases of appeal. As this Court rejected that issue in general, then the

5

argument of ineffective assistance based on this specific issue was also rejected, the State contends.

The issue of ineffective assistance based on failure to secure important alibi evidence is not barred by res *judicata*. The ineffectiveness of counsel's assistance on whether he interviewed the pertinent alibi witnesses, when he did it, what information they could provide, can only be established through matters that were outside the record on direct appeal, and are thus not waived and absolutely appropriate for a post-conviction petition.

When an issue is one which could only be proven by facts (if they exist) from outside the record, the issue could not then have been raised on direct review, so if such an issue is raised by means of a post-conviction petition, such issue is not barred by waiver or *res judicata*. People v. Piper, 272 Ill. App. 3d 843, 651 N.E.2d 739 (5th Dist. 1995)(fact that post-conviction petitioner had not raised issue of whether his attorney deprived him of his constitutional right to testify on his own behalf was not barred by waiver or *res judicata* in post-conviction petition, and petition required inquiry into matters outside the record. The purpose of a post conviction proceeding is to address constitutional issues that could not have been raised in a prior proceeding. People v. Assenato, 257 Ill. App. 3d 1026, 629 N.E.2d 166 (2d Dist. 1994).

On direct appeal, the issue of failure to secure alibi witnesses was not apparent from the four corners of the record. It is this very situation that is to be addressed by a post-conviction petition. And if that is the case, and if Lindsey's post-conviction counsel had secured the affidavits of these alibi witnesses, it could have been established in the court below that Lindsey in fact had strong alibi testimony, that if presented, would have raised serious doubts about the supposed eyewitness identification made of her. That along with the defense theory

6

that her inculpatory statement was made under duress, might have been sufficient to change the outcome of the case against her.

Trial counsel here did not do this investigation or call the appropriate witnesses. In this case, there could be no strategic reason for counsel's failure to secure critical witnesses, such as alibi witnesses is a first degree murder case where the defendant faced the death penalty. Given all the circumstances and facts of this case, the failure of defense counsel to explore, investigate and present evidence was not strategic or tactical, but an unreasonable lapse in representing Lindsey's interests at trial. Lindsey was prejudiced by her counsel's failure to investigate it. Due to the nature of the evidence against Lindsey, the prejudice of this lack of an alibi defense can be seen. Counsel's failure to investigate and call such witnesses amounted to ineffective assistance because the evidence in this case called for a stronger defense than counsel put on. There is at least a "reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). This Court should find that Lindsey was denied the effective assistance of counsel.

## **CONCLUSION**

For the foregoing reasons, Petitioner-Appellant Jerry Lindsey prays that this Court reverse the circuit court's ruling on her post-conviction petition and order that legal counsel be appointed for her and that an evidentiary hearing be held on the issues presented.

Respectfully submitted,

PATRICIA A. WRONA, Esq.
188 West Randolph Street Suite 2107
Chicago, Illinois 60601
312-251-9402

and

MICHAEL J. PELLETIER, Esq.
Deputy Defender
Office of the State Appellate Defender
203 N. LaSalle Street #2400
Chicago, Illinois 60601
312-874-5472

COUNSEL FOR PETITIONER-APPELLANT

**NOTICE**

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FOURTH DIVISION
February 6, 2003

No. 1-00-3480

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 92 CR 25135 |
| | ) | |
| JERRI LINDSEY, | ) | Honorable |
| | ) | James R. Epstein, |
| Defendant-Appellant. | ) | Judge Presiding. |

## ORDER

Defendant Jerri Lindsey appeals the trial court's dismissal of her petition for relief pursuant to the Post-Conviction Hearing Act (hereinafter the Act) (725 ILCS 5/122-1 *et seq.* (West 2000)) without an evidentiary hearing.

Following a bench trial, defendant was convicted of first degree murder and armed robbery. The court sentenced defendant to two terms of 45 years' imprisonment to run concurrently. A recitation of the facts and the evidence presented at trial can be found in our order affirming defendant's conviction on direct appeal. *People v. Lindsey*, No. 1-95-1353 (unpublished order pursuant to Supreme Court Rule

1-00-3480

23) (1997)   We will recite only the facts necessary for the disposition of the instant case.

On October 12, 1992, Rudolph Bennett was found shot to death in a cab located in a parking lot at O'Hare Airport. A Chicago Police Officer interviewed June Hess and John Eiselt, the last known "fares" picked-up by the victim. Hess and Eiselt told police that at about 2:30 p.m. on October 9, 1992, they called the Circle Cab company and requested a pick-up from the Empress Casino in Joliet, Illinois. As the cab approached, they noticed a woman in the back seat of the cab. When the driver indicated to Hess and Eiselt that he was there to pick them up, the woman moved from the back seat to the front seat.

Bennett dropped Hess and Eiselt off at a nearby hotel at about 3:15 p.m.   Later, they told officers that the woman told the cab driver she needed to get to O'Hare Airport by 4:30 p.m. They also gave officers a physical description of the woman. A ticket stub, indicating that Bennett entered the O'Hare Airport parking garage at 5:00 p.m. on October 9, 1992, was recovered from his cab.

On October 11, 1992, defendant reported to police that she had been sexually assaulted by a cab driver who had taken her to a wooded area. She told officers that she escaped by stabbing the cab driver in the chest. Reports from the treating hospital indicated that defendant had not suffered any vaginal trauma. Two days later, officers went to defendant's home and asked her to come to the police station to discuss her report of a sexual assault and a homicide that they were also investigating. While

2

1-00-3480

officers spoke with defendant. Hess and Eiselt were shown a photo array which included a photograph of defendant. Both identified defendant as the woman who was riding in the victim's cab on October 9, 1992. Before defendant was notified that she had been identified by Hess and Eiselt, defendant recanted her rape complaint but denied killing the victim.

Defendant, the last person to be seen with the victim, was arrested for Bennett's murder. She gave five different versions of the events of October 9, 1992. She also testified at trial that she was not involved in the murder of Bennett and presented an alibi defense. In support of her alibi, defense counsel called Irene Quiroz, who stated that she and defendant left the house at approximately 8:30 a.m. on October 9, 1992, and returned home at about 5:00 p.m. Robert Quiroz, Amelia Quiroz and Dorothy Ramierez all testified that on October 9, 1992, at approximately 2:30 p.m., defendant and Irene Quiroz were shopping with them at Venture and Walgreens in River Oaks. They returned home shortly after 5:00 p.m. Olga Martinez testified that she was waiting outside for Irene Quiroz and defendant to arrive home so that she could cook biscuits in their oven because the oven at her friend's house, where she was having dinner, was broken. Defendant and Irene returned about 5:30 p.m. Martinez cooked the biscuits in their oven and last saw defendant at about 6:30 p.m. on October 9, 1992. Jack St. Clair testified that defendant was with his brother, Jerry, in the early morning hours of October 10, 1992. The trial court found defendant guilty of the murder of Bennett.

3

1-00-3480

On March 27, 1998, defendant filed a *pro se* petition for post-conviction relief, which is the subject of the instant appeal. In that petition, defendant argued that the State failed to prove her guilty beyond a reasonable doubt, and that the photo array in this case was improper as she was available for a line-up. In addition, she argued that trial counsel was ineffective for failing to investigate her alibi defense, failing to interview and secure witnesses to provide mitigation at sentencing, failing to investigate and adequately prepare for trial and failing to challenge the identification.

Counsel was appointed to represent defendant for purposes of her post-conviction challenges in April 1998. The trial court granted the State's motion to dismiss defendant's *pro se* post-conviction petition without an evidentiary hearing on September 29, 2000. The court found that several of the issues raised therein were subject to *res judiciata* and waiver and that the other remaining contentions of ineffective assistance of counsel lacked evidentiary support.

Defendant now appeals the judgment of the trial court and argues: (1) she was denied her right to a reasonable level of assistance from post-conviction counsel; and (2) she was denied effective assistance of trial counsel due to his failure to investigate and present alibi witnesses. We reverse and remand.

The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2000)) allows a criminal defendant a procedure for determining whether he was convicted in substantial violation of his constitutional rights. 725 ILCS 5/122-1(a) (West 2000); *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). Where defendant is not sentenced

4

1-00-3480

to death, the *Act* sets forth a three-stage process for adjudicating a defendant's request for collateral relief. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

At the first stage, the circuit court must determine whether the petition before it alleges the " 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244, quoting *Gaultney*, 174 Ill. 2d at 418. Taking all well-pleaded facts as true, the court must determine whether the petition alleges a constitutional infirmity, that if proven, would demonstrate a deprivation of defendant's constitutional rights. 725 ILCS 5/122-2.1(a) (West 2000); *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). If the trial court determines that a defendant has stated the "gist of a constitutional claim", the petition is advanced to the second stage and counsel is appointed, if necessary, in accordance with sections 122-4 through 122-6 of the Act. 725 ILCS 5/122-2.1(b) (West 1998).

At the second stage, the State is required to either answer the post-conviction petition or move to dismiss. 725 ILCS 5/122-5 (West 2000). As the State in this case moved for dismissal, the trial court was required to rule on the legal sufficiency of the allegations contained in the petition, taking all well-pleaded facts as true. *People v. Ward*, 187 Ill. 2d 249, 255 (1999). As we review this case at the second stage, our inquiry is whether the allegations raised by defendant in her petition, supported by records and other documents, demonstrate a substantial violation of defendant's constitutional rights. *Edwards*, 197 Ill. 2d at 245-46. The standard of review we apply to the circuit court's dismissal of defendant's petition is *de novo*. *Coleman*, 183 Ill. 2d at 378-79.

5

1-00-3480

Defendant contends that she was denied her right to counsel on her post-conviction petition, as post-conviction counsel failed to comply with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). Specifically, defendant complains that post-conviction counsel's failure to amend her *pro se* petition resulted in the omission of significant factual support from alibi witnesses, which would have supported her claim of ineffective assistance of trial counsel.

As defendant recognizes, the right to post-conviction counsel is not a constitutional right. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L.Ed.2d 539, 546, 107 S. Ct. 1990, 1993 (1987). Rather, it is a right granted by Illinois statute and " ' is a matter of legislative grace and favor which may be altered by the legislature at will. ' ". *People v. Porter*, 122 Ill. 2d 64, 72 (1998) quoting *People v. Ward*, 124 Ill. 2d 974, 978 (1984); 725 ILCS 5/122-1 *et seq.* Therefore, unlike the degree of skill and care a lawyer must exercise in representing a criminal defendant, a lawyer representing a post-conviction petitioner must only provide a "reasonable" level of assistance as outlined in the Post-Conviction Hearing Act. *People v. Wright*, 149 Ill. 2d 36, 64 (1992).

Defendant claimed in her petition that defense counsel never interviewed or called as witnesses Jerry St. Clair or Paul Quiroz[1]. Defendant maintains that she informed defense counsel that these individuals played a crucial role in establishing

---

[1] Defendant's *pro se* petition is unclear with respect to whether counsel did in fact interview Paul Quiroz and Jerry St. Clair. In one sentence, defendant states that counsel failed to interview them and on the next page she states that counsel failed to call them as witnesses.

1-00-3480

her alibi defense.   Defendant did not attach to her *pro se* petition any affidavits, or any other documentation, from these individuals indicating what their testimony would be.

"Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's alibi defense." *People v. Morris*, No. 1-00-0916 (November 8, 2002).  Trial counsel's failure to present a witness to corroborate a defense has been regarded as ineffective assistance of counsel. *People v. Solomon*, 158 Ill. App. 3d 432 (1987).   For a defendant to successfully attack the competence of trial counsel, the defendant must provide the potential testimony of the witnesses whom he complains that counsel failed to interview or call at trial. *People v. Guest*, 166 Ill. 2d 381 (1995).

Postconviction counsel was appointed to represent petitioner in April 1998.   On March 10, 2000, postconviction counsel appeared in court and stated that he had conducted several interviews since the last court date, but that he needed to conduct additional interviews before preparing a supplemental petition.   Additionally, on March 10, 2000, counsel told the court, "[t]here are a number of witnesses that I anticipate will be able to give us affidavits for that reason I would like to have the opportunity to complete that work."

On June 9, 2000, counsel filed a written motion for an extension of time in which to file a supplemental petition.  He indicated to the court that he had contacted the trial attorney and had been interviewing witnesses.  Furthermore, counsel indicated that he conducted an investigation and was attempting to substantiate petitioner's alibi

7

1-00-3480

defense. Counsel also stated, "[w]hat I would propose is to have her examined by a psychologist so that we may be able to get an affidavit from the psychologist regarding her mental state at the time. I am not sure that there would be anything else that we would need to raise at this point. That may be the only issue, Judge." The trial court denied counsel's motion for an extension of time noting that the public defender had been appointed on defendant's case for over two years. In doing so the court stated, "[i]f at some point before we have the hearing on the motion you have done your work and you want to ask leave to supplement it, I will consider that at that time."

On September 29, 2000, counsel appeared in court and filed a Rule 651(c) certification, but had made no amendments to defendant's *pro se* petition nor submitted any affidavits to the court despite repeated representations that he had planned on doing so. The trial court dismissed defendant's post-conviction petition.

Rule 651(c) provides:

"Upon the timely filing of a notice of appeal in a post-conviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of the petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain

8

1-00-3480

> his contentions of deprivation of constitutional right, has examined the record
>
> of the proceedings at trial, and has made any amendments to the petitions filed
>
> pro se that are necessary for an adequate presentation of petitioner's
>
> contentions." 134 Ill. 2d R. 651(c).

Rule 651(c) is designed to work in conjunction with the Act to ensure that counsel appointed to represent an indigent defendant "ascertains the basis of his complaint, shapes those complaints into appropriate legal form and presents them to the court." People v. Owens, 139 Ill. 2d 351, 359 (1990).

Here, there is no dispute that post-conviction counsel complied with the first two requirements of rule 651(c); that he consulted with petitioner and reviewed the record. Defendant's contention is that counsel failed to comply with the third requirement of Rule 651(c) in that he failed to make the amendments necessary for an adequate presentation of her claims.

The question before us is whether counsel adequately complied with Rule 651(c) when he failed to amend defendant's pro se petition to include affidavits of Paul Quiroz and Jerry St. Clair or to explain why such documentation was unavailable.

Our supreme court was faced with a similar question in People v. Johnson, 154 Ill. 2d 227 (1993). Following a conviction for murder, the defendant filed a pro se post-conviction petition which alleged that he had received ineffective assistance of counsel. The public defender was appointed to represent the defendant. Counsel filed an amended post-conviction petition which realleged the allegations in the pro se petition

1-00-3480

and added two additional claims. However, counsel did not file a rule 651(c) certificate.

The court dismissed the petition on the State's motion to dismiss without an evidentiary

hearing. Because counsel had not filed a Rule 651(c), when the defendant argued on

appeal that he received inadequate representation in the post-conviction proceeding,

the court looked to the record to determine whether counsel had fulfilled his obligations

under the rule. *Johnson*, 154 Ill.2d at 238.

The defendant conceded that post-conviction counsel had adequately complied

with the first two requirements of 651(c). The defendant's only complaint with respect

to counsel's representation was that post-conviction counsel did not amend his *pro se*

post-conviction petition to adequately present his claims. The defendant argued,

similar to the instant case, that post-conviction counsel failed to interview any of the

individuals named in the petition, attached no affidavits or other records to the

amended petition and failed to explain why such supporting documentation was not

submitted. *Johnson*, 154 Ill. 2d at 239.

In *Johnson*, post-conviction counsel filed an affidavit as a supplemental record

wherein he admitted that he made no effort to investigate the claims raised in the

defendant's petition or to obtain affidavits from any of the witnesses specifically

identified in the petition. Counsel also admitted at the hearing on the motion to dismiss

that he had not made any effort to obtain the affidavits of three witnesses specifically

named in the petition. *Johnson*, 154 Ill. 2d at 241. Noting that a post-conviction

petition which is not supported by affidavits or other supporting documents is subject to

10

1-00-3480

dismissal without an evidentiary hearing (see *People v. McGinnis*, 51 Ill. App. 3d 273

(1977)), the court found that post-conviction counsel failed to comply with the level of

assistance required by Rule 651(c). *Johnson*, 154 Ill. 2d at 246.

> "Post-conviction counsel had an obligation to present the defendant's
> post-conviction claims to the court in appropriate legal form. At a minimum,
> counsel had an obligation to attempt to obtain evidentiary support for
> claims raised in the post-conviction petition. Because the allegations in the
> defendant's petition were not supported by affidavits, records or other
> evidence, the trial court had no choice but to dismiss the post-conviction
> petition without an evidentiary hearing." *Johnson*, 154 Ill. 2d at 245.

Unlike *Johnson*, post-conviction counsel in the case at bar chose to stand on

defendant's *pro se* petition when affidavits or an explanation of their absence would

have potentially afforded defendant an evidentiary hearing. In addition, we have no

affidavit from post-conviction counsel in the case at bar, wherein he admits his

inadequate representation. Despite these differences, we find the facts of this case

sufficiently similar to *Johnson* to warrant our conclusion that post-conviction counsel

failed to provide defendant with a reasonable level of representation.

We recognize that ordinarily a trial court ruling on a motion to dismiss a post-

conviction petition that is not supported by affidavits or other documents may

reasonably presume that post-conviction counsel made a concerted effort to obtain

affidavits in support of the post-conviction claims, but was unable to do so. *Johnson*,

11

1-00-3480

154 Ill. 2d at 241. Here however, the record does not support this presumption.
Despite the fact that counsel filed a 651(c) certificate with the court, post-conviction
counsel clearly had not completed his investigation in the two years that he had been
appointed to this case.  This is evidenced by the June 9, 2000, motion where he
requested additional time to investigate, and by his statement on September 29, 2000,
that "at this time" he was unable to file an amended petition.  Post-conviction counsel
submitted a 651(c) certificate in an apparent effort to appease a trial court that was
determined to "start moving on these things."

        We have previously stated that defendant's allegations regarding ineffective
assistance of trial counsel, if supported by accompanying documents, may demonstrate
a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 245-46.
Since the trial court dismissed the petition without an evidentiary hearing where it was
not supported by affidavits, records or other evidence to support defendant's
allegations, post-conviction counsel's representation could only be considered
"reasonable" if he had provided this documentation or amended the petition to explain
why it was unavailable.

        We remand this case so that post-conviction counsel may sufficiently comply
with Rule 651(c).  Counsel should be given the opportunity to amend defendant's *pro*
*se* petition to include the affidavits of the witnesses whom defendant claims offer
support for her alibi or to explain why such affidavits are unavailable. After counsel has
complied, the trial court will be in a better position to determine whether defendant has

1-00-3480

made a substantial showing that her constitutional rights were violated.  The State may
either answer the amended petition or file a motion to dismiss.

Reversed and remanded.

KARNEZIS, J., with THEIS, P.J., and HARTMAN, J., concurring.

13

STATE OF ILLINOIS      )
                       )   SS.
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT - CRIMINAL DIVISION
                SECOND DISTRICT

THE PEOPLE OF THE          )
STATE OF ILLINOIS          )      Case No. 92CR25135
                           )      Courtroom 108 Skokie
    versus                 )
                           )
JERRI LINDSEY              )

            ***REPORT OF PROCEEDINGS***

            BE IT REMEMBERED that the above-entitled

cause came on for hearing before the Honorable

JAMES EPSTEIN, Judge of said Court on the 18th day

of April, A.D., 2003.

        APPEARANCES:
            HON. RICHARD DEVINE,
                State's Attorney of Cook County, by:
            MR. RICHARD NATHANIEL,
                Assistant State's Attorney,
                    on behalf of the People;

            MS. RITA A. FRY,
                Public Defender of Cook County, by:
            MR. ALLEN GUTTERMAN,
                Assistant Public Defender,
                    on behalf of the Defendant.

Patricia A. Kelly
Official Court Reporter
5600 Old Orchard Road, Room 204
Skokie, IL  60077

1          THE CLERK: Jerri Lindsey.

2          MR. NATHANIEL: Richard Nathaniel.

3          THE COURT:  Ms. Lindsey is before the

4     bench.  This is a post conviction matter.  I'll

5     appoint the Public Defender's Office to represent

6     Ms. Lindsey.

7          What we need to do is get somebody from

8     the PD's Office to come in and represent.  Would

9     you notify the PD on this appointment,

10    Mr. Nathaniel?

11         MR. NATHANIEL: Yes.

12         THE COURT:  Your first date in front of

13    me is 5-23 by agreement. Ms. Lindsey we'll be

14    appointing the Public Defender's Office to be your

15    lawyer on this post conviction matter.

16         I'll sign and continue the writ one time

17    so that hopefully she can meet with the lawyer.

18    If you would tell them that defendant will

19    actually be present on that date so that she can

20    have her first interview that day.

21         MR. NATHANIEL: Yes.

22                              (Which concludes the

23                              above-entitled cause.)

24

25

STATE OF ILLINOIS    )

                     )    SS.

COUNTY OF C O O K     )


              I, PATRICIA A. KELLY, Official

Court Reporter of the Circuit Court of Cook

County, County Department-Criminal Division, do

hereby certify that I reported the proceedings had

in the above-entitled cause, that I thereafter

proceeded to transcribe the foregoing transcript,

which I hereby certify is a true and correct

Report of Proceedings.



                        _____
                        Patricia A. Kelly, Offici
                        Court Reporter of   the
                        Circuit Court of    Cook
                        County, County Department
                        CSR No. 84-002702


May 25, 2005


                        B4

1   STATE OF ILLINOIS )
                      )   SS.
2   COUNTY OF C O O K )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - CRIMINAL DIVISION
4
    THE PEOPLE OF THE      )
5   STATE OF ILLINOIS       )
                            )
6       vs.                 )   Case No. 92CR25135
                            )
7   JERRI LINDSEY           )

8                  ***REPORT OF PROCEEDINGS***

9

10          BE IT REMEMBERED that the above-entitled

11   cause came on for hearing before the Honorable JAMES

12   R. EPSTEIN, Judge of said Court, on the 23rd day of

13   May, A.D., 2003.

14

15       APPEARANCES:
            HON. RICHARD DEVINE,
16            State's Attorney of Cook County, by:
            MR. RICHARD NATHANIEL,
16            Assistant State's Attorney,
17              on behalf of the People;

18
            MR. EDWIN A. BURNETTE,
19            Public Defender of Cook County, by:
            MS. MARGE SANDERS,
20            Assistant Public Defender,
                on behalf of the Defendant.
21

22

23   Colleen Eitermann
     Official Court Reporter   CSR No. 084-001115
24   5600 Old Orchard Road, Room 204
     Skokie, IL   60077

1      THE COURT:  Jerry Lindsey.

2      MS. SANDERS:  This is a new case from our unit as

3   well.

4             Mr. Harold Winston, our supervisor, is

5   still retaining this file.

6             Again we are asking for a date to get

7   somebody assigned.

8      THE COURT:  Tell Mr. Winston I want the case

9   assigned.

10     MS. SANDERS:  I will.

11     THE COURT:  7/18.

12     THE COURT:  Motion Petitioner.

13     MS. SANDERS:  Thank you, your Honor.

14     THE COURT:  Thank you, Ms. Sanders.

15                  (The proceedings in the

16                   above-entitled cause were

17                   continued to May 23, 2003.)

18

19

20

21

22

23

24

STATE OF ILLINOIS )
                  )   SS.
COUNTY OF C O O K )


       I, COLLEEN EITERMANN, Official Court Reporter of the Circuit Court of Cook County, County Department-Criminal Division, do hereby certify that I reported the proceedings had in the above-entitled cause, that I thereafter proceeded to transcribe the foregoing transcript, which I hereby certify is a true and correct Report of Proceedings.




                                    _____
COLLEEN EITERMANN, Official
Court Reporter of the
Circuit Court of Cook
County, County Department
CSR No. 084-001115

STATE OF ILLINOIS    )
                 )  *SS.*
COUNTY OF C O O K   )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

THE PEOPLE OF THE      )
STATE OF ILLINOIS      )
                 )
      Plaintiff    )
                 )
   -vs-          ) 92 CR 25135
                 )
JERRI LINDSEY       )
                 )
      Defendant   )

## REPORT OF PROCEEDINGS

BE IT REMEMBERED this cause came on for

hearing before the HONORABLE JAMES EPSTEIN, Judge

of said Court on this 18th day of July, 2003.

APPEARANCES:

        HON. RICHARD DEVINE,
          State's Attorney of Cook County, by
        MR. RICHARD NATHANIEL,
          Assistant State's Attorney,
          Appeared on behalf of the People;

        MS. RITA A. FRY,
          Public Defender of Cook County, by
        MS. JUANDA OTOPA,
          Assistant Public Defender,
          Appeared on behalf of the defendant

Michael H. Velasco  CSR  #84-1252
Official Court Reporter
2121 Euclid    Room 060
Rolling Meadows, I 60008

1                    (Whereupon the following proceedings
2                    were had in the above entitled case)
3         THE CLERK:   Jerri Lindsey.
4         MS. OTOPA:   Assistant Public Defender
5    Juanda Otopa for petitioner, Jerri Lindsey.
6         MR. NATHANIEL:   Richard Nathaniel for the
7    People.
8         MS. OTOPA:   Mr. Harold Winston asked me to
9    accept the assignment of this case and I apologize
10   an assignment was not made earlier, it sort of
11   slipped through the cracks in terms of the amount
12   of things that he attends to. And so I'm going to
13   ask for an extension to September 12th because I
14   have no familiarity with the file.
15        THE COURT: All right.  Sort out what you
16   need to review on that issue and issue subpoenas
17   immediately because this should not be prolonged.
18                    (Which were all the proceedings
19                    had this date, continued to
20                    September 12, 2003.)
21
22
23
24

STATE OF ILLINOIS    )

                     ) SS

COUNTY OF C O O K    )

            I, MICHAEL H. VELASCO,  CSR # 084-001252, Official Court Reporter of the Circuit Court of Cook County, County Department-Criminal Division, do hereby certify that I reported the proceedings had in the above entitled cause, that I thereafter proceeded to transcribe the foregoing transcript, which I hereby certify is a true and correct Report of Proceedings.


           MICHAEL H. VELASCO    CSR

           Official Court Reporter of

           the Circuit Court of Cook

           County,  County Department


Dated this 21st day

of July, 2005.

1   STATE OF ILLINOIS          )
                               )    SS:
2   COUNTY OF COOK             )

3           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            SECOND MUNICIPAL DISTRICT - CRIMINAL DIVISION
4
    IN RE:                              )
5                                       )
         JERRI LINDSEY,                 )     No.  92 CR 25135
6                                       )
                    Defendant.          )
7

8           REPORT OF PROCEEDINGS had at the hearing of the

9   above-entitled cause, before the HONORABLE JAMES R.

10  EPSTEIN, one of the judges of said court, on the 12th day

11  of September, 2003.

12

13          PRESENT:
                        HON. RICHARD A. DEVINE, State's Attorney
14                      of Cook County, by:
                        MS. CHRISTINE STEVENS,
15                      Assistant State's Attorney,
                        on behalf of the People;
16
                        MR. EDWIN A. BURNETTE, Public Defender
17                      of Cook County, by:
                        MR. STEVEN BLACK,
18                      Assistant Public Defender,
                        on behalf of the Defendant.
19

20  Kristen A. Spunder
    Official Court Reporter
21  Second Municipal District - Criminal Division
    CSR #084-4409
22

23

24

1    THE CLERK:  Jerri Lindsey.

2    MR. BLACK:  Steven Black, Assistant Public Defender.

3    What the status is, Your Honor, I was assigned to this

4    case this past week.  I started with the office on

5    August 26th.  This is a remand from the Appellate Court.

6    I actually am in the process of looking for the original

7    file that the original post-conviction attorney had.  I

8    have not been able to locate that file yet.

9    THE COURT:  Who was the original attorney on it?

10    MR. BLACK:  Ronald Hayes was the attorney.

11    THE COURT:  He's right here.

12    MR. BLACK:  He has given me indication --

13    THE COURT:  Where is the file, Mr. Hayes?

14    MR. HAYES:  Judge, when the case was completed, it

15    was formally put in storage.  I have looked in my records.

16    I don't have it.  I talked to the storage people; and

17    hopefully, if they continue searching, they will be able

18    to get it soon.  At this point, they haven't been able to

19    locate it, but that is where it is at this point.  It

20    shouldn't take long because it wasn't that long ago.

21    THE COURT:  No.  It really wasn't.

22    MR. HAYES:  Yes.  I think about a year ago.  It may

23    still be in our office.  It shouldn't have been sent to

24    the warehouse.  So, I'm going to help in an effort to find

1      this, Judge.

2            THE COURT:  I'll give you until November 14th.

3            MR. BLACK:  Thank you, Judge.

4                              (The above-entitled cause was later

5                                 recalled.)

6            THE COURT:  November 14th, post-conviction date.

7      What's your name?

8            THE DEFENDANT:  Jerri Lindsey.

9            THE COURT:  For today's date, I continued your case

10     until 11-14.

11                              (The above-entitled cause was

12                                 continued to November 14, 2003.)

13

14

15

16

17

18

19

20

21

22

23

24

```
 1   STATE OF ILLINOIS      )
                            )      SS:
 2   COUNTY OF COOK         )

 3

 4

 5

 6

 7           I, Kristen A. Spunder, Official Court Reporter

 8   of the Circuit Court of Cook County, Second Municipal

 9   District - Criminal Division, do hereby certify that I

10   reported in shorthand the evidence had in the

11   above-entitled cause and that the foregoing is a true and

12   correct transcript of all the evidence heard.s

13

14

15

16                                  _____
                                    Official Court Reporter
17                                  Circuit Court of Cook County
                                    Second Municipal District - Criminal
18                                  Division

19                                  Date:  6-10-05  _____

20

21

22

23

24
```

STATE OF ILLINOIS      )
                       )  SS.
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT - CRIMINAL DIVISION
                 SECOND DISTRICT

THE PEOPLE OF THE          )
STATE OF ILLINOIS          )      Case No. 92CR25135
                           )      Courtroom 108 Skokie
    versus                 )
                           )
JERRI LINDSEY              )

              ***REPORT OF PROCEEDINGS***

          BE IT REMEMBERED that the above-entitled

cause came on for hearing before the Honorable

JAMES EPSTEIN, Judge of said Court on the 14th day

of November, A.D., 2003.

        APPEARANCES:
              HON. RICHARD DEVINE,
                State's Attorney of Cook County, by:
              MS. KRISTEN STEVENS,
                Assistant State's Attorney,
                   on behalf of the People;

              MS. RITA A. FRY,
                Public Defender of Cook County, by:
              MR. STEVEN BLACK,
                Assistant Public Defender,
                   on behalf of the Defendant.

Patricia A. Kelly
Official Court Reporter
5600 Old Orchard Road, Room 204
Skokie, IL  60077

1           MR. BLACK: Steven Black, Assistant

2    Public Defender.

3           MS. STEVENS: Kristen Stevens.  This case

4    was sent back to us from the Appellate Court for

5    defense to comply with 650MC Petition.

6           MR. BLACK: That's correct. There was an

7    original file on this case with the original post

8    conviction case. That file was placed in storage.

9           Since the last court date I conducted my

10   own search, and the people who are in charge of

11   filing conducted their search for the file.  We

12   have not been able to locate the file.

13          I have a separate but much smaller file

14   that has been created since the remand of the

15   Appellate Court that's at 69 W. Washington, and

16   I've not been able to get access.

17          I corresponded with Ms. Lindsey, and

18   she's here today; and I intend to begin the

19   cumulation of information today and re-create the

20   file from scratch.

21          THE COURT:  1-16.

22          MR. BLACK: Fine.

23          THE COURT:  By agreement.

24                          (Which concludes the

25                          above-entitled cause.)

                        F3

STATE OF ILLINOIS      )

                       )      SS.

COUNTY OF C O O K      )


        I, PATRICIA A. KELLY, Official
Court Reporter of the Circuit Court of Cook
County, County Department-Criminal Division, do
hereby certify that I reported the proceedings had
in the above-entitled cause, that I thereafter
proceeded to transcribe the foregoing transcript,
which I hereby certify is a true and correct
Report of Proceedings.




                        _Patricia A. Kelly_
                      Patricia A. Kelly, Offici
                      Court Reporter of   the
                      Circuit Court of    Cook
                      County, County Department
                      CSR No. 84-002702


May 25, 2005

```
 1    STATE OF ILLINOIS )
                        )
 2    COUNTY OF COOK    )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CRIMINAL DIVISION
 4                  SECOND MUNICIPAL DISTRICT

 5
      THE PEOPLE OF THE,     )
 6    STATE OF ILLINOIS,     )
                             )
 7            Plaintiff,     )
                             )
 8            vs             ) No.  92 CR 25135
                             )
 9    JERRI LINDSEY,         )
                             )
10            Defendant.     )

11                  REPORT OF PROCEEDINGS

12       BE IT REMEMBERED that the above-entitled cause

13    came on for hearing before the Honorable JAMES

14    EPSTEIN on January 16, 2004 in Skokie, Illinois.

15
         APPEARANCES:
16
              HON. RICHARD DEVINE,
17            State's Attorney of Cook County, by
              MS. CHRISTINE STEPHENS,
18            Assistant State's Attorney,
                 for the People;
19
              MR. EDWIN A. BURNETTE,
20            Public Defender of Cook County, by:
              MR. RONALD HAZE,
21            Assistant Public Defender,
                 for the Defendant.
22

23    Ellen Mott-Jablonski, CSR, RPR
      Official Court Reporter
24    Illinois License No. 084-001407
```

```
 1              THE CLERK:  Jerri Lindsey

 2              MR. HAZE:  Your Honor, on that case Steve

 3    Black from our office represents Ms. Lindsey.

 4              He was having trouble finding the trial file

 5    and some transcripts.  He informed me he's still

 6    looking for those.  And the case is complicated by

 7    our move from the 69 West building.

 8              For that reason, Judge, I'd be asking for a

 9    date of approximately two months so he can continue

10    trying to track that down.

11              THE COURT:  March 5th. Motion petitioner.

12                   (Which were all the proceedings had on

13                    the above-entitled cause on this date.)

14                         ---oOo---

15

16

17

18

19

20

21

22

23

24
```

STATE OF ILLINOIS )
                  )    SS.
COUNTY OF C O O K )
   IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT - CRIMINAL DIVISION
           SECOND MUNICIPAL DISTRICT

               I, ELLEN MOTT-JABLONSKI, Official Court

Reporter of the Circuit Court of Cook County, County

Department-Criminal Division, do hereby certify that

I reported the proceedings had in the above-entitled

cause, that I thereafter proceeded to transcribe the

foregoing transcript, which I hereby certify is a

true and correct Report of Proceedings.

                    _____
                    ELLEN MOTT-JABLONSKI,
                    Official Court Reporter of the
                    Circuit Court of Cook
                    County, County Department
                    CSR No. 084-001407

Dated this 5th day
of July, 2005.

G-4

1    STATE OF ILLINOIS )
                        )  SS.
2    COUNTY OF C O O K  )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION
4
     THE PEOPLE OF THE        )
5    STATE OF ILLINOIS        )
                              )
6        vs.                  )   Case No. 92CR25135
                              )
7    JERRI LINDSEY            )

8                  ***REPORT OF PROCEEDINGS***
9

10           BE IT REMEMBERED that the above-entitled

11   cause came on for hearing before the Honorable JAMES

12   R. EPSTEIN, Judge of said Court, on the 5th day of

13   March, A.D., 2004.

14

         APPEARANCES:
15               HON. RICHARD DEVINE,
                    State's Attorney of Cook County, by:
16               MS. CHRISTINE A.  STEPHENS,
                    Assistant State's Attorney,
17                  on behalf of the People;

18               MR. EDWIN A. BURNETTE,
                    Public Defender of Cook County, by:
19               MR. STEVEN BLACK,
                    Assistant Public Defender,
20                  on behalf of the Defendant.

21               Also Present:  Mr. Ronald Haze,
                                Assistant Public Defender.
22
     Colleen Eitermann
23   Official Court Reporter  CSR No. 084-001115
     5600 Old Orchard Road, Room 204
24   Skokie, IL  60077

1    THE CLERK: Jerry Lindsey. Top of Sheet 1.

2   Post-conviction.

3    MS. STEPHENS: Christine Stephens on behalf of

4   the People.

5    MR. BLACK: Steven Black, Assistant Public

6   Defender, on behalf of Ms. Lindsey.

7    THE COURT: All right.

8    MR. BLACK: This is a remand. There are two

9   alibi witnesses that are named in the appellate

10  decision.

11       I have spoken and interviewed one of

12  those witnesses. I have yet to speak with the second

13  one. But I do have phone calls to that individual.

14       The problem is, I don't have a

15  transcript of this case. And in order to get what I

16  think would be proper affidavits from these

17  individuals, I will need to see what the transcript

18  says about what they may or may not ever testify to;

19  if they did testify; if the lawyer mentioned in the

20  courtroom that he had tried to contact them and

21  hadn't been able to.

22       This file -- the original

23  post-conviction file is not findable. I have ordered

24  the appellate record to see if these transcripts were

1  returned.  And I also have a call into the State

2  Appellate Office to see if they have any of this

3  record from the post-conviction appeal.

4            So, I would be asking for a date.

5       THE COURT:  All right.  But if you could

6  follow-up on that quickly, I would appreciate it.

7  This was tried by Judge Singer in 1992 or 3.

8       MR. BLACK:  Let me just see something here.

9       THE COURT:  Who was the post-conviction attorney?

10      MR. BLACK:  The original post-conviction attorney

11  is Ron Haze.

12      THE COURT:  Mr. Haze, do you know where the file

13  is?

14      MR. HAZE:  I have been looking for it and haven't

15  located it yet.  I think it has been turned over to

16  the State Appellate Defender; with respect to the

17  transcripts, anyways.

18      MR. BLACK:  Yes.  That was my understanding.

19      THE COURT:  And who handled it for the State

20  Appellate Defender?

21      MR. BLACK:  Patricia Ronan.  I spoke to her

22  personally.  She is in private practice now.  She

23  couldn't remember what materials she had.  So, I

24  called the State Appellate Defender's office.  And I

1    haven't heard back from them yet.

2         THE COURT:  It may be worth a visit.  I will give

3    you some time to try to track it down.

4              But let's get this moving please.

5              What date do you want to suggest?

6         MR. BLACK:  My suggestion, Judge, June 18th.

7         THE COURT:  Well, the problem is, if you come

8    back in June and tell me you still don't have a

9    record, then we have lost three months.

10             I think the first thing we need to do is

11   check to see that you have the record.  And I think

12   that a month's time is sufficient to be able to find

13   out whether you have been able to procure the record.

14             So, do you want to pick some Friday in

15   April; April 9th?

16             Is that all right with you,

17   Ms. Stephens?

18        MS. STEPHENS:  Yes.

19        THE COURT:  Okay.  Motion Petitioner 4/9.

20             And Ms. Stephens, have you looked to see

21   if there is any transcripts in your file?

22        MS. STEPHENS:  I do not -- no, I have not; but I

23   will.

24        THE COURT:  If you would, I would appreciate it.

1          Thank you.

2                    (The proceedings in the

3                     above-entitled cause were

4                     continued to March 5, 2004.)

STATE OF ILLINOIS )
                 )   SS.
COUNTY OF C O O K )


          I, COLLEEN EITERMANN, Official Court

Reporter of the Circuit Court of Cook County, County

Department-Criminal Division, do hereby certify that

I reported the proceedings had in the above-entitled

cause, that I thereafter proceeded to transcribe the

foregoing transcript, which I hereby certify is a

true and correct Report of Proceedings.




COLLEEN EITERMANN, Official
Court Reporter of the
Circuit Court of Cook
County, County Department
CSR No. 084-001115

1  TATE OF ILLINOIS        )
                            )  SS.
2  COUNTY OF C O O K        )

3      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
          COUNTY DEPARTMENT -  CRIMINAL DIVISION
4
   THE PEOPLE OF THE              )
5  STATE OF ILLINOIS             )
                                  )
6              Plaintiff          )
                                  )
7              -vs-               )  92 CR 25135
                                  )
8  JERRY LINDSEY                 )
                                  )
9              Defendant          )

10                 REPORT OF PROCEEDINGS

11          BE IT REMEMBERED this cause came on for

12  hearing before the HONORABLE JAMES EPSTEIN, Judge

13  of said Court on this 9th day of April, 2004.

14          APPEARANCES:

15              HON. RICHARD DEVINE,
                   State's Attorney of Cook County, by
16              MR. MARSHALL LIBERT,
                   Assistant State's Attorney,
17                 Appeared on behalf of the People;

18              MS. RITA A. FRY,
                   Public Defender of Cook County, by
19              MR. STEVEN BLACK,
                   Assistant Public Defender,
20                 Appeared on behalf of the defendant

21

22

23  Michael H. Velasco  CSR  #84-1252
    Official Court Reporter
24  2121 Euclid    Room 060
    Rolling Meadows, I 60008

                        I-1

1               (Whereupon the following proceedings
2               were had in the above entitled case)
3          THE CLERK:   Jerri Lindsey.
4          MR. BLACK:   Steven Black, Assistant Public
5     Defender
6          THE COURT: Where are we now on this?
7          MR. BLACK:   On the last court date, Judge,
8     I informed you that we had problems getting the
9     Appellate record, the transcripts. I traced the
10    part of the transcripts from the Appellate Court
11    back to the Daley Center which then transferred
12    them to 26th Street and I spoke with somebody in
13    the vault who said that they hadn't ever received
14    them back and that it was possible they were in
15    the warehouse. I need to speak with a supervisor
16    and there was nobody in this morning.
17         THE COURT: This morning is a little late to
18    try to get this done.
19         MR. BLACK:   I was at the clerk's office
20    earlier this week, Judge and they told me to call
21    back this morning.
22         THE COURT: You're going to have to chase it
23    down.
24         MR. BLACK:   Well, the other possibility is

                        I-3

the State informed me yesterday they have
potentially at least some of the transcripts.

THE COURT: Are you going to settle for some
of the transcripts.

MR. BLACK:   I'm not sure.  I have to view
the actual trial record from their office, which
I'll do next week.

THE COURT: Well, try to get an idea of what
you need to do. But I wouldn't stop following up
with the supervisor from the clerk's office.
Pursue both paths so we can get you everything you
need so we can get this case ready to move.

MR. BLACK:   Of course, Judge.

THE COURT:  May 14.

MR. BLACK:  Could it be May 21?

THE COURT:  That's fine.   Motion
petitioner, May 21 for transcripts.

> (Which were all the proceedings
> had this date, continued to
> May 21, 2004.)

I-4

STATE OF ILLINOIS        )

                         )   SS

COUNTY OF C O O K        )

                I, MICHAEL H. VELASCO,   CSR #
084-001252, Official Court Reporter of the Circuit
Court of Cook County, County Department-Criminal
Division, do hereby certify that I reported the
proceedings had in the above entitled cause, that
I thereafter proceeded to transcribe the foregoing
transcript, which I hereby certify is a true and
correct Report of Proceedings.


                _____
                MICHAEL H. VELASCO    CSR
                Official Court Reporter of
                the Circuit Court of Cook
                County,   County Department


Dated this 21st day
of JULY, 2005

                    I-5

STATE OF ILLINOIS   )
                    )   SS.
COUNTY OF C O O K   )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

THE PEOPLE OF THE          )
STATE OF ILLINOIS          )   NO. 92 CR 25135
                           )
     VS                    )
                           )
JERRI LINDSEY              )

              REPORT OF PROCEEDINGS had at the
hearing of the above-entitled cause before the
Honorable JAMES R. EPSTEIN, Judge of said Court,
on the 21st day of May, 2004, in Courtroom 108,
5600 Old Orchard Road, Skokie, Illinois, 60077.

   PRESENT:

          HON. RICHARD A. DEVINE,
             State's Attorney of Cook County, by
          MS. DIANN SHERIDAN,
             Assistant State's Attorney,
             appeared for the People;

          MR. EDWIN A. BURNETTE,
             Public Defender of Cook County, by
          MR. STEVEN BLACK,
             Assistant Public Defender,
             appeared for the Defendant.

Reported by:
Ms. Marjean Ninemire
Official Court Reporter, #084-000922
Circuit Court of Cook County

                    j-1

1          THE CLERK:  Jerri Lindsey, sheet 3.

2          MR. BLACK:  Good morning.  Steven Black,

3     Assistant Public Defender.  This case is a remand

4     from the Appellate Court, Judge.

5          THE COURT:  Right.

6          MR. BLACK:  This case is a case in which the

7     appellate record including the transcripts has

8     been partially discovered by the Clerk's Office.

9     She had gave me three volumes including the

10    common law record of nine volumes of a trial

11    transcript.  At this point --

12         THE COURT:  Nine volumes?

13         MR. BLACK:  Yes.  I talked to the Appellate

14    Court Clerk.  They sent 12 volumes.  They can't

15    locate the remaining files in the courthouse.

16    The option now is to go to the court reporters.

17    Luckily, one of the volumes they were able to

18    locate was the common law record.

19         THE COURT:  So, we will place that order.

20         MR. BLACK:  Yes, Judge.

21         THE COURT:  And we will -- we will set it

22    for status, 6-25.

23         MR. BLACK:  Thank you.  Motion of

24    Petitioner.

1          THE COURT:   Right.

2                            (WHICH were the proceedings had

3                               at the hearing of the above

4                               entitled cause on the

5                               aforesaid date.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

j-4

1    STATE OF ILLINOIS    )
                          )    SS.
2    COUNTY OF C O O K    )

3

4              I, MARJEAN NINEMIRE, Official Court

5    Reporter of the Circuit Court of Cook County,

6    County Department-Criminal Division, do hereby

7    certify that I reported in shorthand the

8    proceedings had at the hearing of the

9    above-entitled cause, that I thereafter

10   transcribed into typewriting the foregoing Report

11   of Proceedings and that said transcript is a true

12   and accurate record of the proceedings had before

13   the Honorable JAMES R. EPSTEIN, Judge of said

14   Court, on the aforesaid date.

15

16

17

18   _____
     Official Court Reporter
19   License No. 084-000922
     Circuit Court of Cook County
20   7-7-05

21

22

23

24

                    j-5

STATE OF ILLINOIS       )
                        )   SS.
COUNTY OF C O O K        )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION
SECOND DISTRICT

THE PEOPLE OF THE       )
STATE OF ILLINOIS       )
                        )
     -VS-               )   No.  92 CR 25135
                        )
JERRI LINDSEY.          )

### ***REPORT OF PROCEEDINGS***

BE IT REMEMBERED that the above-entitled cause came on for CONTINUANCE    before the Honorable  JAMES R. EPSTEIN , Judge of said Court, on the  25th day of  June, A.D., 2004, in Skokie, Illinois, Courtroom  108.

APPEARANCES:
    HON. RICHARD DEVINE,
       State's Attorney of Cook County, by:
    MR. MARK SHLIFKA,
       Assistant State's Attorney,
          on behalf of the People;

    HON. EDWIN BURNETTE,
       Public Defender of Cook County, by
    MR. STEVEN BLACK,
       Assistant Public Defender,
          on behalf of the defendant.

MARIETTA DEL PRETO, CSR, 84-1328
Official Court Reporter
5600 Old Orchard Rd.- Rm. 204
Skokie, IL  60077

K - 1

```
1            THE CLERK:  Jerri Lindsey.

2            MR. SHLIFKA:  Good morning, Judge.  For the

3       record, Mark Shlifka, S-h-l-i-f-k-a.  I'm an

4       Assistant State's Attorney.

5            THE COURT:  Good morning.

6            MR. BLACK:  Good morning.  Steven Black,

7       Assistant Public Defender, for Jerri Lindsey.

8            THE COURT:  Where are we?

9            MR. BLACK:  Judge, I've been trying for some

10      time to get the transcripts in this case; and about

11      two weeks ago, I got the full set.  I've started to

12      review them.  If I could get a two month date, I

13      believe I will be able to file either a

14      supplemental or 615.

15           THE COURT:  Two months?

16           MR. BLACK:  Yes, Judge.

17           THE COURT:  Having had the transcript for two

18      weeks, you'll need another two months?

19           MR. BLACK:  I had a partial set, Judge,

20      before.  I didn't have the full set.

21           THE COURT:  I want your supplemental or your

22      certificate on 8/20.

23           MR. BLACK:  Judge, I'm going to be in Maywood

24      on that court date.  Is the 27th all right?
```

1           THE COURT:  All right.  8/27.  Motion

2     Petitioner, 8/27.

3                   (The above-entitled cause was

4                    continued to August 27, 2005.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS      )

 2                           )   SS.

 3    COUNTY OF C O O K      )

 4

 5                I, MARIETTA DELPRETO, CSR 84-1328,

 6    Official Court Reporter of the Circuit Court of

 7    Cook County, County Department-Criminal Division,

 8    do hereby certify that I reported the proceedings

 9    had in the above-entitled cause, that I thereafter

10    proceeded to transcribe the foregoing transcript,

11    which I hereby certify is a true and correct

12    transcript of the Report of Proceedings.

13

14

15

16

17                       _Marietta del Preto_____

18

19                       MARIETTA DELPRETO,

20                       Official Court Reporter

21

22

23    Dated this   4th  day

24    of   July,  2005.
```

K - 5

STATE OF ILLINOIS          )
                           )  SS:
COUNTY OF COOK             )

        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        MUNICIPAL DEPARTMENT - 2nd MUNICIPAL DISTRICT


PEOPLE OF THE STATE OF ILLINOIS,   )
                                   )
            Plaintiff,             )
                                   )
        vs.                        )   No. 92 CR 25135
                                   )
JERRI LINDSEY,                     )
                                   )
            Defendant.             )


            REPORT OF PROCEEDINGS had in the above-

entitled cause, before the Honorable JAMES R. EPSTEIN,

Judge of said court, on the 27th day of August, 2004.

    PRESENT:

        HON. RICHARD DEVINE, Cook County State's
        Attorney,
        BY:  MS. MARY L. NORWELL,
            on behalf of the plaintiff;

        MR. EDWIN A. BURNETTE, Cook County Public
        Defender,
        BY:  MR. STEVEN BLACK,
            on behalf of the defendant.


Janice Michael
Official Court Reporter
License No. 084-001043


L1

1        THE CLERK:  Jerri Lindsey.

2        THE COURT:  Do we have the state's attorney from the

3    PCU?

4        MS. NORWELL:  Yes, your Honor.  For the record, my

5    name is Mary Norwell -- N-o-r-w-e-l-l -- Assistant State's

6    Attorney, from Special Litigation.

7        MR. BLACK:  Steven Black, Assistant Public Defender,

8    for Miss Lindsey.

9        THE COURT:  This is motion petitioner for today?

10       MR. BLACK:  Yes, Judge.

11                On the last court date, I anticipated that

12   I would be able to file a supplemental petition today.  I

13   think that that was a rash belief on my part -- I've only

14   gotten through half of the transcript -- and I'd be asking

15   for another date to complete the review of the transcript

16   and investigation.

17       THE COURT:  Well, you may have even gotten less

18   far than you just said, because you said you're here for

19   Mr. Lindsey.

20       MR. BLACK:  Miss Lindsey.

21       THE COURT:  It is Ms. Lindsey.

22       MR. BLACK:  I did say that.

23       THE COURT:  Then have you talked to the petitioner?

24       MR. BLACK:  I have spoken with the petitioner in

1    person and, also, via letters, Judge.

2                        I would just note, too, Judge, that this is

3    a remand, and the -- I did just receive the transcript

4    prior to the last court date.

5        THE COURT:  How's 10-1?  It's a Friday.

6        MS. NORWELL:  That's fine, your Honor.

7        THE COURT:  Mr. Black?

8        MR. BLACK:  I have cases in Maywood on that date, but

9    I can come in the afternoon.

10       THE COURT:  That's all right.  Would the 8th be

11   better?

12       MR. BLACK:  Well, I have cases in every other suburban

13   county except for Skokie on every day in October except for

14   the 29th, on which date I'm going to be back here.  But I

15   can --

16       THE COURT:  Wait a minute.  It's my understanding

17   basically that most of the PC cases in Skokie are done on

18   Fridays.  Right?

19       MR. BLACK:  That's right, Judge.

20       THE COURT:  So what days are the other court

21   appearances?

22       MR. BLACK:  It's actually every suburban call for PC

23   is on Fridays.  That's how the case has been assigned, and

24   that's how they've been forwarded from day to day.

1        THE COURT:  I can change mine to Thursdays if it's

2    better for people. I just thought it was an accommodation

3    to the lawyers for each side to do them on Fridays; it's

4    not any predilection of mine.

5        MR. BLACK:  We appreciate that, Judge.

6        THE COURT:  But --

7        MR. BLACK:  When there's five different suburban court

8    houses --

9        THE COURT:  I understand.  It should probably be on

10   diferent days, right?

11       MR. BLACK:  Perhaps.

12       MS. NORWELL:  That's right.

13       THE COURT:  Maybe you folks want to start talking

14   about it, because I'm sure my colleagues and I would be

15   happy to accommodate you; it's just we felt we were

16   accommodating you beforehand.  But if you're going into all

17   five of the suburban buildings on Fridays, that doesn't

18   seem to make a whole lot of sense, but...

19               I'll give you motion petitioner, final, for

20   your filings 10-29, but I will be very reluctant to grant

21   further continuances.

22       MR. BLACK:  Thank you, Judge.

23       THE COURT:  Thank you.

24                     * * * * * * * *

STATE OF ILLINOIS )
                   )  SS:
COUNTY OF COOK     )


            I, Janice Michael, Official Court Reporter
of the Circuit Court of Cook County, do hereby certify that
I reported in shorthand the proceedings had at the hearing
in the aforementioned cause; that I thereafter caused the
foregoing to be transcribed into typewriting, which I
hereby certify to be a true and accurate transcript of the
report of proceedings had in the above cause.




                              _____
                              License No. 084-001043


Dated this 22rd day of June , 2005


L6

```
 1
       STATE OF ILLINOIS    )
 2                          ) SS
       COUNTY OF C O O K    )
 3
             IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4            COUNTY DEPARTMENT - CRIMINAL DIVISION
                          SECOND DISTRICT
 5
       THE PEOPLE OF THE    )
 6     STATE OF ILLINOIS,   )
                Plaintiff,  )
 7                          )
          vs.               )   No. 92 CR 25135
 8                          )
       JERRI LINDSEY,       )
 9          Defendant.      )

10
                  REPORT OF PROCEEDINGS had in the
11     above-entitled cause before the Honorable JAMES R.
       EPSTEIN, Judge of said Court, the 29th day of
12     October, A.D., 2004.

13
                  APPEARANCES:
14
                      HON. RICHARD DEVINE,
15                    State's Attorney of Cook County, by:
                      MR. MICHAEL McCORMICK,
16                    Assistant State's Attorney,
                      on behalf of the People:
17

18                    MS. RITA FRY,
                      Public Defender of Cook County, by;
19                    MR. STEVEN BLOCK,
                      Assistant Public Defender,
20                    on behalf of the Defendant.

21

22
       SUSAN M. DOMINIC, CSR,
23     OFFICIAL COURT REPORTER
       SKOKIE, ILLINOIS
24
```

M1

1        THE CLERK:   Jerri Linsey.

2        MR. BLACK:   Good morning, Judge.   Steven

3    Black, Assistant Public Defender for Jerri

4    Lindsey.

5        MR. McCORMICK: Michael McCormick standing in

6    for Mrs. Stevens or her ultimate replacement which

7    I don't know who that is going to be.   I don't

8    have a clue for what it's up for.   I am here on

9    another case.

10       MR. BLACK:   Yes, Judge, I have completed

11   reading the transcript, I have spoken with one

12   witness and I am in the process of preparing an

13   affidavit and I have an investigator out trying to

14   locate a second witness.

15       THE COURT:   Well, you need to set it for

16   status of your readiness, but also status of who

17   is going to be successor to Ms. Stevens on this

18   case from the State's point of view,.

19             When are you likely to have the answer

20   to that question?

21       MR. McCORMICK: Couple of weeks, Judge.   We

22   found out about Ms. Stevens status a couple of

23   weeks ago and they're in the process because she

24   did have quite a few cases --

M3

1          THE COURT: I understand.

2          MR. McCORMICK: Couple of weeks.

3          THE COURT: All right.  You will need more

4    than that to finish your discovery anyway, right?

5          MR. BLACK: Yes, Judge.

6          THE COURT:   How is 12/10?

7          MR. McCORMICK: Okay. Fine, Judge.

8          MR. BLACK: I have two filings I plan to make

9    in Skokie -- I am sorry -- in Maywood on that day,

10   but either week around that is --

11         THE COURT:  Let's do it the 3rd.

12         MR. BLACK: All right.

13         THE COURT:   By agreement then 12/3.

14         MR. McCORMICK: Thank you.

15              (Which were all the proceedings

16               had in the above-entitled cause.)

17

18

19

20

21

22

23

24

M4

1

2    STATE OF ILLINOIS    )

3                          )   SS:

4    COUNTY OF C O O K    )

5

6                    I, SUSAN M. DOMINIC, Official

7    Shorthand Reporter of the Circuit Court of Cook

8    County, do hereby certify that I reported in

9    shorthand the evidence had in the above-entitled

10   cause, and that the foregoing is a true and

11   correct transcript of all the evidence heard.

12

13

14            Official Shorthand Reporter

15            Circuit Court of Cook County

16              LICENSE #84-3102

17

18

19

20

21

22

23

24

M5

1   STATE OF ILLINOIS )
                     )  SS.
2   COUNTY OF C O O K )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - CRIMINAL DIVISION
4
    THE PEOPLE OF THE      )
5   STATE OF ILLINOIS      )
                           )
6       vs.                )   Case No. 92CR25135
                           )
7   JERRI LINDSEY          )

8
                ***REPORT OF PROCEEDINGS***
9

10          BE IT REMEMBERED that the above-entitled

11  cause came on for hearing before the Honorable JAMES

12  R. EPSTEIN, Judge of said Court, on the 3rd day of

13  December, A.D., 2004.

14
        APPEARANCES:
15          HON. RICHARD DEVINE,
              State's Attorney of Cook County, by:
16          MS. MEGAN MEENAN,
              Assistant State's Attorney,
17            on behalf of the People;

18
            MR. EDWIN A. BURNETTE,
19            Public Defender of Cook County, by:
            MS. MARGE SANDERS,
20            Assistant Public Defender,
              on behalf of the Defendant.
21

22

23  Colleen Eitermann
    Official Court Reporter  CSR No. 084-001115
24  5600 Old Orchard Road, Room 204
    Skokie, IL  60077

1          THE CLERK:   Jerry Lindsey.   Sheet 3.

2          MS. MEENAN:   Megan Meenan, M-e-e-n-a-n, Post

3     Conviction Unit.

4          MS. SANDERS:   Assistant Public Defender Marge

5     Sanders.

6                    The attorney of record on this case is

7     Mr. Steven Black.   He reports that he has an

8     investigation pending regarding two individuals.   He

9     is seeking two -- a potential affidavit from one.

10    The other one, he sent an investigator out to have

11    the affidavit signed and notarized.   He is seeking a

12    date.

13         THE COURT:   The Public Defender was appointed on

14    this case one year and eight months ago.   That is

15    simply -- I don't put the blame entirely, of course,

16    on Mr. Black.   I don't know when he came in because

17    one of the things that we deal with in both offices

18    is the constant handing off of files from one

19    attorney to another.   It is true in the Public

20    Defender's Office and it is true in the State's

21    Attorney's Office.

22                    But this case has been pending as a

23    post-conviction for one year and eight months.   And

24    we are going to have to bring it to a close.

1              I will set the case for the 28th of

2    January, and I expect everything to be ready to file

3    on that date.

4              Motion Petitioner 1/28.

5        MS. SANDERS:   Thank you, your Honor.

6                       (The proceedings in the

7                       above-entitled cause were

8                       continued to January 28, 2005.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STATE OF ILLINOIS )
                  )    SS.
COUNTY OF C O O K )


        I, COLLEEN EITERMANN, Official Court

Reporter of the Circuit Court of Cook County, County

Department-Criminal Division, do hereby certify that

I reported the proceedings had in the above-entitled

cause, that I thereafter proceeded to transcribe the

foregoing transcript, which I hereby certify is a

true and correct Report of Proceedings.




COLLEEN EITERMANN, Official
Court Reporter of the
Circuit Court of Cook
County, County Department
CSR No. 084-001115

STATE OF ILLINOIS    )
                      )  SS.
COUNTY OF C O O K    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

THE PEOPLE OF THE       )
STATE OF ILLINOIS,      )
                      )
        Plaintiff,   )
   vs.             ) Case No. 92 CR 25135
                      )
JERRI LINDSEY,         )
                      )
        Defendant.   )

REPORT OF PROCEEDINGS had before the Honorable Catherine Haberkorn, Judge of said Court, on the 28th day of January, 2005.

APPEARANCES:

        HON. RICHARD DEVINE,
          State's Attorney of Cook County, by:
        MS. MEGAN MEENAN,
          Assistant State's Attorney,
          appeared on behalf of the People;

        MR. EDWIN A. BURNETTE,
          Public Defender of Cook County, by:
        MR. STEVEN BLACK,
          Assistant Public Defender,
          appeared on behalf of the Defendant.

ROSEMARY STEPHENS, CSR, #84-2515
Official Court Reporter
5600 Old Orchard Road, Room 204
Skokie, IL  60077.

1          THE CLERK: Jerri Lindsey.

2          MR. BLACK:  Assistant Public Defender Steven

3    Black for Ms. Lindsey.  Judge, the State and I

4    have agreed to a date for filing of the

5    supplemental petition.  The date will be March

6    11.

7          THE COURT:  By agreement?

8          MS. MEENAN:  Yes.

9          THE COURT:  March 11.  Thank you

10

11              (The above-entitled cause was

12               adjourned to March 11, 2005.)

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS)

2                      )  SS:

3    COUNTY OF C O O K)

4

5        I, ROSEMARY STEPHENS, an Official Court

6    Reporter of the Circuit Court of Cook County, do

7    hereby certify that I reported in shorthand the

8    proceedings had on the hearing in the

9    aforementioned cause; that I thereafter caused

10    the foregoing to be transcribed into typewriting,

11    which I hereby certify to be a true and accurate

12    transcript of the report of Proceedings had

13    before the Honorable Catherine Haberkorn, Judge

14    of said court.

15

16

17

18    Rosemary Stephens,
      Official Court Reporter

19

20

21

22    Dated this 3rd day of August, 2005.

23

24

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

FILED

MAR 1 1 2005

DOROTHY BROWN
CLERK OF CIRCUIT COURT

JERRI LINDSEY, )
PETITIONER )
)
) NO. 92CR25135
)
) HONORABLE JAMES EPSTEIN
vs. ) Judge Presiding
)
PEOPLE OF THE STATE OF ILLINOIS, )
RESPONDENT )

## SUPPLEMENTAL PETITION FOR POST-CONVICTION RELIEF

NOW COMES the petitioner, Jerri Lindsey, by her counsel, EDWIN A. BURNETTE, the
Public Defender of Cook County, through STEPHEN BLACK, Assistant Public Defender,
pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq., and presents this
Supplemental Post-Conviction Petition. Petitioner incorporates by reference the previously filed
pro se post-conviction petition.

## FACTUAL AND PROCEDURAL BACKGROUND

After a bench trial before the Honorable Shelvin Singer, petitioner Jerri Lindsey was
found guilty of one count of first degree murder and one count of armed robbery of a cab driver
whose body was discovered on October 12, 1992 at the O'Hare Airport Parking Garage. On
March 27, 1995, Petitioner was sentenced to two terms of 45 years in the Illinois Department of
Corrections, to run concurrently. Petitioner's conviction was affirmed on direct appeal (appeal #

1-95-1353, judgement issued July 25, 1997).

On March 27, 1998, petitioner filed a *pro se* petition for post conviction relief, and counsel was appointed to represent petitioner on the post-conviction petition in April 1998. On September 29, 2000, appointed counsel filed a Rule 651 (c) certificate; no amendments or affidavits were added to the *pro se* petition, and the court granted the State's motion to dismiss the *pro se* petition without an evidentiary hearing.

On appeal from the dismissal of her post-conviction petition, petitioner argued that her post-conviction counsel had not provided her with a reasonable level of assistance because counsel had failed to make amendments necessary for an adequate presentation of her claims. On February 6, 2003, in appeal No. 1-00-3480, the appellate court remanded the case to the trial court for post-conviction counsel to fully comply with Supreme Court Rule 651 (c). The public defender's office was appointed on April 18, 2003, and the matter was assigned to present counsel in October, 2003.

## GROUNDS FOR RELIEF

The grounds on which Petitioner contends her conviction resulted from a substantial denial of her rights under the Constitution of the United States or of the State of Illinois are as follows:

I.    Petitioner was denied her Sixth and Fourteenth Amendment right to effective assistance of counsel at trial under the U.S. Constitution, and her right to effective assistance of counsel at trial under Article I, Section 8 of the Constitution of the State of Illinois.

*C-39*

The factual and legal claims and legal arguments that support these claims are set forth in the following section:

## MEMORANDUM IN SUPPORT OF PETITION FOR POST-CONVICTION RELIEF

I.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO SUBPOENA OR TO CALL TO TESTIFY ALIBI WITNESS JERRY ST. CLAIR

Petitioner's right to the effective assistance of counsel, and to due process of law, under the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 8 of the Illinois Constitution were violated when trial counsel failed to subpoena or to call to testify alibi witness Jerry St. Clair.

In Strickland v. Washington the U.S. Supreme Court adopted a two-part test for determining effective assistance of trial counsel. First, the defendant must show that counsel's performance was deficient, and second, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 674 (1984); People v. Albanese , 104 Ill.2d 504, 473 N.E.2d 1246 (1984).

In the instant case, trial counsel relied on a series of witnesses to show that petitioner was with friends during the time the murder was supposed to have taken place, but he failed to subpoena or to call to testify Jerry St. Clair as an alibi witness (see Exhibit A, affidavit of Jerry St. Clair). Mr. St. Clair would have testified that he was with petitioner in the late evening hours of Friday, October 9, 1992, or the early morning hours of Saturday, October 10, 1992, through Saturday afternoon of October 10.



C-40

Mr. Jack St. Clair (Jerry St. Clair's brother) testified during the trial that he was with the petitioner beginning at about 1:15 or 1:30 am on the morning of Saturday, October 10, 1992 (Record, T 8). He testified that petitioner left his residence at about 3:00 or 3:30 am that same morning to go to his brother, Jerry St. Clair's apartment. Jerry St. Clair's apartment was located in the basement of the same residence (Record, T 14).

Presentation of Jerry St. Clair's testimony in conjunction with Jack St. Clair's testimony would have provided petitioner with an alibi from 1:30 on Saturday morning until Saturday afternoon, and trial counsel himself even refers to the possibility of calling Jerry St. Clair as a witness, but never does so (Record V 156). Furthermore, the State in their closing argument specifically refers to the failure of trial counsel to call Jerry St. Clair as an alibi witness (Record Z 50).

The fact that petitioner's trial attorney believed calling Jerry St. Clair was important enough to call to the Court's attention, and to put the Court on notice that he might in fact be called, suggests a significant omission by the trial attorney.

The omission is magnified by the fact that the time of death of the victim was never definitively established through the course of the trial. It is not disputed that the victim's cab entered the O'Hare Airport parking garage at 4:59 pm on October 9 (Record S 60), and that the body was discovered on October 12, 1992 (Record S 47-49), but this leaves a window of approximately three days where, based on the evidence presented at trial, it is not possible to know exactly what happened. It is possible that the victim was killed not on Friday evening, but later Friday night, Saturday, Sunday, or even Monday.

Given this possibility, it was a mistake for trial counsel to fail to call Jerry St. Clair as an alibi witness. Jerry St. Clair would have established that he was with petitioner until Saturday

afternoon, and given the State's failure to establish a time of death, this alibi information could have altered the fact-finders final determination of guilt, and suggested reasonable doubt that petitioner was involved in the murder of the victim. Petitioner was thus prejudiced by her trial attorney's failure to call to testify or subpoena Jerry St. Clair. Failure to present available witnesses to corroborate a defense has been found to be ineffective assistance. People v. Solomon 158 Ill. App. 3d 432, 110 Ill. Dec. 698, 511 NE2d 875 (1997).

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this court grant the following relief:

Find that the petitions and attachments provide substantial evidence that petitioner's constitutional rights, as described above, have been denied; and either (1) vacate the convictions against petitioner and dismiss the charges in this case, (2) vacate the convictions and set the mater for a new trial, (3) set the matter for an evidentiary hearing on petitioner's affidavit.

Respectfully Submitted,

Edwin A. Burnette
Public Defender of Cook County
For JERRY LINDSEY

BY: Stephen Black
Assistant Public Defender

Attorney No. 30295
Edwin A. Burnette, Cook County Public Defender
Stephen Black, Assistant Public Defender
69 West Washington, 15th floor
Chicago, Illinois 60602
(312)-603-0600

C-42

STATE OF ILLINOIS   )
                     ) ss
COUNTY OF COOK   )



## AFFIDAVIT OF JERRY ST. CLAIR

Jerry St. Clair states on oath that he has knowledge of the following facts, which are true and correct.

1. I was friends with Jerri Lindsey in October of 1992.

2. In October of 1992 I was living in the basement at 8801 South Bishop in Chicago.

3. From late in the evening of Friday, October 9, 1992 or early Saturday morning, October 10, 1992 until sometime in the afternoon of Saturday, October 10, 1992, I was with Jerri Lindsey in the basement at 8801 South Bishop.

4. I was ready, willing and available to testify as a witness for Jerri Lindsey at her trial in 1994-1995.

5. I would have testified at Jerri Lindsey's trial had I been served with a subpoena to testify.

6. I was never served with a subpoena to testify at Jerri Lindsey's trial.

7. Had I testified, I would have testified to the facts in this affidavit.

8. I am signing this affidavit of my own free will.

9. No threats or promises have been made to me to persuade me to sign this affidavit.

JERRY ST. CLAIR

SUBSCRIBED AND SWORN TO
BEFORE ME THIS _30th_ DAY
OF _March_ , 2004

NOTARY PUBLIC

"OFFICIAL SEAL"
Kim L. Sorrells
Notary Public, State of Illinois
My Commission Exp. 04/04/2005

C-43

1    STATE OF ILLINOIS  )
                        )  SS.
2    COUNTY OF C O O K  )

3

     IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
4    COUNTY DEPARTMENT - SECOND MUNICIPAL DISTRICT

5

     THE PEOPLE OF THE            )
6    STATE OF ILLINOIS,           )
                                  )
7              Plaintiff,         )
                                  )
8         vs.                     )  No. 92 CR 25135
                                  )
9    JERRI LINDSEY,               )
                                  )
10             Defendant.         )

11

12          REPORT OF PROCEEDINGS on the hearing
     had before the HONORABLE JAMES R. EPSTEIN on
13   the 15th day of April, 2005, in Skokie,
     Illinois.

14

15   APPEARANCES:

16        HON. RICHARD A. DEVINE,
               State's Attorney of Cook County, by
17        MS. MEGAN MEENAN,
               Assistant State's Attorney,
18             appeared for the People;

19        HON. EDWIN A. BURNETTE,
               Public Defender of Cook County, by
20        MR. STEVE BLOCK,
               Assistant Public Defender,
21             appeared for the Defendant.

22   Krista Flynn Burgeson, CSR
     Official Court Reporter
23   5600 Old Orchard Road, #204
     Skokie, Illinois  60077
24   License No. 084-003162

EXHIBIT S

1        THE CLERK:  Jerri Lindsey.

2        THE COURT:  We have Ms. Meenan and Mr.

3    Black here.

4        MS. MEENAN:  Yes, Judge.

5        MR. BLACK:  Good morning.

6        THE COURT:  What would you like to say?

7        MS. MEENAN:  We submitted a motion to

8    dismiss.

9                Basically on this case after

10   the defendant was found guilty after a bench

11   trial it was appealed on her appeal and one

12   of her issues was that she had ineffective

13   assistance of counsel for various reasons.

14                That conviction was confirmed,

15   and the Appellate Court at that time

16   specifically stated and found, in reviewing

17   the record in its entirety, that the trial

18   counsel was effective.

19                However, then the defendant filed

20   the first PC, did it pro se, alleging again

21   ineffective assistance of counsel for failing

22   to call certain witnesses.  That was dismissed,

23   sent back for counsel to be appointed, and to

24   supply any affidavits of these witnesses that

R-3

1    petitioner claims should have been called.

2                    In front of you now is an

3    affidavit from Jerry St. Clair which basically

4    says in the affidavit that he was ready, able,

5    and willing to testify, and that he never

6    received a subpoena.

7                    If he came to court he said he

8    would have provided an alibi for the Friday

9    night, late Friday night of October 9th, into

10   the early morning hours of October 10th, or the

11   afternoon of October 10th on that Saturday.

12                   In our motion to dismiss, even

13   assuming all of this were true in his

14   affidavit, petitioner still does not show

15   substantial showing of a violation of

16   constitutional rights in that the trial counsel

17   was ineffective in this case.

18                   Specifically this witness would

19   not have provided an alibi for a crime that was

20   committed on that Friday afternoon at

21   approximately 5:00 o'clock p.m.

22                   In his affidavit he testifies he

23   was with the petitioner that Friday evening or

24   early Saturday morning up until Saturday

R-4

1    afternoon, October 10th.

2              The petitioner did claim that

3    the State failed to prove the time of the

4    offense of this murder.  However, a review of

5    the records establishes the time of this murder

6    as October 9th, a Friday, to be at 5:00 o'clock

7    p.m., the early evening hours.

8              Now, this was established by the

9    witnesses that testified, putting the victim

10   and the defendant inside the cab between the

11   hours of 3:00 and 4:30, the defendant at that

12   time making a statement that she needed to be

13   at O'Hare by 5:00 o'clock.

14             There is a ticket stub from that

15   parking garage, in fact, found inside that cab

16   stating that the cab driver, who was the victim

17   in this case, entered that parking garage at

18   approximately 4:59 p.m. on Friday, October the

19   9th.

20             The victim was found murdered

21   inside his cab inside that parking garage at

22   O'Hare.  There is no evidence that the victim

23   was moved at any time and went back inside the

24   cab.

R-5

1           In fact, in the defendant's own
2  handwritten statement she admits to killing the
3  victim on that Friday afternoon or early Friday
4  evening at approximately 5:00 o'clock p.m.
5           The defense attorney called five
6  of his six witnesses who attempted to establish
7  an alibi for their witness on this crucial time
8  of Friday afternoon.  He called five witnesses
9  to say they were shopping with her and then
10  provided receipts for this alibi.
11           In addition though he did call
12  Jerry St. Claire's brother, Jack, and Jack St.
13  Clair testified that, in fact, he was with the
14  defendant alone from 1:30 a.m. on that Saturday
15  to 3:30 a.m., and then the defendant left with
16  his brother, Jerry, the proposed witness here,
17  at about 3:30 a.m. on Saturday, to go
18  downstairs and smoke cocaine with him.
19           So, the Court did hear this
20  evidence by way of his brother and, in fact,
21  the Court addresses that specifically in the
22  evidence saying that, We also have some
23  witnesses who are really not alibi, two
24  gentlemen St. Claire on the events that

1      occurred after the killing.

2                  So, therefore, trial counsel

3      could not be deemed deficient for failing to

4      call a person that was with the petitioner the

5      day after the crime.

6                  Furthermore, there has been no

7      evidence to show that if they did call this

8      person that they would say that he was using

9      crack cocaine with the defendant the day after

10     the murder and that this would have somehow

11     effected the outcome of the trial.

12         THE COURT:  Before I get your response to

13     her argument, Mr. Black, are you abandoning the

14     claim on witness Quyroz, Q-u-y-r-o-z?

15         MR. BLACK:  I will address that.

16         THE COURT:  Okay.

17                  Because I note there were two

18     witnesses and you only supplied an affidavit as

19     to one, and your 651-C says that you have done

20     everything you need to do.

21                  Please, go ahead.

22         MR. BLACK:  Sure, Judge.

23                  The appellate remand addresses and

24     Ms. Lindsey's initial post-conviction hearing

1    addresses two individuals, one is Jerry St.

2    Clair whose affidavit is provided, --

3        THE COURT:   If you could speak up the court

4    reporter would have an easier time.

5        MR. BLACK:   ( Continuing ) -- and then

6    there is Paul Quyroz, who my office, myself,

7    and our investigators made several attempts to

8    contact.

9                We had an address and telephone

10   number for him.  I left several messages.  Our

11   investigators left several messages and also

12   made both announced and unannounced visits to

13   his abode, but for whatever reason he did not

14   respond.  He didn't want to meet with the

15   investigator.  He didn't respond to the

16   telephone calls for him to call us back so

17   that he could give us information relative to

18   this.

19                So, we did make several attempts

20   to contact him in order to get an affidavit.

21   Mr. Quyroz was simply not responsive.

22       THE COURT:   And are you still claiming that

23   somehow the trial counsel was ineffective for

24   failing to do what you failed to do?

R-8

1        MR. BLACK:  Well, Judge, just in the

2    broader sense I am claiming that he was

3    ineffective for failing to contact Mr. St.

4    Clair.

5        THE COURT:  My question is the part of your

6    claim for Mr. Quyroz, even though you have had

7    an extensive period of time and have been

8    unable to secure his affidavit, a meeting with

9    him, service on him, or unable to establish

10   what Mr. Quyroz would say, even if he were

11   found cooperative, served and called?

12       MR. BLACK:  These are not my claims.

13   These are Ms. Lindsey's claims.  And she said

14   she did not want to abandon any of these

15   claims.  She is not abandoning them.

16            So, as her agent here I can't

17   therefore abandon then.

18       THE COURT:  Okay.

19       MR. BLACK:  And, of course, it is also a

20   1992 case.  Perhaps Mr. Quyroz would have had a

21   different opinion back then.  I'm not sure,

22   Judge.

23       THE COURT:  The main difference between

24   the '92 case and the '05 case is in finding a

R-9

1    witness.  But go ahead.  You found the witness,

2    he just hasn't cooperated.

3        MR. BLACK:  That is right.

4            And in the remand I think -- and

5    they cite the post-conviction statute, the

6    affidavit, or why an affidavit is not

7    available, that is the reason it is not

8    available.

9        THE COURT:  Yet we don't have any concept

10   of what Mr. Quyroz would say.

11       MR. BLACK:  Correct.

12       THE COURT:  Please, proceed.

13       MR. BLACK:  Thank you, Judge.

14            Judge, this all I believe has to

15   be seen in the context of the 6th Amendment

16   denial of Ms. Lindsey's right to the effective

17   assistance of her trial counsel.

18            There was one clear omission at

19   the trial, I think, that Ms. Lindsey's counsel

20   didn't address, and that was that the victim's

21   body in this case would have had to -- if the

22   murder did occur Friday afternoon, the victim's

23   body in this case would have had to sit in the

24   Oak Park parking garage lot for approximately

R-10

1    three days.

2         THE COURT:  O'Hare?

3         MR. BLACK:  Yes.

4         THE COURT:  You said Oak Park.

5         MR. BLACK:  The O'Hare Airport parking

6    garage, sorry, for approximately three days.

7         THE COURT:  Okay.

8         MR. BLACK:  Trial counsel's defense,

9    complete defense, was an alibi defense, and it

10   is Ms. Lindsey's position that to complete that

11   alibi defense he would have had to provide

12   alibi witnesses for the whole period of time

13   where it was conceivably possible that the

14   murder could have occurred, and that would be

15   from Friday afternoon until Monday.

16              He did provide as the State

17   pointed out a number of witnesses, alibi

18   witnesses, that provided places and times that

19   Ms. Lindsey was throughout Friday afternoon,

20   and he provided a witness that provided a place

21   and time that Ms. Lindsey was late Friday night

22   and into Saturday morning.

23              Her contention here is that this

24   should have been continued through Saturday

R-11

1  afternoon, which is when Mr. Jerry St. Clair

2  states that he was with her, with her late

3  Friday or early Saturday morning, however you

4  want to look at it, all day Saturday into

5  Saturday afternoon, and that provides at least

6  another conceivable day that the murder could

7  have occurred that Ms. Lindsey had an alibi

8  witness to testify for.

9          He never subpoenaed Mr. St. Clair

10  although he does mention in the record that Mr.

11  St. Clair is a potential witness.

12          Even the State in their closing

13  argument mentions that trial counsel never

14  called, although he did mention that he might

15  call Mr. Jerry St. Clair.

16          And so, Judge, for that specific

17  reason, this murder -- everybody seemed to

18  think it occurred Friday afternoon, but there

19  was never any evidence to show that it did,

20  apart from circumstantial, but never any direct

21  evidence that that was the exact time of death,

22  and the victim's body was not found until

23  Monday.

24          That presents, I think, a fair

R-12

1    case that trial counsel should have presented

2    witnesses to follow up with other days that

3    this murder could have conceivably occurred

4    on.

5              I believe in the State's closing

6    argument they mention the fact that Ms. Lindsey

7    had transportation options to and from O'Hare

8    Airport via public transportation, and I would

9    suggest that is a possibility with the cab

10   driver here as well.  He may have parked his

11   car there and left via the Metra, which is

12   what the State's Attorney in the trial

13   mentioned Ms. Lindsey might have done to get

14   home.

15             And so to conclude, Judge, this

16   case was not as opened and closed as it may

17   appear, and trial counsel could have provided

18   an option to the Judge which would have -- that

19   option being a full alibi as opposed to a

20   single date alibi.

21             Judge, we would be asking for

22   another evidentiary hearing on this matter, or

23   in the alternative, a new trial for Ms. Lindsey

24   to fully present her alibi defense.

1        THE COURT:  Any final words?

2        MS. MEENAN:  No, Judge.

3              Thank you.

4        THE COURT:  Well, first of all, as to

5   witness Quyroz, there is no basis for

6   determining what that witness would have said,

7   and despite having a great deal of time to

8   investigate, supply the affidavit, and trying

9   in a Herculean way to try to accomplish that,

10  Mr. Black, current defense counsel, has been

11  unable to say that.

12              As to Mr. St. Clair, the one who

13  was sought in this case, Jerry St. Clair, we

14  have his affidavit.  The affidavit establishes

15  that at best during some period of time between

16  the confrontation between Ms. Lindsey and the

17  discovery of the body that somebody knew where

18  Ms. Lindsey was.  At best, this is not an

19  alibi.

20              The testimony of the couple that

21  shared the cab with Ms. Lindsey and the cab

22  driver was that they were together in the mid

23  afternoon on Friday the 9th.

24              The parking receipt found in the

1    cab established that at 4:59 p.m. on Friday
2    afternoon the cab entered the parking garage
3    at O'Hare Airport.
4                    The handwritten confession by Ms.
5    Lindsey established that she killed him on
6    Friday afternoon.
7                    The fact that the body wasn't
8    found until three days later really doesn't
9    create an issue of when the killing actually
10   occurred.
11                   The suggestion that somehow this
12   man left his cab at O'Hare Airport in a parking
13   garage, left and came back at some later time
14   and was killed at that some later time in the
15   face of all the evidence that I have just
16   summarized, is fanciful at best.
17                   There is overwhelming evidence of
18   guilty in this case.
19                   In addition, there is the false
20   claim of rape that Ms. Lindsey gave to a
21   hospital in the time after the murder to be --
22   what would purportedly be a defense for the
23   killing.
24                   There was no evidence of any type

R-15

1   of trauma upon examination at the hospital.

2                  So, that is further indication of

3   consciousness of guilty, and further

4   corroboration of her confession and the other

5   circumstantial evidence in the case.

6                  The fact that there is one

7   possible witness to an alibi, which by all

8   accounts would have been an alibi during the

9   beginning hours after the murder, really fails

10  to establish any kind of a meaningful alibi,

11  and considering that there were other alibi

12  witnesses who testified, it would be at best

13  cumulative.

14                 The standard under Strickland is

15  was the trial lawyer deficient in failing to

16  call this alibi witness.  I think clearly not.

17  The witness was the next thing to meaningless.

18                 If we even were to get to the

19  second prong of Strickland in no way would the

20  failure to call this witness undercut the

21  reliability of the decision in this case

22  because the witness did not supply anything

23  approaching a meaningful alibi because of the

24  overwhelming evidence of guilty.  It just in

1    no way would even create any doubt as to the

2    guilt of Ms. Lindsey in this case.

3              The motion seeks dismissal of the

4    second stage of the proceeding, and I find that

5    the petition does not raise a substantial

6    question, and an evidentiary hearing on this

7    matter would be completely unnecessary.

8              I have read the transcript.  I

9    have read the submissions by both parties.

10   There is no colorable claim here.

11             Motion to dismiss is granted.

12       MR. BLACK:  Thank you, Judge.

13       MS. MEENAN:  Thank you.

14       MR. BLACK:  And Ms. Lindsey said she would

15   like to appeal in the event that this was

16   dismissed.

17       THE COURT:  I am not surprised.

18             I would be happy to receive the

19   petition for appeal.

20       MR. BLACK:  Thank you.

21       THE COURT:  And then I believe that it was

22   you, Mr. Black, who provided the transcript to

23   us.

24       MR. BLACK:  Yes.

```
1          THE COURT:  Okay.

2          MR. BLACK:  Thank you.

3                     ( Which were the proceedings

4                       had in the above-entitled

5                       cause. )

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1    STATE OF ILLINOIS  )
                        )   SS.
2    COUNTY OF C O O K  )

3

4    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
     COUNTY DEPARTMENT - SECOND MUNICIPAL DISTRICT
5

6                    I, KRISTA FLYNN BURGESON,

7    Official Court Reporter of the Circuit Court

8    of Cook County, County Department - Second

9    Municipal District, do hereby certify that I

10   reported in shorthand the proceedings had of

11   the hearing in the aforementioned cause; that

12   I thereafter caused the foregoing to be

13   transcribed into typewriting, which I hereby

14   certify to be a true and accurate transcript

15   of the Report of Proceedings had before the

16   HONORABLE JAMES R. EPSTEIN, Judge of said

17   Court.

18

19                  _____
                    Krista Flynn Burgeson, CSR
20                  Official Court Reporter
                    5600 Old Orchard Road, #204
21                  Skokie, Illinois  60077
                    License No. 084-003162
22

23

24   Dated this 27th day of July, 2005.
```

R-19

FILED

STATE OF ILLINOIS            )
                             )SS.
COUNTY OF COOK               )

APR 01 2005

DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT        -       CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,    )
                 Plaintiff-Respondent,   )
                                         )
                                         )    CASE NO. 92CR-25135
         vs.                             )    THE HONORABLE EPSTEIN
                                         )    Judge Presiding
JERRI LINDSEY,                           )
                                         )
                 Defendant-Petitioner.   )

## RESPONDENT'S MOTION TO DISMISS
## PETITION FOR POST-CONVICTION RELIEF

Now come the People of the State of Illinois ("Respondent") by their attorney,
Richard A. Devine, State's Attorney of Cook County, through his assistant, Megan
Meenan, and respectfully, move this Honorable Court for an Order dismissing the
Petition for Post-Conviction Relief ("Petition") of Jerri Lindsey ("Petitioner").

### Statement of Facts

On October 9, 1992, at about 2:30 p.m., June Hess and John Eiselt called Circle Cab
Company to request a pick-up from the Empress Casino in Joliet, Illinois. People v.
Lindsey, 95-1535, Slip op. July 25, 1997  (Exhibit A) While they were waiting, they saw
their cab stop and pick up petitioner near the road and then proceed to pick them up. Id.
Hess and Eiselt were taken to a nearby hotel at about 3:15 p.m., while petitioner sat in the
front seat. Id.  Petitioner had told them that she had to get to O'Hare Airport by 4:30 p.m. Id.
According to an airport parking garage ticket stub, the cab driver entered the garage at 5:00
p.m. on October 9, 1992. Id.

On October 11, 1992, petitioner reported to the police that she had been sexually assaulted by a cab driver who had taken her to a wooded area. Id. She claimed the driver pulled out a gun and forced her to have intercourse with him. Id. at 9. She stated that she escaped by stabbing him in the chest. Id. The reports from the hospital where petitioner was treated indicated that she had not suffered any vaginal trauma. Id. at 4.

On October 12, 1992, the taxi driver, Rudolph Bennett, was found shot to death in a cab located in a parking lot at O'Hare Airport. Id. at 1. On October 13, 1992, a detective and other officers went to petitioner's home and asked her to come to the police station to discuss the sexual assault and a homicide. Id. at 4. She agreed and further allowed the officers to fingerprint and photograph her. Id. While petitioner was seated in an interview room, the police showed petitioner's photograph to Eiselt and Hess, both of whom identified petitioner as the woman who was riding in the victim's cab they took on October 9, 1992. Id. After police informed petitioner that she had been identified as the last person seen with the victim, petitioner then confessed to police that her sexual assault report was fabricated, but she claimed she was not involved in the murder. Id. at 6. Petitioner agreed to take a polygraph examination in which she stated that she was present for the murder, but did not participate. Id.

On October 16, 1992, the assistant state's attorney advised petitioner of her Miranda rights and then interviewed her. Id. at 6. In her written statement, petitioner recounted stopping the cab and picking up an older couple. (C.L.69) After stopping to buy some liquor and dropping off the older couple, the cab driver took petitioner to O'Hare and went into the parking garage. (C.L.69) Petitioner decided that she was not going to pay the driver and as she attempted to exit the cab, he grabbed her arm. (C.L.69) The cab driver let



2

go of her arm and put his hand on her throat. (C.L.69) Petitioner noticed a gun in between the seats, grabbed it and it "went off more than once." (C.L.69) After she fired the gun, petitioner took the driver's wallet and the gun and ran from the cab. (C.L.69) A lady stopped to pick her up and gave her a ride to an elevated train stop. (C.L.69) She stopped to eat and get some liquor and then began "to worry about what she had done." (C.L.69 ) She went to South Chicago Hospital and reported a rape to avoid trouble for shooting the cab driver. (C.L.69) She admitted that the cab driver never used a weapon to threaten her and no sexual acts occurred. (C.L.69)

At trial, petitioner testified, stating that she did not rob or shoot the victim. Exhibit A at 10. Petitioner admitted that she told varying accounts of her alleged rape and her involvement with the victim's murder. Id.

## Procedural Posture

At the close of evidence, the trial court heard arguments and found petitioner guilty of first degree murder and robbery. Defendant was sentenced to 45 years in prison.

Petitioner appealed her conviction alleging that the trial court erred in denying her motion to suppress involuntary statements; the trial court erred when it failed to suppress statements and evidence which resulted from her arrest without probable cause; she was denied a fair trial when the prosecutor misstated the facts in closing argument; trial counsel provided ineffective assistance; and she was denied her constitutional right to choose trial counsel. Petitioner's conviction and sentence were affirmed. (Exhibit A)

On March 27, 1998, petitioner filed a *pro se* petition for post-conviction relief .

C -46

3

In that petition, petitioner argues several claims including that her trial counsel was ineffective for failing to investigate her alibi defense. The trial court granted the State's motion to dismiss petitioner's post-conviction petition on September 29, 2000. Petitioner appealed this judgment and the appellate court remanded the case so that post-conviction counsel may sufficiently comply with 651 (c ). People v. Lindsey, 00-3480, Slip op. February 6, 2003 (Exhibit B). Specifically, the Appellate Court ordered that post-conviction counsel be given the opportunity to amend petitioner's pro se petition to include the affidavits of Jerry St. Clair and Paul Quiroz, two witnesses that petitioner claim are crucial alibi witnesses, or to explain why such affidavits are unavailable. The Appellate Court further instructs the State to then either answer the amended petition or file a motion to dismiss. (Exhibit B)

Petitioner's post-conviction counsel has filed an Amended Petition with the affidavit of Jerry St. Clair. According to his affidavit, Jerry St. Clair was friends with petitioner in October of 1992, when this murder occurred. At the time, he was living in the basement of 8801 South Bishop in Chicago. Jerry St. Clair states in his affidavit that he would have testified at petitioner's trial had he been served with a subpoena, but was never served with one. If called to testify, according to his affidavit, Jerry St. Clair would have testified that "[f]rom late in the evening of Friday, October 9, 1992 or early Saturday morning, October 10, 1992 until sometime in the afternoon of Saturday, October 10, 1992, he was with Jerry Lindsey in the basement at 8801 South Bishop." Petitioner claims that Jerry St. Clair was a crucial alibi witness and that her trial counsel's failure to call Jerry St. Clair as a witness at trial was ineffective assistance of counsel.

C-41

4

## **Argument**

It is well-established that a post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. Indeed, our Supreme Court has constantly reaffirmed the long-standing rule that such a hearing should be held "only if [the petitioner] has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated." People v. Pecoraro, 175 Ill.2d 294, 677 N.E.2d 875, 881 (1997), accord, People v. Johnson, 151 Ill.2d 227, 609 N.E.2d 304, 310 (1993).

Also, although a Motion to Dismiss assumes all well-pled facts as true, a post-conviction petition can be dismissed where the record from the original trial proceedings contradicts the petitioner's allegations. See People v. Rogers, 197 Ill.2d 216, 756 N.E.2d 831(2001); and People v. Ramirez, 162 Ill.2d 235, 642 N.E.2d 1224 (1994).

When assessing an ineffective assistance of counsel claim, the court utilizes the two prong test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 1952 (1984). To prevail on an ineffective claim, a petitioner must show that (1)counsel's representation fell below an objective standard of reasonableness and (2)that the substandard representation prejudiced the defendant. People v. Albanese, 104 Ill.2d. 504, 525-26, 473 N.E.2d 1246 (1984). Prejudice is defined as a reasonable probability that, absent the errors, the outcome would have been different. People v. Bien, 277 Ill.App.3d 744, 750, 661 N.E.2d 511 (4th Dist. 1996). The Strickland test requires "a reasonable probability of a different result, not merely a possibility" of a different result. People v. Franklin, 167 Ill.2d 1, 20, 656 N.E.2d 750 (1995).

C-48

5

If the ineffectiveness claim can be disposed of on the basis that the defendant did not suffer sufficient prejudice, a court need not consider whether counsel's performance was deficient. A defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. People v. Palmer, 162 Ill.2d 465, 475-76, 643 N.E.2d 797 (1994).

Petitioner argues that her trial counsel's failure to call Jerry St. Clair as an alibi witness was a significant omission that resulted in prejudice. The record positively refutes the conclusion that trial counsel's failure to call Jerry St. Clair as a witness reaches the level of deficient performance. The record also refutes the claim that if the trial court had heard the proposed testimony of Jerry St. Clair, the outcome of the trial would have been different

Petitioner's trial attorney competently defended petitioner against her charges. Throughout the trial, he thoroughly cross-examined the State's witnesses and argued reasonable doubt. Petitioner's trial counsel also presented an alibi defense, calling six alibi witnesses in addition to petitioner's testimony. Irene Quiroz, petitioner's roommate and girlfriend, along with four members of Irene Quiroz's family, testified that petitioner was with them throughout the day and evening hours of Friday, October 9, 1992. To corroborate this alibi testimony, defense counsel presented sales receipts from stores that the witnesses testified they were shopping at with petitioner on October 9, 1992.

According to his affidavit, if called to testify, Jerry St. Clair would have testified that he was with petitioner beginning the late evening hours of Friday, October 9, 1992 or early morning hours of October 10, 1992 through the Saturday afternoon. Regardless of whether Jerry St. Clair testified that he was with petitioner beginning that late Friday

C-49

night or Saturday morning, his testimony would not have provided petitioner an alibi for a crime committed in the early evening hours of Friday October 9, 1992.

Petitioner claims that the State failed to establish a time of death in this case and, thus, petitioner's alibi information as to Saturday, October 10, 1992 was extremely relevant and could have altered the fact-finder's final determination of guilt. The record clearly refutes this claim. June Hess and John Eislet testified that they were in victim's cab with the victim and petitioner between 2:30 and 3:15 pm on Friday October 9, 1992. During that time, Hess and Eislet heard the petitioner state she had to get to O'Hare Airport by 4:30 p.m. that day. Although the victim was not found until October 12, 1992, he was found shot to death in his cab inside the O'Hare Parking garage. An airport parking garage entrance ticket stub was found inside the cab indicating the cab entered the garage at 5:00 p.m. on October 9, 1992. In petitioner's handwritten statement, which was entered as an exhibit into evidence and testified to by Assistant State's Attorney Julie Nelson, petitioner admitted to shooting the victim on October 9, 1992 after the cab pulled into the 4th Floor Main Parking Garage at O'Hare.

Five of the six alibi witnesses that were called by petitioner's defense counsel testified regarding this relevant date and time of occurrence, the afternoon and early evening hours of Friday October 9th. However, petitioner's trial counsel also presented the testimony of Jack St. Clair, Jerry St. Clair's brother. Jack St. Clair testified that he was with the petitioner beginning at about 1:15 or 1:30 am on the morning of Saturday, October 10, 1992. (T8) Jack St. Clair testified that petitioner left his residence at about 3:00 or 3:30 am on Saturday, October 10, 1992 with his brother Jerry St. Clair to go downstairs to Jerry's apartment to use cocaine. (T13, T17-T22)

7

C-50

As with the proposed testimony of Jerry St. Clair, Jack St. Clair did not provide an alibi for petitioner. The trial court specifically remarked that Jack St. Clair did not present an alibi stating, "On the other hand from the defense we have what constitutes an alibi, a number of alibi witnesses and we also have some witnesses who are really not alibi and that is the 2 gentlemen, St. Clair, on the events that occurred after the killing." (Z59-60) A review of the record indicates that the trial court even considered Jerry St. Clair's proposed testimony, since the crux of his alibi was testified to by his brother Jack St. Clair. Clearly, presentation of Jerry St. Clair's live testimony would not have been relevant or beneficial to the petitioner in any way.

Finally, to claim that the outcome of the trial probably would have been different if Jerry St. Clair would have testified is incredible in light of the overwhelming evidence presented at trial of petitioner's guilt. In addition to petitioner's handwritten statement in which she admitted to shooting the victim, the State's case included two impartial citizens describing and identifying petitioner as having been in the decedent's cab with them. Commenting on the strength of the State's case, the trial court noted in his ruling that "the identification by Hess and Eiselt of the defendant as the person who came in to the cab on that mid-afternoon of the killing is as good an identification as I think we are ever going to get." (Z60) The trial court further found that even without defendant's statement, "you would have evidence which there would be sufficient, in my opinion, to conclude beyond a reasonable doubt that the defendant did the killing and the robbery." (RZ62)

In this case, the evidence was not closely balanced as the proof of petitioner's guilt was overwhelming. The omission of testimony from a witness, who would

8

C-51

presumably state that the petitioner was with him on the day after the crime, did not prejudice the petitioner in any way. According to petitioner's own testimony and Jack St. Clair's testimony, the morning after this armed robbery and murder, petitioner was smoking more than nine rocks of cocaine with Jerry St. Clair. (147) Trial counsel's failure to call yet another witness to testify to this act does not constitute deficient performance and, instead, represents a sound trial strategy.

Trial counsel's performance did not rise to the level of ineffective assistance. Furthermore, the petitioner cannot demonstrate any prejudice resulting from the failure to call Jerry St. Clair. There is no reasonable probability that had Jerry St. Clair testified, the outcome would have been different. The record clearly contradicts petitioner's allegations and, therefore, an evidentiary hearing is not warranted in this case.

WHEREFORE, the People respectfully request that this Honorable Court dismiss the instant petition and remove the case from its call.

Respectfully submitted

RICHARD A. DEVINE

States Attorney of
Cook County, Illinois

By:   *Megan Meenan*

Megan Meenan
Assistant States Attorney

9

*C-52*