File Date: _Feb 29, 2008_

Case No: _07cv6658_

ATTACHMENT # _4_

EXHIBIT _U to Z_

TAB (DESCRIPTION) _____



No. 1-05-1458

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

FILED APPELLATE COURT
1ST DIST.

2006 FEB -1  PM 1: 17

STEVEN M. RAVID
CLERK OF COURT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 92 CR 25135. |
| | ) | |
| **JERRI LINDSEY,** | ) | Honorable |
| | ) | James R. Epstein, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION TO WITHDRAW AS COUNSEL ON APPEAL
## PURSUANT TO *PENNSYLVANIA V. FINLEY*

The Office of the State Appellate Defender, by Michael J. Pelletier, Deputy Defender, and Stephen L. Gentry, Assistant Appellate Defender, moves for leave to withdraw as counsel for Appellant, Jerri Lindsey, in this cause.

In support of this motion Stephen L. Gentry, Assistant Appellate Defender, states:

1.     Petitioner-Appellant, Jerri Lindsey was sentenced to 45 years imprisonment for first degree murder and armed robbery on March 27, 1995.  Appellant is currently incarcerated. His conviction and sentence were affirmed on direct appeal in appellate court number (1-95-1535.)

2.     On March 27, 1998, Petitioner-Appellant filed a petition for post-conviction relief.  The petition was denied by the Circuit Court.

EXHIBIT U

3.     Late notice of appeal was allowed. The Office of the State Appellate Defender was appointed.

4.     After an examination of the record on appeal, and after discussing the case with another attorney in the office, who also read the record on appeal, counsel has concluded that an appeal in this cause would be frivolous. Counsel has informed petitioner of this conclusion and that counsel intends to file the motion to withdraw. Therefore, counsel hereby moves to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). A memorandum supporting this motion is attached.

WHEREFORE, the Office of the State Appellate Defender respectfully moves to withdraw as counsel on appeal in this cause.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

STEPHEN L. GENTRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

STATE OF ILLINOIS     )
                      )     SS
COUNTY OF COOK        )

## AFFIDAVIT

Stephen L. Gentry, being first duly sworn on oath, deposes and says that he has read the foregoing Motion by him subscribed and the facts stated therein are true and correct to the best of his knowledge and belief.

STEPHEN L. GENTRY
Assistant Appellate Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on January 31, 2006.

NOTARY PUBLIC

Official Seal
Carol M Chatman
Notary Public State of Illinois
My Commission Expires 03/24/08

No. 1-05-1458

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 92 CR 25135. |
| | ) | |
| JERRI LINDSEY, | ) | Honorable |
| | ) | James R. Epstein, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL

### STATEMENT OF FACTS

Following a bench trial, Jerri Lindsey was convicted of the first degree murder and armed robbery of taxi driver Rudolph Bennett, and was sentenced to 45 years' imprisonment. (C. 65, 72-73) Prior to trial, private counsel Sheldon Sorosky filed an appearance as counsel for Lindsey on November 5, 1992. (C. 17) On February 14, 1994, Lindsey requested that an attorney from the Public Defender's office be appointed to represent her because she could no longer afford to pay Sorosky and because she felt that Sorosky was no longer acting in her best interests. (C. 35) Counsel then stated that he and Lindsey disagreed on how to present Lindsey's case. (C. 52-54) The court denied Lindsey's request after stating that it believed the request was merely an attempt to delay the proceedings. (R. D5)

1

On June 28, 1994, counsel sought to withdraw. (C. 52-54) In his motion, counsel sought fees for a private investigator and for a polygraph examination. (C. 52-54) Counsel argued that if he were allowed to withdraw and the Public Defender's office was thereafter appointed, they would be able to provide the investigator and the polygraph examination. (C. 52-54) The trial judge denied the request and indicated that he believed that the motion was an effort to delay the proceedings. (R. L11-12)

Prior to trial, the court denied Lindsey's motions to suppress evidence and statements. (R. G48, N29)

The evidence adduced at trial related that, on October 12, 1992, Rudolph Bennett was found shot to death in a cab located in a parking lot at O'Hare Airport. (R. R22, S49) A Chicago Police Officer interviewed June Hess and John Eiselt, the last known fares picked up by Bennett. (R. P59) Hess and Eiselt told police that at about 2:30 p.m. on October 9, 1992, they called for a cab and requested a pick-up from the Empress Casino in Joliet, Illinois. (R. P15, 53) As the cab approached, they noticed a woman in the back seat of the cab. (R. P16, 54) When the driver indicated to Hess and Eiselt that he was there to pick them up, the woman moved from the back seat to the front seat. (R. P18, 55)

Bennett dropped Hess and Eiselt off at a nearby hotel at about 3:15 p.m. (R. P58) Later, they told officers that the woman told the cab driver she needed to get to O'Hare Airport by 4:30 p.m. (R. P21, 58) They also gave officers a physical description of the woman. (R. P77) A ticket stub, indicating that Bennett entered the O'Hare Airport parking garage at 5:00 p.m. on October 9, 1992, was recovered from his cab. (R. S59-60)

On October 11, 1992, Lindsey reported to police that she had been sexually assaulted by a

2

cab driver who had taken her into a building. (R. R5, 13)  She told officers that she escaped by stabbing the cab driver in the chest. (R. 13)  Two days later, officers went to Lindsey's home and asked her to come to the police station to discuss her report of a sexual assault and a homicide that they were also investigating. (R. 17-20)  While officers spoke with Lindsey, Hess and Eiselt were shown a photo array that included a photograph of Lindsey. (R. P25, S76)  Both identified Lindsey as the woman who was riding in Bennett's cab on October 9, 1992. (R. P25, S77-78)  Before Lindsey was notified that she had been identified by Hess and Eiselt, Lindsey recanted her rape complaint but denied killing Bennett. (R. S86)

Lindsey, the last person to be seen with Bennett, was arrested for his murder.  She gave five different accounts of the events of October 9, 1992. (R. S73-109)  In her written statement, she stated that she shot Bennett just after he parked the cab in an O'Hare parking garage.  At trial, she testified that she was not involved in the murder of Bennett and presented an alibi defense. (R. V94)  In support of her alibi, defense counsel called Irene Quiroz, who stated that she and Lindsey left the house at approximately 8:30 a.m. on October 9, 1992, and returned home at about 5:00 p.m. (R. T97-98, 110)

Robert Quiroz, Amelia Quiroz, and Dorothy Ramirez all testified that on October 9, 1992, at approximately 2:30 p.m., Lindsey and Irene Quiroz were shopping with them in River Oaks. (R. V8-10, 22-25, 56-59)  They returned home shortly after 5:00 p.m. (R. V11, 28)  Olga Martinez testified that she was waiting outside for Irene Quiroz and Lindsey to arrive home so that she could bake biscuits in their oven because the oven at her friend's house, where she was having dinner, was broken. (R. V42-43)  Lindsey and Irene returned at about 5:30 p.m. (R. V42)  Martinez baked the biscuits in their oven and last saw Lindsey at about 6:30 p.m. on October 9,

3

1992. (R. V43) Jack St. Clair testified that Lindsey was with his brother, Jerry, in the early morning hours of October 10, 1992. (R. T12-13) The trial court found Lindsey guilty of the murder and armed robbery of Bennett, stating that the offenses occurred before she was with Jerry St. Clair. (R. Z60, 65)

On direct appeal, Lindsey argued that (1) the trial court erred in denying her motion to suppress involuntary statements, (2) the trial court erred when it failed to suppress statements and evidence, which resulted from her arrest without probable cause, (3) she was denied a fair trial when the prosecutor misstated the facts in closing argument, (4) trial counsel was ineffective for failing to fully impeach Hess and Eiselt's identification of her, for failing to move to suppress the photographic identification, and for failing to argue the involuntariness of Lindsey's statement at trial, and (5) she was denied her constitutional right to choose trial counsel. (C. 16-27) The appellate court affirmed Lindsey's convictions and sentence. *People v. Lindsey*, No. 1-95-1535, Rule 23 Order (July 25, 1997) (C. 16-27).

On March 27, 1998, Lindsey filed a *pro se* petition for post-conviction relief. (C. 18-29) In this petition, Lindsey argued that the State failed to prove her guilty beyond a reasonable doubt, and that the photo array in this case was improper as she was available for a lineup. (C. 19-20, 27-28) In addition, she argued that trial counsel was ineffective for failing to investigate her alibi defense, failing to interview and secure witnesses to provide mitigation at sentencing, failing to investigate and adequately prepare for trial, and failing to challenge the identification. (C. 21-26) Lindsey specifically alleged that defense counsel never interviewed or called as witnesses Paul Quiroz or Jerry St. Clair. (C. 25)

Counsel was appointed to represent Lindsey for purposes of her post-conviction petition

4

in April 1998. (R. R9)  The trial court granted the State's motion to dismiss Lindsey's petition without an evidentiary hearing on September 29, 2000. (R. R21)  The court found that several of the issues raised in Lindsey's petition were subject to *res judicata* and waiver and that the other remaining contentions of ineffective assistance of counsel lacked evidentiary support. (R. R19-21)

On appeal of the dismissal of this petition, the appellate court reversed and remanded the case for counsel to fully comply with Supreme Court Rule 651 (c) by providing affidavits from Paul Quiroz and Jerry St. Clair, or amending the petition to explain why the affidavits were unavailable. *People v. Lindsey*, No. 1-00-3480, Rule 23 Order (February 3, 2003) (C. 79-91)

On remand, on March 11, 2005, appointed counsel filed an amended petition, alleging that counsel was ineffective for failing to call Jerry St. Clair. (C. 38-42)  Appended to the supplemental petition was an affidavit from St. Clair, stating that he was with Lindsey from the late evening of October 9, 1992, until the next afternoon, and that he would have testified, but was not called to do so. (C. 43)  Counsel also filed a certificate pursuant to Illinois Supreme Court Rule 651(c). (C. 93)

On April 1, 2005, the State filed a motion to dismiss the petition, arguing that the witness did not provide an alibi for the relevant time period of approximately 5:00 p.m., and that Lindsey could not demonstrate prejudice. (C. 44-52)  At the hearing on the State's motion, defense counsel noted that the other alleged alibi witness, Paul Quiroz did not respond to phone calls and visits from counsel's investigators. (R. R8)  The court found that there was no evidence as to what Quiroz would have said had he been called to testify, and that Jerry St. Clair did not provide an alibi for the relevant time period. (R. R14)  The court found that the testimony of St. Clair

5

would be cumulative, and that the evidence of guilt was overwhelming. (R. R15)  The court thus granted the State's motion to dismiss Lindsey's petition. (R. R17)

## LEGAL ANALYSIS

In Lindsey's *pro se* petition for post-conviction relief, she argued that the State failed to prove her guilty beyond a reasonable doubt, and that the photo array in this case was improper as she was available for a lineup. (C. 19-20, 27-28)  In addition, she argued that trial counsel was ineffective for failing to investigate her alibi defense, failing to interview and secure witnesses to provide mitigation at sentencing, failing to investigate and adequately prepare for trial, failing to obtain videotape surveillance footage that would support her alibi defense, and failing to challenge the identification. (C. 21-26)  Lindsey specifically alleged that defense counsel never interviewed or called as witnesses Paul Quiroz or Jerry St. Clair. (C. 25)

The Post-Conviction Hearing Act establishes a remedy for a criminal defendant who claims that a substantial violation of his federal or state constitutional rights occurred in the proceedings that resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (1992); *People v. Edwards,* 197 Ill. 2d 239, 243-44, 757 N.E.2d 442 (2001).  A post-conviction proceeding is a collateral attack on a prior judgment and the scope of post-conviction review is limited to constitutional matters that have not been and could not have been previously adjudicated. *People v. Thompkins,* 161 Ill. 2d 148, 157, 641 N.E.2d 371 (1994); *People v. Tate,* 305 Ill. App. 3d 607, 611, 712 N.E.2d 826 (1st Dist. 1999).  The post-conviction process in non-death penalty cases involves three steps. *Edwards,* 197 Ill. 2d at 244.  At the first stage, a court may dismiss a *pro se*

6

post-conviction petition without appointing counsel only if the allegations in the petition, taken as true and liberally construed, fail to present the gist of a constitutional claim. *Id.*, *see also People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996).

At the second stage of the post-conviction process, which is the stage at issue here, the court appoints counsel, and the State can move to dismiss or answer. 725 ILCS 5/122-5. The circuit court is foreclosed from engaging in any fact-finding at a hearing on the State's motion to dismiss because all well-pleaded facts are to be taken as true at this point in the proceedings. *People v. Coleman*, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063 (1998). Allegations that are positively rebutted by the record, however, need not be taken as true and may be dismissed as frivolous and patently without merit. *People v. Edwards*, 355 Ill. App. 3d 1091, 1094, 825 N.E.2d 329 (2005). If the petition establishes a constitutional violation, the trial court must hold an evidentiary hearing. 725 ILCS 5/122-5; *People v. Dillard*, 204 Ill. App. 3d 7, 561 N.E.2d 1219 (3rd Dist. 1990). Dismissal is warranted only when the petition's allegations of fact - liberally construed in favor of the petitioner and in light of the original trial record - fail to make a substantial showing of imprisonment in violation of the State or Federal Constitution. *Coleman*, 183 Ill. 2d at 382.

As the Illinois Supreme Court stated in *People v. Kamsler*, "It is well settled that where a person convicted of a crime has taken an appeal from the judgment of conviction on a complete record, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court and all issues which could have been presented to the reviewing court, if not presented, are waived." 39 Ill.2d 73, 74, 233 N.E.2d 415 (1968). Exceptions to this established rule have been allowed where fundamental fairness so requires and where review by direct appeal has been

7

denied by failure to have competent counsel on appeal. *People v. Derengowski*, 44 Ill.2d 476,
256 N.E.2d 455 (1970); *People v. Frank*, 48 Ill.2d 500, 504 (1971). Ms. Lindsey did not raise
any of the issues on direct appeal that she now raises in her post-conviction petition.

Counsel has considered raising the following issues:

1) That the State failed to prove her guilty beyond a reasonable doubt;

2) That the photo array in this case was improper where she was available for a lineup and that
counsel was ineffective in failing to challenge the identification;

3) That trial counsel was ineffective for failing to investigate her alibi defense, failing to
interview and secure alibi and mitigation witnesses, failing to obtain video surveillance footage,
which would have supported her alibi defense, and failing to investigate and adequately prepare
for trial.

**1) Reasonable Doubt**

Lindsey's post-conviction petition alleges that the State failed to prove her guilty beyond
a reasonable doubt. (C. 19) The due process clauses of both the United States and Illinois
Constitutions protect an accused against conviction except upon proof beyond a reasonable doubt
of every fact necessary to constitute the charged crime. U.S. Const., amend. XIV; Ill. Const., art.
I, sec. 2; *see In re Winship*, 397 U.S. 358, 361-64, 90 S.Ct. 1068 (1970). The burden of proving
the defendant guilty beyond a reasonable doubt of all of the material and essential facts rests with
the State. *See People v. Weinstein*, 35 Ill. 2d 467, 470, 220 N.E. 2d 432 (1966). When the
sufficiency of the evidence is challenged, the appropriate standard of review is whether, after
reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. *See Winship*,

8

397 U.S. at 361-64. After reviewing the evidence presented by the State at trial in the light most favorable to the prosecution, a rational trier of fact could have found that Lindsey committed the armed robbery and first degree murder beyond a reasonable doubt.

Petitioner's reasonable doubt allegation is based on her assertion that the identifications of her by Eiselt and Hess were not reliable. However, in her written statement introduced at trial, Lindsey stated that she shot Bennett just after he parked the cab in an O'Hare parking garage. Furthermore, Lindsey failed to raise this issue on direct appeal. Additionally, her allegation concerning the reliability of the identification evidence, discussed below, is unfounded. Pursuit of the claims that the State did not prove Lindsey guilty of the charged offenses beyond a reasonable doubt or that the trial court erred in failing to granted a directed verdict at the close of the State's case would be frivolous, and counsel should be permitted to withdraw. *People v. Phyfiher*, 838 N.E.2d 181, 2005 Ill. App. LEXIS 1065 (1st Dist. 2005).

## 2. Impropriety of the Photo Identification

Lindsey's petition alleges that the photo array-identification in this case was improper where she was available for a lineup and that counsel was ineffective in failing to challenge the identification. (C. 23-28) Evidence of a witness' identification of the defendant will not be admissible if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 93, 198-199 (1972). Suggestive confrontations are disfavored because they increase the likelihood of misidentification. *Id.* The admission of evidence based on an identification procedure that was too suggestive to be reliable violates a defendant's right to due process. U.S. Const., amends V, XIV; Ill. Const. 1970, art I, sec. 2; *People v. Blumenshine*, 42 Ill.2d 508, 511, 250 N.E.2d 152

9

(1969).

Here, Lindsey bases her argument that the photo array was improper on the fact that she was available for a line-up. However, there is no allegation that the photo array was impermissibly suggestive. Therefore, her argument that the use of the photo-array identification was improper is without merit.

### 3. Ineffective Assistance of Counsel for Failing to Investigate Witnesses or Subpoena Security Surveillance Videotapes

Lindsey's petition also alleges that her trial attorney was ineffective for failing to investigate and call alibi and mitigation witnesses and for failing to subpoena surveillance videotapes that would support her alibi defense.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), to establish defense counsel provided ineffective assistance, a defendant must show (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the substandard representation so prejudiced defendant that there is a reasonable probability, absent the errors, the outcome would have been different.

Here, Lindsey alleged that trial counsel was ineffective in failing to call Jerry St. Clair, who would have testified, according to the affidavit appended to the supplemental petition, that he was with Lindsey from the late evening hours of October 9, 1992, until the next afternoon, but was not called to do so. (C. 43) However, the trial court heard Jack St. Clair's trial testimony which stated that Lindsey was with Jerry St. Clair on that evening, and found it did not constitute an alibi for the murder, which occurred earlier in the day. (R. Z60) Even taking Jerry St. Clair's affidavit as true, it does not provide an affidavit for the time the trial court found the murder to

10

have occurred. Additionally, although the body was not found for two days, there was no evidence indicating that the murder occurred at any time other than the late afternoon of October 9, 1992. The evidence indicating that the murder did occur in the late afternoon include the time-stamped parking ticket found in the cab and Lindsey's own statement. (R. S59-60)

The allegation that counsel was ineffective for failing to call Paul Quiroz is unsupported by an allegation of what Quiroz would have said had he been called to testify, why counsel was ineffective for failing to call him to do so, or how the outcome of the case would have been different if counsel had called Quiroz to testify.

Lindsey's petition does not name any other witnesses that she believes counsel was ineffective for failing to call, what these witnesses would have testified to, or how the outcome of the case would have been different had the witnesses been called to testify.

Furthermore, Lindsey's allegation that counsel failed to investigate her alibi evidence is contradicted by the fact that defense counsel called five alibi witnesses to testify at trial. Irene Quiroz testified that she and Lindsey left the house together at approximately 8:30 a.m. on October 9, 1992, and returned home at about 5:00 p.m. (R. T97-98, 110) Robert Quiroz, Amelia Quiroz, and Dorothy Ramirez all testified that on October 9, 1992, at approximately 2:30 p.m., Lindsey and Irene Quiroz were shopping with them at Venture and Walgreens in River Oaks. (R. V8-10, 22-25, 56-59) They returned home shortly after 5:00 p.m. (R. V11, 28) Olga Martinez testified that she was waiting outside for Irene Quiroz and Lindsey to arrive home so that she could bake biscuits in their oven because the oven at her friend's house, where she was having dinner, was broken. (R. V42-43) Lindsey and Irene returned at about 5:30 p.m. (R. V42) Martinez baked the biscuits in their oven and last saw Lindsey at about 6:30 p.m. on October 9,

11

1992. (R. V43) Jack St. Clair testified that Lindsey was with his brother, Jerry, in the early

morning hours of October 10, 1992. (R. T12-13)

The allegation that counsel was ineffective for failing to obtain surveillance video footage

of Lindsey which would support her alibi defense fails to offer any evidence that such footage

ever existed.

Therefore, counsel has concluded that these issues would be frivolous, and counsel

should be permitted to withdraw.


Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

STEPHEN L. GENTRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472


COUNSEL FOR PETITIONER-APPELLANT

No. 1-05-1458

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 92 CR 25135. |
| | ) | |
| JERRI LINDSEY, | ) | Honorable |
| | ) | James R. Epstein, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:  Richard A. Devine                 Ms. Jerri Lindsey
     Cook County State's Attorney      Register No. B-49150
     300 Daley Center                  Lincoln Correctional Center
     Chicago, Illinois  60602          P.O. Box 549
                                       Lincoln, IL  62656

You are hereby notified that on February 1, 2006, we personally delivered the original and three copies of the attached Motion to Withdraw as Counsel on Appeal Pursuant to *Pennsylvania v. Finley* in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

STEPHEN L. GENTRY
Assistant Appellate Defender

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF COOK  )

The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on February 1, 2006.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on January 31, 2006.

NOTARY PUBLIC

Official Seal
Carol M. Chatman
Notary Public State of Illinois
My Commission Expires 03/24/08

Kujawa
Gail
mailed

COPY 4

Final Response

Appellate Court #

05-1458

D

STEVEN M. RAVID
CI FRK

MAR 0 1 2006

FILED
APPELLATE COURT 1st DIST

To Whom This Letter May Concern,

I was told to write a letter of explanation as to why I feel my case has meritorious issues to stay on appeal and or in the courts. First and foremost, I'm innocent! I did not murder Mr. Bennett. All I'm guilty of is telling lies and using drugs. Secondly I feel I had ineffective attorney's working on my case, from my trial attorney on down to my Post-Conviction attorneys with the exception of Patricia A. Wrona, who won my Post-Conviction appeal. My trial Counsel, Sheldon Sorosky did absolutely nothing for me. He did not investigate my case at all. He failed to call certain witnesses. He kept a block on his phone, so I could not reach him, he was always late for court, he made quite a few no-shows. The judge berated him quite often for his lack of interest. You know, my witnesses went down to his office and he didn't want to listen to them, all he wanted was $10,000.00 in full and they weren't even my family. My family paid him what he asked for in the beginning. When asked if he needed more money, he said no, I'll let you know. At the beginning I gave him my weight and he lost it. At the beginning I gave him my Alibi witnesses and my character witnesses. After my Alibi witnesses testified, he said there was no need to call character witnesses and or the couple of witnesses he didn't call, cause he feel

EXHIBIT A

②

if the alibi witnesses were effective, there was no reason to call anyone else, for they should be believable. Paul Quiroz wanted to testify at the time, but to no avail, my attorney felt there was no need to call Mr. Quiroz. Now, Jerry St. Clair should have been subpoenaed. He's a crack head, so I felt like he should have been made to come. Mr. Sorosky subpoenaed everyone else except him. Also I never said that Jerry St. Clair was an alibi witness for the day Mr. Bennett was killed. I wanted Jerry to testify that I made up the rape allegation. He told me not to tell the lie. See, that wasn't the first time I lied to Irene and it probably wouldn't have been the last. Whatever was said about Jerry being called for Oct 9th, wasn't true. That fact was misconstrued. Everyone who testified on my behalf were hispanic except Jack St. Clair. My point is they weren't going to lie for me. For what? Irene's mother was 70 yrs. old like the elderly couple against me. Why wasn't her testimony believable? They weren't my family, nor my race. Also, I guess one could say that I voluntarily accompanied the detectives to the station. Now, grant it I didn't volunteer to go anywhere with them, but when they came to my house they told me to hurry up and get dressed, so I complied. I was overly cooperative, because I had nothing to

③

hide. My house wasn't searched for weapons,
clothing or anything to implicate me in the crime.
Why resist, when I had nothing to hide or resist
for. They came to my house and asked me to hurry
up and get dressed, cause they wanted me to
look at some photos. When I got in the car, the
detective known as Schalk told me they had
a man in custody and would I be willing to
take finger-prints and a photograph picture.
I said sure! If I killed Mr. Bennett why would
I implicate myself with a lie when I could
have easily told them I had committed a crime.
Whoever killed Mr. Bennett probably took a plane.
You know the photograph they took of me when
I first accompanied the detectives to 11th State,
they later said that they showed that picture to
the elderly couple. Which brings me to the Bogus
line-up. You see, in the photograph picture shown
to the elderly couple, I had on my nose ring. I had
on a white NBA cap which made me look like
I had a boy cut, but when I got down to
lock-up they took my jewelry Except the two
Zirconia earrings I had at the very top of both
ear lobes. Of course the nose ring was taken.
Now, they put me in the line-up with five
other females. They put fisherman caps on
our heads. Well, naturally they picked me,
cause the elderly couple had already saw
a photo of me. Now, after I was pulled

④

From the line-up, I was taken to a wall and I took mug shots. I faced forward and sideways. In court, the photo which was entered as evidence was none other, the line-up photo, which they claim was shown to the elderly couple. You see they wouldn't show that photo, cause I had on my gold hoop earring in my nose, which I wore at all times. Numerous times I asked my attorney, Mr. Sorosky to go down to the lockup where the Cook County puts all belongings. He would never go. When I got convicted and sentenced, I had my aunt to pick up my stuff. Guess what?, all my jewelry was there, except the gold hoop, nose ring! Imagine that. I feel mistaken Identity is a very important issue in my case. The elderly couple said the female blk. they shared the cab with was in her twenties, 130 to 140 lbs. chunky, 5'5" to 5'6" tall. They said she had a cap on her head with her hair combed to the left or sideways. with a purse, I think brown or either the sweater or whatever she was wearing was brown, but anyway, whatever they said she was dressed in, I didn't own. I only owned one purse, a clutch with black & gray diagonal stripes. I was thirty yrs. old, 210 lbs. Then I believed my height was 5'4½" tall, but now they tell me I'm 5'3½" tall. I have a very prominent mole on my nose, something you can't forget and I wore a gold hoop earring, hanging out my nose at all times. Now, back then I could

(5)

have passed for a woman in her twenties,
but 210 lbs. is huge and in October, I had a
jacket on. So, I know I was looking bigger than
that. Now if a person's hair is combed to the
left with a cap, to me it means that her hair
was long enough to determine that style. Where as
my hair could not be determined how it was combed
with a cap on, cause it was cut short and tapered
around the sides. One would think I had a boy cut.
Also the elderly female said the female blk. handed
her a train schedule with her left hand. On my
left hand, I have my initials JRL tattooed between
my thumb and forefinger. Mind you, my fingerprints
weren't found in the cab or on the train schedule.
If it was me, these vital characteristics should not
have gone unnoticed! So, you see, Eisett & Hess
was not describing me. My trial attorney could have
gotten video tapes from Ventures, Walgreens and Shakey's,
but of course he wouldn't. On the day in question, I
visited Ventures and Walgreens twice. It was said that
a guilty person would have thought they were in custody,
but I beg to differ, an innocent person such as
my self thought I was in custody when I was led
upstairs to the finger-printing department. I believe
I felt that way, cause it seemed that I had been
sitting in this little room for hrs. and when I asked
what the man said in custody about my photo, I didn't
get a reply, they were acting peculiar, and I was
right, cause when taken to Grand and Central police



Station, I was taken to a room where I sat and sat. Finally the detectives came and got me, took me to another little room and told me, "Ms. Lindsey we didn't bring you in here for what we said we were bringing you here for, we brought you in here for the murder of Rudolph Bennett". Thus the interrogation began. I thought Oct 10th & 11th was important, cause I was with Jerry St. Clair getting high, which caused me to make up a lie. I found out later on into my interrogation that Oct. 9th was the day in question. I told them I wasn't raped and that I made up a lie, cause I didn't want my girlfriend to know I was getting high. Mr. St. Clair was questioned concerning my where-abouts and he told them I was with him. We thought 10th & 11th was the days in question. When I found out Oct. 9th was important, I told them everything I did on that day. I can't be in two places at once. I asked for an attorney, but Asst. State's Attorney Julie Nelson said that I didn't need an attorney, that she was the one to decide whether I go to jail or not. I asked her if she would believe me if I told her, I didn't do it. She said no, that I had told too many lies already and that no judge would believe me either. Also on Oct. 9th I didn't have a cap on my head, I wore a blk. head band. My hair was styled in a sixties type of style. During my interrogation, I was so busy trying to help myself, I end up hurting myself. You know I promised Irene and my daughter that I wouldn't get high again. I took a lie detector test and the detective who



conducted the test claimed I failed it. I told
him and all of them that they were setting me up.
He told me that I was down here and I could be
up here. (He made gestures with his hand) he said
that I could go home if I said I did it, cause the
deceased had raped plenty of girls and it was good he
was dead, he said sorry to say." Mind you I had already
told them, I wasn't raped, but they kept saying I was.
The detectives kept interrogating me and telling me that
this and that happened, that I took his wallet. So whatever
they told me I repeated and eventually I just kept
making up stuff. I was saying anything, cause I don't
know what happen to Mr. Bennett. Reading all my
statements, should have let one know, I didn't
know what I was talking about. I can't remember
who took the initiative in suggesting I take a
lie detector test, but whoever did, them or I,
I was willing, cause I had nothing to hide. I
remember being so happy, cause I surely thought
it would be over. I remember State's attorney
Julie Nelson told me if I said I went shopping
Thursday Oct. 8th she would let me go home
with Irene, but I told her no, cause it was
Oct. 9th, Friday. Later on Irene told me that
Ms. Nelson told her the same thing. If she say
we went shopping Thursday Oct. 8th instead of
Friday Oct. 9th, she would let me go home with
her, but she told me as tempting as it sounded,
it was Friday Oct. 9th. I remember at trial all



the state's witnesses couldn't look me in the eye.
When asked if they see Ms. Lindsey in court, of
course they pointed at me, cause I was the only
one in blue Cook County garb, but not once did
they turn their heads to look at me. You know why?,
Cause they all lied. The two detectives that came
to my house Oct. 12th, supposedly investigating my
rape allegation, knew they were investigating a murder
case. When they took me to 111th st. Police station,
I was shown one photo consisting of four or five
men, one standing up and of course I told them
I didn't recognize anyone in the photo, cause
I know I wasn't raped for real and I wasn't going
to send an innocent person to jail. The blk. detective
said I wasn't of any help, so he alone took me
back home and he said "quote unquote" they
found a cab driver dead today, so I said oh, was
he stabbed or shot, when I said shot, he shook his
hesitantly. I had a thought, so I said was he one
of the men shown in the photo, he didn't
answer, so I said which one?, the one standing
up, again he shook his head hesitantly. When I
got home, I told Irene what transpired and I
said watch they say I did it! That's exactly
what happened. I was an easy prey. If I hadn't
filed a rape allegation they wouldn't have never
came for me, cause I didn't do it. The blk.
detective testified that he showed me various
photos and I refused to look at them. He, lied!

⑨

It was one photo and I was overly cooperative!
I didn't have a reason not to look at the photo.
I remember at trial the deceased wife said she
sent her husband to the bank, but she was unsure
if he even had his wallet. In my transcripts, I
found out that Mr. Bennett told his wife over the
radio that he was going to O'Hare airport and he
had to be there by 4:30 and possibly enroute to
Chicago. This fact wasn't mentioned at trial. Whose
to say that he didn't pick up someone at Chicago and
they killed him. We don't know if a female even
did it. No one saw her kill him, apparently! One
of my statements, I said I retrieved a gun from Mr.
Bennett's cab. Of course that was a lie. Even so
the wife never said Mr. Bennett had a gun or that
it was missing. The gun in question was never retrieved.
I've never held a gun. I've never fired one! I wasn't
given a ballistics test or even a DNA. I was also charged
with Armed Robbery, but they said his watch and gold chains
and whatever else was still on his person. I was badgered
and coerced beyond anything I've ever had to endure.
I was tired of them telling me I killed Mr. Bennett and me
telling them I didn't, I signed the paper. I already thought
I was going to jail. I was mentally and emotionally drained.
I felt it was a no win situation. You know my
trial judge should have appointed me a court appointed attorney,
cause he knew Mr. Sorosky wasn't in my best interest.
My trial judge also ignored my alibi witnesses, saying they
were consistent. Of course cause they were telling



the truth. The elderly couple was at the gambling
casino in Joliet, a place unbeknownst to me. Evidently
they were drinking, cause they asked to go to the liquor
store. I took a bench trial which was my biggest mistake.
I felt like a judge was an attorney first. He Knows that
clients are interrogated. I was scared to take a jury. I felt
they were college students, caucasian, holier than thou
citizens, looking down on a blk. female, gay, on drugs
and a liar. My attorney instilled in me about me
signing the confession and that was my only concern.
I was never worried about the description the elderly
couple had of me, cause I Know I didn't do it.
If I had known that the judge was going to go by
the elderly couple's description of me, I would have
taken a jury. "He said that the description they had
of me was superb". A jury would have said that's
not her. A blind person could see it wasn't me.
In April 1995 I filed my Direct Appeal. Later
on I went to the Supreme Court Appeal. I did
a Writ of Certiorari and I asked for a re-hearing,
re-trial, All was denied. In March 1997 I filed
a Post-conviction and I asked for a re-hearing, re-trial
and or time-cut. I figured if all else fails maybe
the courts would consider giving me a time cut. If
I was guilty, I probably would have asked for a time cut
from the beginning or skipped over appeals like I've
known others to do, but I didn't leave anything unturned.
I've been fighting tooth and nail for my freedom, my
innocence. I won't give up til to take my last breath.

(11)

I'm not proud of the lies I've told and I regret deeply, being taken out of my daughter's life. I am remorseful, cause a life was taken and I am accused of it and wrongfully so. I'm innocent and I can't stress that enough. I feel when a person is murdered, it should be investigated thoroughly. In the same token, when a person says they're innocent of a crime, it should be investigated thoroughly, instead of being sent to a place like this! In my case thoroughness wasn't an option. Mr. Bennett's case wasn't investigated thoroughly for neither of us. I'm asking, no begging this court to please keep my case in the courts and I'm still asking for the chance to prove my innocence and I believe I'll be able to do so with the right person representing me on a re-hearing, re-trial! If all else fails please consider giving me a time cut. I've done over half my time, I've got a relatively decent institutional record. Please grant me the chance to continue to fight for my innocence. I ask for this time cut now, cause the only person I wanted to see me walk free was my father, but he didn't make it, so I don't care, I'm tired! I know some one out there is willing to fight for me and believe in me.

Sincerely
Jeni Robbin Lindsey
B49150

# Patch T



NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

THIRD DIVISION
MAY 10, 2006

1-05-1458

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | |
| v. | No. 92 CR 25135 |
| JERRI LINDSEY, | Honorable James R. Epstein, |
| Defendant-Appellant. | Judge Presiding. |

## O R D E R

Defendant Jerry Lindsey appeals from the second stage dismissal of her supplementary petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 2004)). She is currently serving a 45-year term of imprisonment on her 1995 bench convictions of first degree murder and armed robbery. That judgment was affirmed on direct appeal. People v. Lindsey, No. 1-95-1535 (1997) (unpublished order under Supreme Court Rule 23).

On March 27, 1998, defendant filed a pro se post-conviction petition alleging, inter alia, ineffective assistance of trial counsel for failing to (1) investigate her alibi defense, (2) adequately prepare for trial, and (3) challenge the identification evidence. Counsel was appointed to represent defendant, and he subsequently filed a certificate of compliance with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). The State filed a motion to dismiss which was granted by the post-conviction court.

1-05-1458

counsel, questioning the sufficiency of the identification evidence, and attempting to explain the statements she made to law enforcement personnel at various stages of the criminal investigation. She also protests her innocence, and requests further investigation of her case and a reduction in sentence.

In accordance with the mandate of <u>Finley</u>, we have carefully examined the record, the aforesaid brief and defendant's <u>pro</u> <u>se</u> response and find no issues of arguable merit to be asserted on appeal. Accordingly, we grant the motion of the State Appellate Defender for leave to withdraw as counsel and affirm the order of the circuit court of Cook County.

Affirmed.

ERICKSON, J., with HOFFMAN, P.J. and THEIS, J., concurring.

ORIGINAL

No.103409

| People State of Illinois, | ) | Appellate Court, First District, |
| | ) | No. 1-05-1458 |
|    Respondent | ) | |
| | ) | Circuit Court, Cook County, |
|    v. | ) | No. 92CR25135 |
| | ) | |
| Jerri Lindsey, | ) | Hon. James R. Epstein, |
| | ) | Judge Presiding |
|    Petitioner | ) | |

PETITION FOR LEAVE TO APPEAL

**FILED**

SEP 15 2006

SUPREME COURT CLERK

Ms. Jerri Lindsey
Reg. No. B-49150
Lincoln Correctional Center
P. O. Box 549
Lincoln, IL 62656

R-051006
N= RH

EXHIBIT X

NO. **11705**

## IN THE SUPREME COURT OF ILLINOIS

| People State of Illinois, | ) | Appellate Court, |
| | ) | First District |
| Respondent | ) | No.    1-05-1458 |
| | ) | |
| v. | ) | Circuit Court |
| | ) | Cook County |
| Jerri Lindsey, | ) | No.    92 CR 25135 |
| | ) | |
| Petitioner | ) | Hon. James R. Epstein, |
| | .) | Judge Presiding. |

### MOTION BY PETITIONER FOR LEAVE TO FILE A LATE
### PETITION FOR LEAVE TO APPEAL

# FILED

AUG 9 - 2006

### SUPREME COURT CLERK

Ms. Jerri Lindsey
Reg. No. B-49150
Lincoln Correctional Center
P. O. Box 549
Lincoln, Illinois  62656

70-071906
2-051006
No RH

No. 1-05-1458

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

LETTER OF EXPLANATION

To the Honorable Illinois Supreme Court:

On May 16, 2006, Petitioner, Terri Robbin Lindsey, received a letter from Appellate Attorney, Stephen Gentry, stating the Appellate Offices intentions to not proceed with the appeal of Petitioner's Post Conviction. Petitioner, Lindsey, thought she had exhausted all of her State options, and proceeded in timely fashion to file a Federal Habeas Corpus. Petitioner received the enclosed letter stating she had not yet exhausted her state level appeals. It is due to no culpable negligence on Petitioner's behalf that the filing of this Petition For Leave to Appeal is untimely. Petitioner respectfully requests your consideration of this filing and appreciates the understanding of this court in its review of this Petition for Leave to Appeal.

RESPECTFULLY SUBMITTED,

Terri Robbin Lindsey
TERRI LINDSEY

TERRI ROBBIN LINDSEY #B49150
LINCOLN CORRECTIONAL CENTER
P.O. BOX 549
LINCOLN, IL 62656

SUBSCRIBED AND SWORN TO ME
THIS ___2___ DAY OF
AUGUST, 2006

Tracy L. Hill
NOTARY PUBLIC

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

No. 1-05-1458

## IN THE SUPREME COURT OF THE STATE OF ILLINOIS

### LETTER OF EXPLANATION

To the Honorable Illinois Supreme Court:

On May 10, 2006, Petitioner, Jerri Robbin Lindsey, received a letter from Appellate Attorney, Stephen Gentry, stating the Appellate Offices intentions to not proceed with the appeal of Petitioner's Post Conviction. Petitioner, Lindsey, thought she had exhausted all of her state options, and proceeded in timely fashion to file a Federal Habeas Corpus. Petitioner received the enclosed letter stating she had not yet exhausted her state level appeals. It is due to no culpable negligence on Petitioner's behalf that the filing of this Petition For Leave to Appeal is untimely. Petitioner respectfully requests your consideration of this filing and appreciates the understanding of this court in its review of this Petition for Leave To Appeal.

RESPECTFULLY SUBMITTED,

_Jerri Robbin Lindsey_
JERI LINDSEY

JERRI ROBBIN LINDSEY #B49150
LINCOLN CORRECTIONAL CENTER
P.O. BOX 549
LINCOLN, IL 62656

SUBSCRIBED AND SWORN BY ME
THIS ___2___ DAY OF
AUGUST, 2006.

_Tracy L. Hill_
NOTARY PUBLIC

"OFFICIAL SEAL."
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009



## OFFICE OF THE STATE APPELLATE DEFENDER
### FIRST JUDICIAL DISTRICT

203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

May 10, 2006

**STEPHEN L. GENTRY**
ASSISTANT APPELLATE DEFENDER

Ms. Jerri Lindsey
Register No. B-49150
Lincoln Correctional Center
P.O. Box 549
Lincoln, IL 62656

Dear Ms. Lindsey:

Enclosed find a copy of the court's order allowing my motion to withdraw as counsel and affirming your conviction. This means that your conviction and sentence stand. Our representation of you has come to an end and your file will be closed. However, our decision to close your case does not prevent you from appealing your case further on your own. The following pages describe the procedures necessary to urge higher courts to look at your case.

I am very sorry that there was nothing that we could do for you. Good luck.

Sincerely,

STEPHEN L. GENTRY
Assistant Appellate Defender

cc: Docketing cl23
    SADA No. 100849

NO 1-05-1458

## IN THE SUPREME COURT OF THE STATE OF ILLINOIS

PEOPLE of the STATE of ILLINOIS,
    Plaintiff - Appellee,

— vs —

JERRI Robbin Lindsey,
    Defendant - Appellant, Petitioner.

) Petition for Leave to Appeal from
) the Appellate Court of Illinois, First
) Judicial District.

No.  92-CR 25135

Appeal No.  1-00-3480

## PETITION FOR LEAVE TO APPEAL

To the Honorable Justices of the Supreme Court of the State of Illinois:
May it Please the Court:

On March 10, 2006, Petitioner received the enclosed letter leading Petitioner to believe she had exhausted her state appeals. Petitioner proceeded to the United States Supreme Court and was informed she had to appeal the Post Conviction decision to the Illinois Supreme Court. Petitioner files this petition beyond the Supreme Court Rule 315(b) Time's Markers because she was unaware this option was left in her efforts toward fighting her case. Petitioner respectfully requests this Court to please consider this Petition for LEAVE TO APPEAL.

## I.
### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Jerri Robbin Lindsey, PRO SE, respectfully petitions this Honorable Court for leave to appeal pursuant to Supreme Court Rule 315, from the judgment of the Appellate Court of Illinois, 1st Judicial District, which affirmed the judgment of conviction entered by the Circuit Court of COOK COUNTY, Illinois, upon the Bench Trial finding the Petitioner guilty of First DEGREE MURDER / ARMED ROBBERY.

No. 1-05-1458

IN THE SUPREME COURT of THE STATE of ILLINOIS

## Petition for Leave To Appeal

### PAGE 2

## II.

### FINDINGS AND PROCEEDINGS BELOW

On MARCH 21, 1995 Petitioner was sentenced to 45 years concurrent for First Degree Murder / Armed Robbery. Petitioner was found guilty on February 10, 1995 and after sentencing Petitioner appealed this Conviction to the Illinois Appellate Court, First District. On July 25, 1997 this Conviction was AFFIRMED by the Appellate Court, the Court delivered its opinion in said Appeal; and Petitioner appealed to the next level. On December 3, 1997 Petitioner filed a writ of certiorari to the Supreme Court of the United States and it was denied May 4, 1998. Petitioner then files for Post Conviction Relief on MARCH 27, 1998. September 29, 2000 my original Post Conviction was denied in Cook County by Judge Epstein. Petitioner was then assigned Attorney, Patricia A. Wrona, Esq. to appeal the original Post Conviction denial. On February 6, 2002 the decision was reversed and remanded. My case was reassigned to Stephen Black and on April 15, 2005, Mr. Black somehow caused the reverse and retrial decision to be dismissed. Petitioner was then put into a second-stage supplementary petition for Post Conviction Relief and on February 1, 2006 Attorney Stephen Gentry files a finely brief stating my case had no merit. May 10, 2006 Petitioner received the attached order stating the Appellate Defender's office representation could no longer support Petitioner's efforts. Petitioner proceeds to file for relief beyond the state level and was told she had one more state level option.

Petitioner files this Petition for Leave to Appeal and respectfully requests its review.

No. 1-05 1458

In THE SUPREME COURT OF THE STATE OF ILLINOIS

Petition For Leave To Appeal

PAGE 3

## III.

## Points Relied Upon For Reversal

Petitioner did not commit this crime. Petitioner's attorney did not effectively represent Petitioner's interests in this case. Failure to investigate or present adequate defense evidence, including securing testimony of Alibi witnesses caused Petitioner's case to be severely jeopardized. Petitioner's confession was coerced. Petitioner was unlawfully arrested with no fingerprint evidence and her distinct physical features were never identified by the elderly couple the state used as witnesses. Petitioner told detectives a series of lies to cover-up her use of cocaine and never once did Petitioner state she killed anyone. Petitioner's statements were misconstrued, and the Photo lineup was prejudiced because state's witnesses had already seen a Photo that detectives "said" was the person in said cab, shared by witnesses. D.N.A. nor the gun via ballistics had been connected to Petitioner. Petitioner's records will show No TESTS were ever performed to Place any gun in her hand at anytime. Petitioner's attorney failed to bring out discrepancies in States Case against Petitioner.

Petitioner is guilty of lying to cover up a drug problem, not MURDER. Victim had all jewelry on his person and wife's testimony* will attest that victim may not have even had Wallet/money in his possession.

Petitioner's alibi witnesses can and will attest that Petitioner was not even in the area where crime was committed.

* Per Petitioner's review of Police Report filed on victim, wife said she was not aware of victim even had wallet/money on his person.

No. 1-05-1458

# In The Supreme Court of the State of Illinois

People of the State of Illinois
　　　　　　　　Plaintiff

— vs —

Jerri Robbin Lindsey,
　　　　　　Defendant-Petitioner

No. 92-CR-25135

Appeal No. 1-05-3486

## Petition For Leave to Appeal
### PAGE 4

## IV

## STATEMENT OF FACTS

On October 16, 1992 Petitioner was charged with first degree murder and armed robbery in regards to the October 9, 1992 death of cab-driver Rudolph Bennett. Petitioner became involved in this situation by making up a rape allegation to cover-up her use of cocaine. Petitioner used this allegation to win favorable attention from her current relationship and police came to Petitioner's home to inform her they believed they had someone in custody who possibly may have raped her. Petitioner went with the detectives in efforts to further hide her addiction and wanted to cooperate fully in the quest to apprehend the "rapist". Petitioner's rape allegation was the only reason detectives came to her home. Petitioner would have never been involved in this case if it had not of been for her own actions to involve police with the alleged rape.　　Petitioner did not commit this crime.

Once in custody, detectives tell Petitioner her fingerprints and photo are needed to place her at the scene of Rudolph Bennett's murder.

STATEMENT OF FACTS
Cont.        PAGE 5

Petitioner panicked and went along with detectives coersed statements and one lie lead to another and Petitioner thought by going along with detectives, they'd let her go. None of Petitioner's made statements sense. Detectives used Petitioner's photo to have witnesses who had actually been in Mr. Pennell's Cab to identify them based on them telling those "witnesses" I was in the cab with witnesses on that day. Petitioner's fingerprints, D.N.A., saliva, nothing was found anywhere in the cab, not on the train schedule, not on any weapon (i.e., a gun), nor was Petitioner's hands tested for gun-residue.

Petitioner was assigned a private attorney, Sheldon Sirosky, who did not represent any interests of Petitioner. Petitioner requested her alibi witness to verify her whereabouts during the time periods of this Murder and her witnesses were never called. Proper investigative procedures including D.N.A., fingerprints, were never able to connect Petitioner to this crime

Petitioner's attorney failed to represent Petitioner and his lack of attention to this case caused Petitioner 15 years of her life.

Petitioner admits to telling a series of lies to hide her use of cocaine. Petitioner maintains her innocence and knows that evidence will attest to her non-involvement with this crime.

Detectives coersed Petitioner's false confession. Counsel's representation fell below reasonable standards and Petitioner's alibi witness can clear her from this conviction.

No. 1-05-1458

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

PETITION FOR LEAVE TO APPEAL

PAGE 16

V.

ARGUMENTS

Petitioner relies on the following Points and Authorities for review:

Standard of Review

People v. Coleman, 183 Ill.2d 366, 388, 701 N.E.2d 1063 (1998)

People v. Wakat, 415 Ill. 610, 114 N.E.2d 706 (1953)

People v. Wilson, 39 Ill.2d 275, 235 N.E.2d 561 (1968)

People v. Freulles, 142 Ill. App.2d 178, 180, 491 N.E.2d 775, 775 (3d Dist. 1986)

People v. Piper, 272 Ill. App.3d 843, 845, 651 N.E.2d 739 (1995)

People v. Porter, 122 Ill.2d 64, 71, 521 N.E.2d 1158 (1988)

People v. Gaultney, 174 Ill.2d 410, 418, 675 N.E.2d 102 (1996)

People v. Vunetich, 185 Ill. App.3d 45, 49, 541 N.E.2d 741 (1989)

Illinois Post-Conviction Hearing Act    725 ILCS 5/122-1 et seq. (2001)

Ineffective Assistance of Counsel

People v. Wakat, 415 Ill. 610, 114 N.E.2d 706 (1953)

People v. Slaughter, 39 Ill.2d 278, 235 N.E.2d 566 (1968)

People v. Wright, 149 Ill.2d 36, 594 N.E.2d 276 (1992), cert. denied, 506 U.S. 1001 (1992)

People v. Guest, 166 Ill.2d 381, 655 N.E.2d 873 (1995) cert. denied, 116 S.Ct. 1272 (1996)

People v. Flores, 153 Ill.2d 264, 606 N.E.2d 1078 (1992)

No. 1-05-1458

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

PETITION FOR LEAVE TO APPEAL

PAGE 7

ARGUMENTS CONT

People v. Davis, 229 Ill. App. 2d 809, 594 N.E. 2d 423 (5th Dist. 1992)

People v. Turner, 40 Ill. 2d 1, 235 N.E 2d 377 (1968)

Illinois Supreme Court Rule 1651(c)

People v. Stewart, 123 Ill. 2d 368, 528 N.E. 2d 631 (1988)

People v. Chinvey, 198 Ill. App 2d 704, 556 N.E. 2d 300 (2d Dist. 1996)

COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT ALIBI WITNESSES

People v. Piarr, 272 Ill. App. 3d 813, 651 N.E. 2d 737 (5th Dist. 1995)

People v. Nix, 100 Ill App 3d 48, 501 N.E. 2d 825 (3d Dist. 1986)

People v. Ascencator, 257 Ill. App. 3d 1026, 629 N.E. 2d 166 (2d. Dist 1994)

Guaranteed Right to Effective Counsel

Lakeside v. Oregon, 435 US. 233, 341  98 S.Ct. 1091

Cuyler v. Sullivan, 446 US. 335, 344, 1105 Ct. 1708 (1980)

Strickland v. Washington, 466 US. 668, 104 S.Ct 2052

People v. Albanese, 104 Ill. 2d 504, 525, 473 N.E 2d 1246, 1255 (1984)

People v. Davidson, 196 Ill. App 3d 631, 638, 554 N.E. 2d 444, 446

US. Const. Amend. VI

No. 1-05-1458

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

PETITION FOR LEAVE TO APPEAL

PAGE 8

ARGUMENTS COUT.

FAILURE TO INVESTIGATE OR PRESENT ADEQUATE DEFENSE EVIDENCE

People v. House, 141 Ill. 2d 323, 386. 566 N.E. 2d 2239, 287 (1990)

People v. Morris, 2 Ill. 2d 437, 452, 121 N.E 2d 810. 819 (1954)

People v. Truly, 230 Ill. App. 3d 948, 954, 595 N.E. 2d 1230, 1234
(1st Dist. 1992)

People v. Dillard, 204 Ill. App. 3d 7, 10, 561 N.E. 2d 1219, 1220
(3rd Dist. 1990)

People v. Garza, 180 Ill. App. 3d 263, 535 N.E 2d 968 (1st Dist. 1989)

LIBERMAN v. TATE, 957 F. 2d 1339 (6th Cir. 1992)

CAUSES FOR REMAND

People v. Hartfield, 232 Ill. App. 2d 198, 596 N.E. 2d 703 (1st Dist. 1992)

People v. Titone, 151 Ill. 2d 19, 24, 600 N.E. 2d 1160. 1163 (1992)

People v. Del Vecchio, 129 Ill. 2d 265, 279. 544 N.E. 2d 312 (1989)

People v. Coumas, 198 Ill. App. 3d 704, 556 N.E. 2d 300 (2d Dist. 1986)

People v. Brumas, 142 Ill. App. 3d 178, 180, 491 N.E. 773, 775 (3rd Dist. 1986)

No. 1-05-1458

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

PETITION FOR LEAVE TO APPEAL

VI.

CONCLUSION

Petitioner requests this Honorable Court to consider this Petition for Leave to Appeal to the Illinois Supreme Court based on her innocence.

Petitioner asks this Court to consider this petition and:

1) Remand her to the county for a re-trial.

2) Remand her to the county, assign her an attorney capable of investigating this case to establish her innocence.

3) Be granted a second chance to prove her innocence.

4) In the least, be considered for a sentence reduction.

5) Have the original conviction reversed.

RESPECTFULLY SUBMITTED,

Jeri Robbin Lindsey

JERI LINDSEY, B49450
JERRI ROBBIN LINDSEY
LINCOLN CORRECTIONAL CENTER
P.O. BOX 549
LINCOLN, IL 62656

SUBSCRIBED AND SWORN TO ME
THIS _2_ DAY OF
AUGUST, 2006.

Tracy L. Hill
NOTARY PUBLIC

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

STATE OF ILLINOIS
SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the thirteenth day of November, 2006.

Present: Robert R. Thomas, Chief Justice
Justice Charles E. Freeman        Justice Thomas R. Fitzgerald
Justice Thomas L. Kilbride        Justice Rita B. Garman
Justice Lloyd A. Karmeier         Justice Anne M. Burke

---

On the twenty-ninth day of November, 2006, the Supreme Court entered the following judgment:

No. 103409

People State of Illinois,

    Respondent

    v.

Jerri Lindsey,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
First District
1-05-1458
92CR25135

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this fourth day of January, 2007.

*Juleann Hornyak*

Clerk,
Supreme Court of the State of Illinois

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

September 15, 2006

Ms. Jerri Lindsey
Reg. No. B-49150
Lincoln Correctional Center
P. O. Box 549
Lincoln, IL 62656

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

No.103409 - People State of Illinois, respondent, v. Jerri
    11705    Lindsey, petitioner.  Leave to appeal, Appellate
             Court, First District.

             The motion by petitioner for leave to file
             a late petition for leave to appeal is
             <u>allowed</u> and is treated as a petition
             for leave to appeal.

cc: Hon. Lisa Madigan
    Hon. Richard A. Devine

EXHIBIT Y

103409

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2006


Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103409 - People State of Illinois, respondent, v. Jerri
            Lindsey, petitioner.  Leave to appeal, Appellate
            Court, First District.


The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.


The mandate of this Court will issue to the Appellate Court
on January 4, 2007.

EXHIBIT Z